# EXHIBIT A

*Rebekahower - Deceased*
*Sold to Fay*
*0000400 2521*
*P-her husband*

RECEIVED
JUN
BY: *Persina* TH
6-17-16

**SUMMONS**
*(CITACION JUDICIAL)*

SUM-100
FOR COURT USE ONLY
(SOLO PARA USO DE LA CORTE)

(ENDORSED)
FILED

JUN 10 2016

T. NGO *Asst Clerk*

**NOTICE TO DEFENDANT:**
*(AVISO AL DEMANDADO):*

FAY SERVICING, LLC; U.S. BANK, N.A.; FLAGSTAR BANK, FSB;
and DOES 1 through 50, inclusive

**YOU ARE BEING SUED BY PLAINTIFF:**
*(LO ESTÁ DEMANDANDO EL DEMANDANTE):*
MICHAEL PARADISE

NOTICE! You have been sued. The court may decide against you without your being heard unless you respond within 30 days. Read the information below.

You have 30 CALENDAR DAYS after this summons and legal papers are served on you to file a written response at this court and have a copy served on the plaintiff. A letter or phone call will not protect you. Your written response must be in proper legal form if you want the court to hear your case. There may be a court form that you can use for your response. You can find these court forms and more information at the California Courts Online Self-Help Center (www.courtinfo.ca.gov/selfhelp), your county law library, or the courthouse nearest you. If you cannot pay the filing fee, ask the court clerk for a fee waiver form. If you do not file your response on time, you may lose the case by default, and your wages, money, and property may be taken without further warning from the court.

There are other legal requirements. You may want to call an attorney right away. If you do not know an attorney, you may want to call an attorney referral service. If you cannot afford an attorney, you may be eligible for free legal services from a nonprofit legal services program. You can locate these nonprofit groups at the California Legal Services Web site (www.lawhelpcalifornia.org), the California Courts Online Self-Help Center (www.courtinfo.ca.gov/selfhelp), or by contacting your local court or county bar association. NOTE: The court has a statutory lien for waived fees and costs on any settlement or arbitration award of $10,000 or more in a civil case. The court's lien must be paid before the court will dismiss the case.

¡AVISO! Lo han demandado. Si no responde dentro de 30 días, la corte puede decidir en su contra sin escuchar su versión. Lea la información a continuación.

Tiene 30 DÍAS DE CALENDARIO después de que le entreguen esta citación y papeles legales para presentar una respuesta por escrito en esta corte y hacer que se entregue una copia al demandante. Una carta o una llamada telefónica no lo protegen. Su respuesta por escrito tiene que estar en formato legal correcto si desea que procesen su caso en la corte. Es posible que haya un formulario que usted pueda usar para su respuesta. Puede encontrar estos formularios de la corte y más información en el Centro de Ayuda de las Cortes de California (www.sucorte.ca.gov), en la biblioteca de leyes de su condado o en la corte que le quede más cerca. Si no puede pagar la cuota de presentación, pida al secretario de la corte que le dé un formulario de exención de pago de cuotas. Si no presenta su respuesta a tiempo, puede perder el caso por incumplimiento y la corte le podrá quitar su sueldo, dinero y bienes sin más advertencia.

Hay otros requisitos legales. Es recomendable que llame a un abogado inmediatamente. Si no conoce a un abogado, puede llamar a un servicio de remisión a abogados. Si no puede pagar a un abogado, es posible que cumpla con los requisitos para obtener servicios legales gratuitos de un programa de servicios legales sin fines de lucro. Puede encontrar estos grupos sin fines de lucro en el sitio web de California Legal Services, (www.lawhelpcalifornia.org), en el Centro de Ayuda de las Cortes de California, (www.sucorte.ca.gov) o poniéndose en contacto con la corte o el colegio de abogados locales. AVISO: Por ley, la corte tiene derecho a reclamar las cuotas y los costos exentos por imponer un gravamen sobre cualquier recuperación de $10,000 ó más de valor recibida mediante un acuerdo o una concesión de arbitraje en un caso de derecho civil. Tiene que pagar el gravamen de la corte antes de que la corte pueda desechar el caso.

| | |
|---|---|
| The name and address of the court is:<br>*(El nombre y dirección de la corte es):* Santa Clara County Superior Court | CASE NUMBER:<br>*(Número del Caso):* **16CV296237** |

191 North First Street
San Jose, CA 95113

The name, address, and telephone number of plaintiff's attorney, or plaintiff without an attorney, is:
*(El nombre, la dirección y el número de teléfono del abogado del demandante, o del demandante que no tiene abogado, es):*
Marc Applbaum, 2150 W Washington Street, Suite 104 San Diego, CA 92110 Tel: (619) 756-7300

| DATE: JUN 1 0 2016 | DAVID H. YAMASAKI | Clerk, by | T. NGO | , Deputy |
|---|---|---|---|---|
| *(Fecha)* | Chief Executive Officer/Clerk | *(Secretario)* | | *(Adjunto)* |

(For proof of service of this summons, use Proof of Service of Summons (form POS-010).)
*(Para prueba de entrega de esta citatión use el formulario Proof of Service of Summons, (POS-010)).*

**NOTICE TO THE PERSON SERVED:** You are served
1. ☐ as an individual defendant.
2. ☐ as the person sued under the fictitious name of *(specify):*

3. ☑ on behalf of *(specify):* Flagstar Bank, FSB
   under: ☑ CCP 416.10 (corporation)          ☐ CCP 416.60 (minor)
          ☐ CCP 416.20 (defunct corporation)  ☐ CCP 416.70 (conservatee)
          ☐ CCP 416.40 (association or partnership)  ☐ CCP 416.90 (authorized person)
          ☐ other *(specify):*
4. ☐ by personal delivery on *(date):*

[SEAL]

Form Adopted for Mandatory Use
Judicial Council of California
SUM-100 [Rev. July 1, 2009]

**SUMMONS**

Page 1 of 1

Code of Civil Procedure §§ 412.20, 465
www.courtinfo.ca.gov

CM-010

| ATTORNEY OR PARTY WITHOUT ATTORNEY *(Name, State Bar number, and address):* | (ENDORSED) *FOR COURT USE ONLY* |
|---|---|
| KETTNER LAW CORP.<br>Marc Applbaum (SBN 222511)<br>2150 W Washington Street, Suite 104<br>San Diego, CA 92110 | FILED<br><br>JUN 10 2016 |

TELEPHONE NO: 619-756-7300        FAX NO: 619-363-3944

ATTORNEY FOR *(Name):* Michael Paradise

SUPERIOR COURT OF CALIFORNIA, COUNTY OF   Santa Clara

STREET ADDRESS: 191 North First Street

MAILING ADDRESS:

CITY AND ZIP CODE: San Jose, 95113

BRANCH NAME: Downtown Superior Court

_____ NGO _____

*Deputy Clerk*

CASE NAME:

Paradise v. Fay Servicing, LLC

| CIVIL CASE COVER SHEET | | Complex Case Designation | | CASE NUMBER: |
|---|---|---|---|---|
| [✓] Unlimited<br>(Amount<br>demanded<br>exceeds $25,000) | [ ] Limited<br>(Amount<br>demanded is<br>$25,000 or less) | [ ] Counter    [ ] Joinder<br>Filed with first appearance by defendant<br>(Cal. Rules of Court, rule 3.402) | | 16CV296237 |
| | | | | JUDGE: |
| | | | | DEPT: |

*Items 1–6 below must be completed (see instructions on page 2).*

**1. Check one box below for the case type that best describes this case:**

| Auto Tort | Contract | Provisionally Complex Civil Litigation<br>(Cal. Rules of Court, rules 3.400–3.403) |
|---|---|---|
| [ ] Auto (22)<br>[ ] Uninsured motorist (46) | [ ] Breach of contract/warranty (06)<br>[ ] Rule 3.740 collections (09)<br>[ ] Other collections (09)<br>[ ] Insurance coverage (18)<br>[ ] Other contract (37) | [ ] Antitrust/Trade regulation (03)<br>[ ] Construction defect (10)<br>[ ] Mass tort (40)<br>[ ] Securities litigation (28)<br>[ ] Environmental/Toxic tort (30) |
| **Other PI/PD/WD (Personal Injury/Property<br>Damage/Wrongful Death) Tort** | | |
| [ ] Asbestos (04)<br>[ ] Product liability (24)<br>[ ] Medical malpractice (45)<br>[ ] Other PI/PD/WD (23) | **Real Property**<br>[ ] Eminent domain/Inverse<br>condemnation (14)<br>[ ] Wrongful eviction (33)<br>[✓] Other real property (26) | [ ] Insurance coverage claims arising from the<br>above listed provisionally complex case<br>types (41) |
| **Non-PI/PD/WD (Other) Tort** | | **Enforcement of Judgment** |
| [ ] Business tort/unfair business practice (07)<br>[ ] Civil rights (08)<br>[ ] Defamation (13)<br>[ ] Fraud (16)<br>[ ] Intellectual property (19)<br>[ ] Professional negligence (25)<br>[ ] Other non-PI/PD/WD tort (35) | **Unlawful Detainer**<br>[ ] Commercial (31)<br>[ ] Residential (32)<br>[ ] Drugs (38)<br>**Judicial Review**<br>[ ] Asset forfeiture (05)<br>[ ] Petition re: arbitration award (11)<br>[ ] Writ of mandate (02) | [ ] Enforcement of judgment (20)<br>**Miscellaneous Civil Complaint**<br>[ ] RICO (27)<br>[ ] Other complaint *(not specified above)* (42)<br>**Miscellaneous Civil Petition**<br>[ ] Partnership and corporate governance (21)<br>[ ] Other petition *(not specified above)* (43) |
| **Employment**<br>[ ] Wrongful termination (36)<br>[ ] Other employment (15) | [ ] Other judicial review (39) | |

**2.** This case [ ] is  [✓] is not   complex under rule 3.400 of the California Rules of Court. If the case is complex, mark the factors requiring exceptional judicial management:

a. [ ] Large number of separately represented parties

b. [ ] Extensive motion practice raising difficult or novel issues that will be time-consuming to resolve

c. [ ] Substantial amount of documentary evidence

d. [ ] Large number of witnesses

e. [ ] Coordination with related actions pending in one or more courts in other counties, states, or countries, or in a federal court

f. [ ] Substantial postjudgment judicial supervision

**3.** Remedies sought *(check all that apply):* a. [✓] monetary   b. [✓] nonmonetary; declaratory or injunctive relief   c. [ ] punitive

**4.** Number of causes of action *(specify):* 8

**5.** This case [ ] is  [✓] is not   a class action suit.

**6.** If there are any known related cases, file and serve a notice of related cases. *(You may use form CM-015.)*

Date: June 2, 2016

Marc Applbaum
_____
(TYPE OR PRINT NAME)                                   ► _____
                                                          (SIGNATURE OF PARTY OR ATTORNEY FOR PARTY)

**NOTICE**
- Plaintiff must file this cover sheet with the first paper filed in the action or proceeding (except small claims cases or cases filed under the Probate Code, Family Code, or Welfare and Institutions Code). (Cal. Rules of Court, rule 3.220.) Failure to file may result in sanctions.
- File this cover sheet in addition to any cover sheet required by local court rule.
- If this case is complex under rule 3.400 et seq. of the California Rules of Court, you must serve a copy of this cover sheet on all other parties to the action or proceeding.
- Unless this is a collections case under rule 3.740 or a complex case, this cover sheet will be used for statistical purposes only.

Page 1 of 2

Form Adopted for Mandatory Use<br>Judicial Council of California<br>CM-010 [Rev. July 1, 2007]

**CIVIL CASE COVER SHEET**

Cal. Rules of Court, rules 2.30, 3.220, 3.400–3.403, 3.740;<br>Cal. Standards of Judicial Administration, std. 3.10<br>www.courtinfo.ca.gov

BY FAX

CM-010

## INSTRUCTIONS ON HOW TO COMPLETE THE COVER SHEET

**To Plaintiffs and Others Filing First Papers.** If you are filing a first paper (for example, a complaint) in a civil case, you must complete and file, along with your first paper, the *Civil Case Cover Sheet* contained on page 1. This information will be used to compile statistics about the types and numbers of cases filed. You must complete items 1 through 6 on the sheet. In item 1, you must check one box for the case type that best describes the case. If the case fits both a general and a more specific type of case listed in item 1, check the more specific one. If the case has multiple causes of action, check the box that best indicates the primary cause of action. To assist you in completing the sheet, examples of the cases that belong under each case type in item 1 are provided below. A cover sheet must be filed only with your initial paper. Failure to file a cover sheet with the first paper filed in a civil case may subject a party, its counsel, or both to sanctions under rules 2.30 and 3.220 of the California Rules of Court.

**To Parties in Rule 3.740 Collections Cases.** A "collections case" under rule 3.740 is defined as an action for recovery of money owed in a sum stated to be certain that is not more than $25,000, exclusive of interest and attorney's fees, arising from a transaction in which property, services, or money was acquired on credit. A collections case does not include an action seeking the following: (1) tort damages, (2) punitive damages, (3) recovery of real property, (4) recovery of personal property, or (5) a prejudgment writ of attachment. The identification of a case as a rule 3.740 collections case on this form means that it will be exempt from the general time-for-service requirements and case management rules, unless a defendant files a responsive pleading. A rule 3.740 collections case will be subject to the requirements for service and obtaining a judgment in rule 3.740.

**To Parties in Complex Cases.** In complex cases only, parties must also use the *Civil Case Cover Sheet* to designate whether the case is complex. If a plaintiff believes the case is complex under rule 3.400 of the California Rules of Court, this must be indicated by completing the appropriate boxes in items 1 and 2. If a plaintiff designates a case as complex, the cover sheet must be served with the complaint on all parties to the action. A defendant may file and serve no later than the time of its first appearance a joinder in the plaintiff's designation, a counter-designation that the case is not complex, or, if the plaintiff has made no designation, a designation that the case is complex.

### CASE TYPES AND EXAMPLES

**Auto Tort**
Auto (22)–Personal Injury/Property
Damage/Wrongful Death
Uninsured Motorist (46) *(if the
case involves an uninsured
motorist claim subject to
arbitration, check this item
instead of Auto)*

**Other PI/PD/WD (Personal Injury/
Property Damage/Wrongful Death)
Tort**
Asbestos (04)
Asbestos Property Damage
Asbestos Personal Injury/
Wrongful Death
Product Liability *(not asbestos or
toxic/environmental)* (24)
Medical Malpractice (45)
Medical Malpractice–
Physicians & Surgeons
Other Professional Health Care
Malpractice
Other PI/PD/WD (23)
Premises Liability (e.g., slip
and fall)
Intentional Bodily Injury/PD/WD
(e.g., assault, vandalism)
Intentional Infliction of
Emotional Distress
Negligent Infliction of
Emotional Distress
Other PI/PD/WD

**Non-PI/PD/WD (Other) Tort**
Business Tort/Unfair Business
Practice (07)
Civil Rights (e.g., discrimination,
false arrest) *(not civil
harassment)* (08)
Defamation (e.g., slander, libel)
(13)
Fraud (16)
Intellectual Property (19)
Professional Negligence (25)
Legal Malpractice
Other Professional Malpractice
*(not medical or legal)*
Other Non-PI/PD/WD Tort (35)

**Employment**
Wrongful Termination (36)
Other Employment (15)

**Contract**
Breach of Contract/Warranty (06)
Breach of Rental/Lease
Contract *(not unlawful detainer
or wrongful eviction)*
Contract/Warranty Breach–Seller
Plaintiff *(not fraud or negligence)*
Negligent Breach of Contract/
Warranty
Other Breach of Contract/Warranty
Collections (e.g., money owed, open
book accounts) (09)
Collection Case–Seller Plaintiff
Other Promissory Note/Collections
Case
Insurance Coverage *(not provisionally
complex)* (18)
Auto Subrogation
Other Coverage
Other Contract (37)
Contractual Fraud
Other Contract Dispute

**Real Property**
Eminent Domain/Inverse
Condemnation (14)
Wrongful Eviction (33)
Other Real Property (e.g., quiet title) (26)
Writ of Possession of Real Property
Mortgage Foreclosure
Quiet Title
Other Real Property *(not eminent
domain, landlord/tenant, or
foreclosure)*

**Unlawful Detainer**
Commercial (31)
Residential (32)
Drugs (38) *(if the case involves illegal
drugs, check this item; otherwise,
report as Commercial or Residential)*

**Judicial Review**
Asset Forfeiture (05)
Petition Re: Arbitration Award (11)
Writ of Mandate (02)
Writ–Administrative Mandamus
Writ–Mandamus on Limited Court
Case Matter
Writ–Other Limited Court Case
Review
Other Judicial Review (39)
Review of Health Officer Order
Notice of Appeal–Labor
Commissioner Appeals

**Provisionally Complex Civil Litigation (Cal.
Rules of Court Rules 3.400–3.403)**
Antitrust/Trade Regulation (03)
Construction Defect (10)
Claims Involving Mass Tort (40)
Securities Litigation (28)
Environmental/Toxic Tort (30)
Insurance Coverage Claims
*(arising from provisionally complex
case type listed above)* (41)

**Enforcement of Judgment**
Enforcement of Judgment (20)
Abstract of Judgment (Out of
County)
Confession of Judgment *(non-
domestic relations)*
Sister State Judgment
Administrative Agency Award
*(not unpaid taxes)*
Petition/Certification of Entry of
Judgment on Unpaid Taxes
Other Enforcement of Judgment
Case

**Miscellaneous Civil Complaint**
RICO (27)
Other Complaint *(not specified
above)* (42)
Declaratory Relief Only
Injunctive Relief Only *(non-
harassment)*
Mechanics Lien
Other Commercial Complaint
Case *(non-tort/non-complex)*
Other Civil Complaint
*(non-tort/non-complex)*

**Miscellaneous Civil Petition**
Partnership and Corporate
Governance (21)
Other Petition *(not specified
above)* (43)
Civil Harassment
Workplace Violence
Elder/Dependent Adult
Abuse
Election Contest
Petition for Name Change
Petition for Relief From Late
Claim
Other Civil Petition

**CIVIL CASE COVER SHEET**

(ENDORSED)
FILED

JUN 10 2016

[illegible stamp]
BY: [illegible]
T. NGO

1   Kettner Law Corporation
2   Marc Applbaum (SBN 222511)
    2150 W Washington Street, Suite 104
3   San Diego, CA 92110
    Tel: (619) 756-7300
4   Fax: (619) 363-3944
    marc@kettnerlawcorp.com
5

6   Attorney for Plaintiff, MICHAEL PARADISE

7

8

9

10              SUPERIOR COURT OF THE STATE OF CALIFORNIA

11                         COUNTY OF SANTA CLARA

12

13   MICHAEL PARADISE                  Case No.
                                                16CV296237
14
                                       COMPLAINT FOR:
15          Plaintiff,
                                       1. VIOLATION OF CALIFORNIA
16   v.                                   HOMEOWNER BILL OF RIGHTS
                                       2. STATUTORY UNFAIR COMPETITION
17   FAY SERVICING, LLC; U.S. BANK, N.A.;   – CALIFORNIA BUSINESS AND
     FLAGSTAR BANK, FSB; and DOES 1       PROFESSIONS CODE §17200 ET SEQ.
18   through 50, inclusive,            3. BREACH OF COVENANT OF GOOD
                                          FAITH AND FAIR DEALING
19                                     4. NEGLIGENCE
                                       5. NEGLIGENT INFLICTION OF
20                                        EMOTIONAL DISTRESS
21          Defendants.                6. BREACH OF EQUAL CREDIT
                                          OPPORTUNITY ACT
22                                     7. FOR DECLARATORY RELIEF
                                       8. FOR INJUNCTIVE RELIEF
23
                                       JURY TRIAL DEMANDED
24

25                                     BY FAX
26

27       Plaintiff, MICHAEL PARADISE, by and through his attorney, alleges as follows:

28

                                     - 1 -
     PARADISE v. FAY SERVICING, LLC – COMPLAINT FOR DAMAGES AND INJUNCTIVE RELIEF

## PARTIES

1.      Plaintiff, MICHAEL PARADISE, ("Plaintiff") is, and at all times relevant to the facts herein was, an individual residing in real property commonly known as **3927 Rhoda Drive, San Jose, CA 95117** ("subject property") located in the County of Santa Clara, in the State of California.

2.      Plaintiff is informed and believes and based thereon alleges that Defendant FAY SERVICING, LLC ("FAY") is, and at all times relevant to the facts herein was, a limited liability company registered in the state of California, doing business in the County of Santa Clara, State of California as current loan servicer.

3.      Plaintiff is informed and believes and based thereon alleges that Defendant U.S. BANK, N.A. ("US BANK") is, and at all times relevant to the facts herein was, a national association registered in the state of California, doing business in the County of Santa Clara, State of California as current loan investor and as Trustee for CVF Mortgage Loan Acquisition Company.

4.      Plaintiff is informed and believes and based thereon alleges that Defendant FLAGSTAR BANK, FSB ("FLAGSTAR") is, and at all times relevant to the facts herein was, a Federal Savings Bank registered in the state of California, doing business in the County of Santa Clara, State of California as prior loan servicer.

5.      The true names and capacities, whether individual, corporate, partnership, associate, or otherwise of Defendants DOES 1 through 50, are unknown to Plaintiff who sues each Defendant by such fictitious names. Plaintiff is informed and believes and based thereon alleges each of the Defendants designated herein as a fictitiously named Defendant is, and in some manner, was responsible for events and happenings referred to herein, either contractually or tortuously. When Plaintiff ascertains the true names of capacities of DOES 1 through 50, he will amend this complaint accordingly.

6.      Plaintiff is informed and believes and based thereon alleges that Defendants and each of them, are, and at all times herein were, the agents, joint ventures, officers, members,

- 2 -

1   representatives, servants, consultants or employees of their co-defendants, and in committing the
2   acts herein allege, were acting within the scope of such affiliation with knowledge, permission,
3   consent or subsequent ratification of their co-defendants.

4
5                               **JURISDICTION AND VENUE**
6          7.      This Court has subject matter jurisdiction over this matter, as the Subject Property
7   is located in the County of Santa Clara, California.
8          8.      In addition, this Court has subject matter jurisdiction over the claims raised herein
9   pursuant to *California Constitution* Article VI, section 10, which grants this Court "original
10  jurisdiction in all causes except those given by statute to other trial courts."
11         9.      Defendants herein purposefully directed their activities to the State of California.
12  As a result, Defendants caused an event or events to occur in California, and more particularly in
13  the County of Santa Clara, out of which this action arises and which form the basis of this action.
14         10.     Defendants either are entities duly licensed to do business in the State of California
15  or are entities that regularly conduct business within this judicial district within California.
16         11.     Venue is proper for this Court since the Subject Property is located in the County
17  of Santa Clara and because events or events out of which this action arises and which form the
18  basis for this action arise in the County of Santa Clara.
19
20                               **STATEMENT OF FACTS**
21         12.     On or about October 23, 2006, Rebekah V. Owen financed the Subject Property
22  for $620,000.00.  As evidence of the loan, Ms. Owen executed a promissory note ("Note"), and
23  concurrently executed Deed of Trust ("Deed of Trust") as security for the Note. The Deed of
24  Trust for the Subject Property was recorded as Document No. 19164224 in the Official Records
25  of the Santa Clara County Recorder's Office. The named Lender in the Deed of Trust was
26  FLAGSTAR. The named Trustee in the Deed of Trust was Joan H. Anderson.
27
28

                                    - 3 -

1    13.    Ms. Owen was married to Plaintiff. Unfortunately, Ms. Owen passed away and

2  Subject Property was held in the "Paradise Living Trust." Plaintiff was confirmed Trustee of the

3  "Paradise Living Trust." A court order confirming such was recorded on or about April 09, 2015,

4  as Document No. 22913096 in the Official Records of the Santa Clara County Recorder's Office.

5    14.    The Subject Property is Plaintiff's principal residence and is owner-occupied.

6    15.    During or around the beginning of 2013, Plaintiff began experiencing financial

7  hardship as a result of underemployment. Plaintiff contacted FLAGSTAR for any assistance they

8  could offer.

9    16.    FLAGSTAR told Plaintiff he was not eligible for a loan modification, and as such,

10  his only option was to continue to make mortgage payments in full and on time. FLAGSTAR

11  failed to first review any of Plaintiff's financial records prior to telling him he would not receive

12  a modification.

13    17.    Plaintiff questioned why FLAGSTAR would consider him ineligible for a loan

14  modification without having first reviewed any of Plaintiff's records. Furthermore, Plaintiff

15  contends FLAGSTAR failed to provide any meaningful assistance to avoid foreclosure as

16  required by law. FLAGSTAR ignored Plaintiff's questions and concerns and refused to provide

17  Plaintiff with any assistance whatsoever.

18    18.    Throughout the following months, Plaintiff continued to exhaust every possible

19  avenue to procure assistance. FLAGSTAR refused to provide Plaintiff any assistance whatsoever.

20  Plaintiff did not understand why FLAGSTAR was so hesitant to provide Plaintiff with assistance.

21  Plaintiff realized FLAGSTAR's only intention was to push Plaintiff to foreclosure.

22    19.    On or about April 10, 2013, Defendants caused to be recorded a Substitution of

23  Trustee which purported to replace the original trustee under the Deed of Trust with Law Offices

24  of Les Zieve ("Zieve"). The Substitution of Trustee was recorded as Document No. 22166797 in

25  the Official Santa Clara County Recorder's Office Records.

26    20.    On or about April 10, 2013, Sara Simonini, purporting to be an agent of Zieve, and

27  alleging to be the trustee under the Deed of Trust, caused to be recorded a Notice of Default and

28

- 4 -
PARADISE v. FAY SERVICING, LLC – COMPLAINT FOR DAMAGES AND INJUNCTIVE RELIEF

1  Election to Sell under Deed of Trust ("NOD") in the Official Santa Clara County Recorder's

2  Office Records as Document No. 22166798.

3      21.     On or about July 19, 2013, Christine O' Brien, purporting to be an agent of Zieve,

4  alleging to be the trustee under the Deed of Trust, caused to be recorded a Notice of Trustee's

5  Sale ("NTS") in the Official Santa Clara County Recorder's Office Records as Document No.

6  22308679.

7      22.     After receiving notification of the NOD and NTS, Plaintiff again reached out to

8  FLAGSTAR in a last ditch effort to secure a loan modification.  Finally, a representative from

9  FLAGSTAR encouraged Plaintiff to apply for a modification.  The representative informed

10  Plaintiff that his application would be reviewed with priority to ensure he did not fall further

11  behind on his mortgage.

12      23.     Plaintiff immediately gathered all required documents and submitted an

13  application for loan modification into FLAGSTAR.  FLAGSTAR delayed Plaintiff's review and

14  refused to provide him any meaningful updates throughout the process.

15      24.     After a prolonged review which put Plaintiff deeper into default, FLAGSTAR

16  offered Plaintiff a modification.  After reviewing FLAGSTAR's offer, Plaintiff realized the terms

17  of the proposed modification were wholly unreasonable.  The modification essentially did not

18  lower Plaintiff's monthly mortgage payments because the interest rate was increased to a much

19  higher level.  Plaintiff could not afford to reinstate his loan, so he accepted the modification after

20  receiving a promise from a FLAGSTAR representative that FLAGSTAR would review their offer

21  to Plaintiff

22      25.     Plaintiff knew he could not truly afford the terms of the modification since it nearly

23  exceeded his monthly income.  Plaintiff asked FLAGSTAR to reconsider their offer but rather

24  than address any of Plaintiff's questions and concerns, they transferred servicing obligations of

25  Plaintiff's loan to Defendant FAY.

26      26.     On or about September 19, 2013, an Assignment of Deed of Trust was executed,

27  and by that Assignment, all rights, title and interest under the Deed of Trust were assigned to

28

PARADISE v. FAY SERVICING, LLC – COMPLAINT FOR DAMAGES AND INJUNCTIVE RELIEF

1  Defendant US BANK. The Assignment of Deed of Trust was recorded as Document No.
2  22391632 in the Official Records of the Santa Clara County Recorder's Office.

3       27.     Plaintiff immediately contacted FAY to seek any assistance they could offer in
4  securing a more manageable monthly payment.   FAY continuously ignored Plaintiff's
5  correspondence and failed to provide him with any meaningful assistance.

6       28.    Plaintiff began to fall behind on his mortgage payment since the modification
7  represented a monthly payment Plaintiff could not realistically afford.  Every attempt to contact
8  FAY for assistance was fruitless.

9       29.     Plaintiff fell approximately $49,000 into default on his loan.  At that point,
10 Plaintiff realized he would not receive any assistance from FAY to remedy the situation.
11 Therefore, to protect the home from being foreclosed upon, Plaintiff collected nearly the entirety
12 of his savings and submitted into FAY a $49,000 lump sum payment to fully reinstate his loan.

13      30.     For the following eight months, Plaintiff made each and every payment in
14 accordance with the terms of his modification.  Thereafter, Plaintiff received notification that he
15 owed an additional $5,800.  Plaintiff immediately contacted FAY to determine why they were
16 demanding an additional $5,800 after he had fully reinstated his loan and faithfully made each
17 and every monthly payment up until that point.  Again, FAY failed to provide Plaintiff with any
18 answers.

19      31.     The following four months, Plaintiff made every payment on time and in full, but
20 FAY refused to accept Plaintiff's payments.  FAY claimed each payment was "insufficient" since
21 it did not include the additional $5,800.  Plaintiff informed FAY that prior to paying $5,800, he
22 desired to see an accounting from FAY to determine why they were demanding the additional
23 amount since Plaintiff contends he had been fully current at the time.

24      32.     FAY's ignorance in providing any explanation to Plaintiff or offering any
25 investigation as to why they demanded an unknown amount caused Plaintiff to again fall $11,000
26 into default on his loan.

27
28

33.     To protect his house from foreclosure, Plaintiff submitted into FAY a lump sum payment of $11,000 with strict instructions that the payment be applied to his default.  Rather than apply the payment to Plaintiff's loan, FAY applied to the payment to the $5,800 and put the rest in an unapplied account.

34.     To this day, Plaintiff still has not received any verification as to why FAY applied an additional charge of $5,800 to his account.

35.     Since FAY failed to apply Plaintiff's reinstatement payment to his mortgage loan, Plaintiff had no choice but to request another modification.  Plaintiff gathered all materials and submitted a full and complete modification into FAY.  Plaintiff received guarantees that his application would be reviewed and a decision would be reached within the following 30 days.

36.     After months of futile contact, FAY sent Plaintiff a letter indicating his application was incomplete for missing documents.  Plaintiff was furious that FAY was just then notifying him of missing documents after Plaintiff had received prior assurances from multiple FAY representatives that his application was complete and in review.

37.     Plaintiff contends he submitted all required documents for a loan modification.  FAY had either lost or misplaced Plaintiff's submitted documents.  Plaintiff suffered great anxiety since the documents FAY lost or misplaced contained highly sensitive and confidential information concerning Plaintiff's state of financial affairs.  Nevertheless, Plaintiff resubmitted all requested documents into FAY and continued to await a resolution.

38.     At that point, Plaintiff wanted to establish a single point of contact with FAY to ensure he could speak to the same representative who was knowledgeable about Plaintiff's affairs thus far.  Throughout Plaintiff's dealings with FAY, his single point of contact changed on multiple occasions.  Plaintiff rarely spoke with his assigned contact and, rather, was transferred from one representative to another all of whom gave conflicting answers to questions and inaccurate status updates.

39.     Plaintiff's voicemails consistently went unanswered.  The only updates obtained were a result of Plaintiff's due diligence in consistently contacting FAY, rather than vice-versa

1    as required by the Homeowner Bill of Rights. An uncommunicative single point of contact does
2    not satisfy the requirement under Cal. Civ. Code §2923.7.

3          40.      After a substantial delay, Plaintiff received notification that FAY had denied
4    Plaintiff's request for loan modification as a result of missing documents. Plaintiff immediately
5    contacted FAY to ask if he could appeal FAY's denial since he had submitted every document
6    FAY had requested on numerous occasions. A representative from FAY inaccurately informed
7    Plaintiff that an appeal was not possible.

8          41.      Defendants failed to abide by Civil Code 2923.55 due to the fact that they did not
9    review Plaintiff's financial situation and further did not advise him of all options available to
10    avoid foreclosure.

11          42.      Defendants failed in their obligations to both offer assistance to Plaintiff prior to
12    the Notice of Default, Notice of Trustee's Sale and meeting communication requirements once
13    Plaintiff was able to submit a request. Defendants did not offer Plaintiff a meaningful review as
14    required by California law.

15          43.      Defendants are actively moving toward foreclosure of the home and took clear
16    steps to satisfy this state's requirements toward a non-judicial foreclosure, including recording a
17    Notice of Default and Notice of Trustee's Sale.

18          44.      Plaintiff now faces the loss of the Subject Property, as well as the lost opportunity
19    to pursue foreclosure prevention options that he would have pursued but for the Defendants'
20    violation of California Civil Code section 2924 et. seq. Defendants violated communication
21    requirements under the California Homeowners Bill of Rights and failed to rescind the Notice of
22    Default to remedy said violations.

23          45.      Consequently, Plaintiff is informed and believes and based thereon alleges that the
24    negotiations were not in good faith, and were a mere "smoke screen" for use by defendant to lull
25    Plaintiff into a state of complacency while his home is foreclosed on and taken from him.

26          46.      By way of this Complaint, Plaintiff seeks a temporary restraining order, followed
27    by a preliminary injunction, enjoining Defendants from selling Plaintiff's property at auction.

28

1   Plaintiff also seeks damages for Defendants blatant violation of the requirements of California
2   Civil Codes §§ 2923.55, 2923.6, 2923.7, 2923.9, 2924.10, 2924.11, 2924.12.

3

4                          **FIRST CAUSE OF ACTION**
5          **VIOLATION OF CALIFORNIA HOMEOWNER BILL OF RIGHTS**
6                            (Against ALL Defendants)
7          47.    Plaintiff hereby incorporates by this reference paragraphs 1 through 46, as fully
8   set forth herein.
9          48.    The Homeowner Bill of Rights consists of a series of related bills including two
10  identical bills that were passed on July 2, 2012 by the state Senate and Assembly: AB 278 (Eng,
11  Feuer, Pérez, Mitchell) and SB 900 (Leno, Evans, Corbett, DeSaulnier, Pavley, Steinberg). Both
12  of which ultimately give rights back to borrowers and create a system in which banks can be held
13  accountable for pursuing their own interests above the borrowers.
14         49.    Lenders are now legally obligated to ensure a borrower receives "meaningful"
15  opportunity to be considered for any and all options available to avoid foreclosure. It also
16  guarantees struggling homeowners a single point of contact at their lender with knowledge of
17  their loan and direct access to decision makers, and imposes civil penalties on fraudulently signed
18  mortgage documents.
19         50.    Plaintiff contends that California Civil Code § 2923.6 mandates that a good faith
20  review and an actual exploration take place regarding the borrower's financial situation and the
21  borrower's options to stay in his home. It is the servicer's obligation to act in the best interests of
22  all parties to the loan pool or investors in the pooling and servicing agreement if it agrees to or
23  implements a loan modification or workout plan for which the following apply:
24         (1) The loan is in payment default or payment default is reasonably foreseeable;
25         (2) Anticipated recovery under loan modification or work-out plan exceeds the anticipated
26         recovery through foreclosure on a net present value basis;
27
28

                                    - 9 -

1    (3) It is the intent of the Legislature that the mortgagee, beneficiary, or authorized agent

2    offers the borrower a loan modification or workout plan if such a modification or plan is

3    consistent with its contractual or other authority.

4    51.    Plaintiff alleges that Defendants violated Civil Code §2923.6.  Plaintiff requested

5 mortgage relief assistance on numerous occasions to help save his home from foreclosure yet

6 received nothing but runaround assistance from Defendants.

7    52.    California Civil Code section 2924.18 prohibits a mortgage servicer from

8 commencing or continuing the foreclosure process pending a completed review of a loan

9 modification application submitted by a borrower and until after the borrower has been provided

10 with a written decision about eligibility for a loan modification.

11    53.    Plaintiff alleges that Defendants continued the foreclosure process without

12 offering Plaintiff any assistance regarding how to avoid foreclosure.  On multiple occasions,

13 Plaintiff demanded assistance from Defendants, but Defendants only ignored Plaintiff's requests

14 for help.

15    54.    Defendants' inability to accurately inform Plaintiff of further instructions, missing

16 and/or expiring documents, and status updates caused Plaintiff to believe on multiple occasions

17 Defendants would provide Plaintiff no assistance, all the while as Defendants continued to push

18 closer to foreclosure.

19    55.    California Civil Code section 2923.7 provides that upon the request of a

20 foreclosure prevention alternative, the mortgage servicer "shall promptly establish a single point

21 of contact and provide the borrower one or more direct means of communication with the single

22 point of contact."

23    56.    Despite Plaintiff's request for assistance with an alternative to foreclosure, the

24 numerous representatives at FAY that Plaintiff spoke with were unable and/or unwilling to help

25 and consistently gave Plaintiff vague answers to questions.  Said representatives failed to offer

26 adequate assistance to Plaintiff including further instructions and status updates regarding an

27 application for assistance.

28

57.     Per California Civil Code 2923.6, if a loan modification application is denied, a mortgage servicer is required to send a borrower written notice identifying the reasons for denial, including (1) timing and instructions for requesting an appeal; (2) if applicable, reasons for investor disallowance of the loan modification; (3) information related to net present value calculation, if denial was based on this calculation; (4) if applicable, a finding of a prior failed loan modification; and (5) a description of other foreclosure prevention alternatives for which the borrower may be eligible.  A mortgage servicer must provide a borrower at least 30 days from the date of a written denial to appeal the denial and provide evidence that the mortgage servicer's determination was in error.

58.     Plaintiff alleges he was not formally declined by mail or phone.

59.     California Civil Code section 2923.55 provides the following: "a mortgage servicer shall send the following information in writing to the borrower…

(B) A statement that the borrower may request the following:

(i) A copy of the borrower's promissory note or other evidence of indebtedness.

(ii) A copy of the borrower's deed of trust or mortgage.

(iii) A copy of any assignment, if applicable, of the borrower's mortgage or deed of trust required to demonstrate the right of the mortgage servicer to foreclose.

(iv) A copy of the borrower's payment history since the borrower was last less than 60 days past due."

60.     Plaintiff has not received any of the documents listed in Cal. Civil Code section 2923.55 (B), in violation of Cal. Civil Code section 2923.55, despite a request to furnish the aforementioned documents.

61.     Plaintiff has suffered and will continue to suffer substantial irreparable harm, including but not limited to the potential loss of the Subject Property, the cost and expense of the instant pending litigation, continuing emotional distress, and other actual consequential damages that will be proven on date of trial.  Furthermore, Plaintiff has been harmed in that Plaintiff was

- 11 -

1  unable to exercise his right to reinstate the loan under Cal. Civil Code section 2924c, as well as
2  exercise his right to secure other alternatives to foreclosure.

### SECOND CAUSE OF ACTION

### STATUTORY UNFAIR COMPETITION – CALIFORNIA BUSINESS AND
### PROFESSIONS CODE §17200 ET SEQ.

(Against ALL Defendants)

62.    Plaintiff hereby incorporates by this reference paragraphs 1 through 61, as though fully incorporated herein.

63.    Defendants' conduct as alleged herein constitutes unlawful, unfair or fraudulent business act(s) or practice(s) within the meaning of California Business and Professions Code §17200 et seq.

64.    Specifically, Defendants are unlawfully and unfairly proceeding with foreclosure against California homeowners, including Plaintiff, in direct violation of California Civil Code foreclosure procedure statutes, including newly amended statutes implemented effective January 1, 2013 by way of AB 237 and SB 900.

65.    Upon information and belief, Defendants have pattern and practice of foreclosing on property of California homeowners without contacting them to explore options to avoid foreclosure as required by law. In fact, as was the case here, Defendants are purposefully precluding homeowner attempts to apply and qualify for any and all workout options.

66.    Upon information and belief, Defendants have pattern and practice of foreclosing on property of California homeowners without giving opportunity for, agreeing to or implementing a modification or workout as required by California Civil Code §2923.6 when loan payments are in default or default is reasonably foreseeable and anticipated recovery under the workout exceeds the anticipated recovery through foreclosure on a net present value basis.

67.    Plaintiff has additionally been damaged in the amount of foreclosure fees and costs already charged to and added to Plaintiff's loan, in an amount to be proven at trial.

68.     The fees and costs charged by Defendants were charged without any legal authority to do so and in direct violation of the statutory mandate of California Civil Code §2923.55 and §2923.6.

69.     Defendants must be required to disgorge any profit or gain that they obtained as a result of their wrongful conduct as herein alleged.

70.     Plaintiff is entitled to equitable relief in the form of an order requiring Defendants to disgorge all profits or gain they have obtained from Plaintiff or at the expense of Plaintiff and members of the general public by reason of their unlawful, unfair or fraudulent business act(s) and practice(s) and an injunction enjoining Defendants from continuing said acts or practices.

## THIRD CAUSE OF ACTION

### BREACH OF COVENANT OF GOOD FAITH AND FAIR DEALING

(Against ALL Defendants)

71.     Plaintiff hereby incorporates by this reference paragraphs 1 through 70, as though fully set forth herein.

72.     Defendants' conduct, as alleged, constitutes a breach of the covenant of good faith and fair dealing implied in every contract under California law.   This covenant creates an obligation in Defendants not to hinder or prevent Plaintiff's ability to perform under the contract or receive the benefit of the contract.

73.     On or about October 23, 2006, Plaintiff entered into a loan agreement, executing a Promissory Note and Deed of Trust in favor of FLAGSTAR and subsequently Defendants. Plaintiff alleges that Defendants breached the covenant of good faith and fair dealing and interfered with Plaintiff's ability to perform under the contract by refusing to provide Plaintiff any meaningful assistance and then impairing his ability to get current on his loan like he was trying desperately to do.

74.     For years, Plaintiff substantially performed under the loan agreement, making his full monthly payments on time every month.

- 13 -

PARADISE v. FAY SERVICING, LLC – COMPLAINT FOR DAMAGES AND INJUNCTIVE RELIEF

75.     Defendant's negligence in responding to Plaintiff's requests for assistance, coupled with prolonged review periods and major communication failures, forced Plaintiff into an unrecoverable default whereby if assistance was not offered, Plaintiff would have on other means to save his home.

76.     Therefore, because Defendants induced Plaintiff to not perform under the contract by failing to provide assistance as required by law, Plaintiff's performance was excused as set forth under Cal. Civ. Code § 1511, which states if a defendant does some act naturally tending to induce the plaintiff not to perform, the plaintiff's failure to perform is excused. When this occurs, according to Cal. Civ. Code § 1512, the plaintiff is entitled to all the benefits of the contract had it been performed by both parties.  As such, no conditions existed that would interfere with Defendant performing under the contract, and all conditions necessary for Defendants to fulfill its obligations under the contract had occurred when Defendants coerced Plaintiff into missing payments by promising Plaintiff that he would not face foreclosure if he did so.  In fact, this promise was designed to induce and coerce Plaintiff to miss payments and sit idly by during supposed review periods so that Defendants could foreclose on Plaintiff's loan.

77.     As a proximate result of Defendants' acts and practices, Plaintiff's credit has been detrimentally impacted, and Plaintiff now risks the loss of his home through foreclosure.  Plaintiff has incurred contract damages, according to proof at trial, attorney's fees, costs to save the home, and loss of equity.

### FOURTH CAUSE OF ACTION
### NEGLIGENCE
(Against ALL Defendants)

78.     Plaintiff hereby incorporates by this reference, paragraphs 1 through 77, as though fully incorporated herein.

79.     The elements of a cause of action for negligence are well established. They are (a) a legal duty to use due care; (b) a breach of such legal duty; (c) the breach as the proximate or

- 14 -
PARADISE v. FAY SERVICING, LLC – COMPLAINT FOR DAMAGES AND INJUNCTIVE RELIEF

1    legal cause of the resulting injury. (Ladd v. County of San Mateo (1996) 12 Cal.4th 913, 917

2    [50Cal.Rptr.2d 309, 91 1 P.2d 496].)

3          80.     At all times relevant herein, Defendants, acting as Plaintiff's lender and servicer,

4    had a duty to exercise reasonable care and skill to maintain proper and accurate loan records and

5    to discharge and fulfill the other incidents attendant to the maintenance, accounting and servicing

6    of loan records, including, but not limited to, disclosing to Plaintiff the real status of any

7    foreclosure actions taken by it, refraining from taking any action against Plaintiff outside its legal

8    authority, and providing all relevant information regarding Plaintiff's loan accounts with

9    Defendants.

10         81.     Under the facts specified above and in the allegations incorporated, the Defendants

11   were under a duty to Plaintiff and are liable to the Plaintiff for Negligence.

12         82.     It is true that some courts have held that in the standard lender/borrower

13   relationship, a duty of care is not necessarily created. For instance, the court held in Nymark v.

14   Heart Federal Savings & Loan Association., 231 Cal. App. 3d 1089, l095 (1991) that "as a general

15   rule, a financial institution owes no duty of care to a borrower when the institution's involvement

16   in the loan transaction does not exceed the scope of its conventional role as a mere lender of

17   money."

18         83.     However, the Nymark court simply found that a duty was not owed under the facts

19   in that case after analyzing them pursuant to the six part test established in Biakanja v. Irving, 49

20   Cal2d 647, 122 P.2d 294.

21         84.     A relationship of trust and confidence existed between Plaintiff and Defendants.

22   Among other things, Plaintiff entrusted Defendants with his home mortgage refinancing as well

23   as with a myriad of confidential information with regard to the subject mortgage loans, including,

24   without limitation, Plaintiff's social security numbers and/or tax ID numbers, tax returns, W2's,

25   pay stubs, bank statements, other income information and/or verification, financial statements,

26   information with regard to Plaintiff's debt, work history, credit history and net worth.

27

28

85.    A fiduciary relationship came into existence when Plaintiff and Defendants were negotiating foreclosure options.  Defendants promised and represented that Plaintiff would be receiving a loan and the repayment options would be within Plaintiff's monthly means.

86.    In addition to the above-described common law fiduciary relationship, Defendants automatically occupy a fiduciary relationship to their Principal, including Plaintiff, and owe Plaintiff the highest possible duty including, but not limited to, absolute honesty and undivided loyalty.

87.    When Defendants were acting as servicer of Plaintiff's loan, there existed the traditional lender/borrower relationship, which does not usually impose a duty of care. However, once Defendants promised and represented that Plaintiff would be considered and properly evaluated for all available mortgage relief options, they stepped outside the role of a traditional lender and created a duty of care to Plaintiff.

88.    Defendants created a duty to Plaintiff when it: (1) affected Plaintiff by making clear and unambiguous promises and representations regarding modifying Plaintiff's loan to prevent foreclosure; (2) spent months delaying making a decision on Plaintiff's request for mortgage relief; (3) created additional arrears by refusing to accept a payment from Plaintiff; (4) the harm of Plaintiff losing his home was foreseeable if the numerous promises made by many different employees were breached; (5) Plaintiff's injury was certainly foreseeable; (6) Defendants' long period of bad-faith conduct with Plaintiff over saving his home from foreclosure is evidence of them causing Plaintiff's injury and damages; (7) the extreme runaround, contradictory promises, directives from various employees, all create moral blame with regards to Defendants; (8) the public policy of preventing future harm would require Defendants to answer for their mistreatment of Plaintiff.

89.    Defendants breached their duty of care to Plaintiff by signing inaccurate and invalid written instruments concerning Plaintiff's home mortgage loan, falsifying loan documents, misleading Plaintiff, and promising there would be no foreclosure attempt of Subject Property.

- 16 -

90.     Defendants failed to disclose to Plaintiff the existence of any other available mortgage relief programs as required under current California statutes

91.     At the time Defendants made their representations and/or omissions to Plaintiff as alleged above, they knew, or had reason to know, that said representations and/or omissions were in fact false, and nevertheless made them, with the intent to defraud Plaintiff and cause Plaintiff to believe his home would not be foreclosed upon.  Had Plaintiff known the true facts, Plaintiff would have demanded an explanation and/or clarification from Defendants and pursued other available legal remedies to protect their interests.

92.     The lack of proper assistance and communication by Defendants caused Plaintiff monetary loss, severe emotional stress at the loss Plaintiff's home, loss of home equity, and more.

93.     Plaintiff demands damages in an amount to be proven at trial.

## FIFTH CAUSE OF ACTION

### NEGLIGENT INFLICTION OF EMOTIONAL DISTRESS

(Against ALL Defendants)

94.     Plaintiff hereby incorporates by this reference paragraphs 1 through 93, as though fully set forth herein.

95.     Plaintiff alleges Defendants negligently inflicted emotional distress upon him.

96.     Defendants wrongfully pursued foreclosing on Plaintiff's home in violation of various California statues as mentioned above.

97.     Plaintiff has directly suffered serious emotional distress in response.  Plaintiff requested assistance from FLAGSTAR and FAY, and was continually ignored.  Furthermore, Defendants engaged in harassing behavior to Plaintiff by unnecessarily prolonging Plaintiff's review for modification and instituting foreclosure proceedings against Plaintiff when they had promised otherwise.  Defendants had a routine practice of making false assurances to Plaintiff which Plaintiff would justifiably rely on.

98.   Plaintiff diligently followed all instructions asked of him by FLAGSTAR and FAY which ultimately led him to a worse position. Plaintiff spent countless nights suffering from severe anxiety due to the questionable business practices Defendants conducted. Plaintiff's anxiety manifested itself as a decrease in Plaintiff's general health and a lower quality of life.

99.   Plaintiff demands an award of damages for all his distress suffered in an amount to be determined at trial.

## SIXTH CAUSE OF ACTION
## BREACH OF EQUAL CREDIT OPPORTUNITY ACT
### (Against Defendants FAY and FLAGSTAR)

100.   Plaintiff hereby incorporates by this reference paragraphs 1 through 99, as fully set forth herein.

101.   According to 12 CFR 1002.9, "a creditor must notify an applicant of action taken on the applicant's request for credit, whether favorable or adverse, within 30 days after receiving a completed application."

102.   Plaintiff submitted applications for a loan modification with the assurances from Defendants that they would reach a resolution on Plaintiff's request within thirty days. Defendants failed to notify Plaintiff of a resolution within the mandatory thirty day period.

103.   Defendants' unjustifiable delay resulted in Plaintiff falling substantially behind on his mortgage despite the fact Plaintiff complied with all instructions asked of him by Defendants.

104.   Defendants have violated section 1002.9 of the Equal Credit Opportunity Act (ECOA) in that Defendants have failed to respond to Plaintiff's application within thirty days.

105.   In addition to actual damages, the ECOA provides for punitive damages of up to $10,000 along with an award of court costs and attorney's fees as per 12 CFR 1002.16.

106.   Plaintiff demands an award of damages for Defendants' violation of the ECOA in an amount to be determined at trial.

PARADISE v. FAY SERVICING, LLC – COMPLAINT FOR DAMAGES AND INJUNCTIVE RELIEF

1

## SEVENTH CAUSE OF ACTION

### FOR DECLARATORY RELIEF

(Against ALL Defendants)

107. Plaintiff hereby incorporates by this reference paragraphs 1 through 106, as though fully set forth herein.

108. An actual controversy has arisen and now exists between the parties to this complaint and their respecting rights and responsibilities.

109. Plaintiff requests and is entitled to a judicial declaration and judgment of this Court that:

(A)   That Defendants failed to abide by their own guidelines in offering Plaintiff an application for a loan modification or other alternative in violation of Civil Code §2923.6 and further violated numerous communication requirements as dictated by the California Homeowners Bill of Rights.

(B)   That Defendants and each of them, failed to provide the required statutory notifications and undertake the required courses of action as mandated under California's Civil Code.

110. Plaintiff has no adequate remedy at law for the injuries that have occurred and are being threatened by the Defendants herein.

111. Plaintiff has additionally been injured in that Plaintiff has incurred unlawful foreclosure fees and expenses, which have been added to the amount of Plaintiff's loan.

## EIGHTH CAUSE OF ACTION

### FOR INJUNCTIVE RELIEF

112. Plaintiff hereby incorporates by this reference paragraphs 1 through 111, as fully set forth herein.

113. Under California law, a borrower may bring an action for injunctive relief to enjoin a material violation of Civil Code section 2923.55, 2923.6, 2923.7, 2923.9, 2924.10, or 2924.11.

114.   Any injunction shall remain in place and any trustee's sale shall be enjoined until the court determines that the bank has corrected and remedied the violations giving rise to the action for injunctive relief. Civil Code 2924.12.

115.   Pursuant to California Civil Code section 2924.19 (a), any injunction shall remain in place and any trustee's sale shall be enjoined until the court determines that the mortgage servicer, mortgagee, beneficiary, or authorized agent has corrected and remedied the violation or violations giving rise to the action for injunctive relief.

116.   Also under these laws, pursuant to California Civil Code section 2924.19 (h), a court may award a prevailing borrower reasonable attorney's fees and costs in an action brought pursuant to this section. Id. At subsection (g). Additionally, a borrower shall be deemed to have prevailed for purposes of this subdivision if the borrower obtained injunctive relief or was awarded damages pursuant to this section. Id at subsection (h).  Under the recently-enacted California Homeowner Bill of Rights, a mortgage servicer/bank may not record a notice of default until it complies with numerous specific conditions set forth in the statute at 2924.18 and further cannot continue foreclosure proceedings unless all rights of the borrower are considered and give.

**WHEREFORE,** Plaintiff prays for judgment against Defendants as follows:

1.   A declaratory judgment and order of this Court that:

(A)   Defendants, and each of them, may not foreclose on the Property until they have honored and proven that all statutory requirements stemming from and relating to Plaintiff's options to avoid foreclosure have been met.

(B)   That Defendants failed to abide by their own guidelines in qualifying or reviewing Plaintiff for a loan modification in violation of Civil Code §2923.6.

(C)   That Defendants and each of them, failed to provide the required statutory notifications and undertake the required courses of action as mandated under California's Civil Code.

PARADISE v. FAY SERVICING, LLC – COMPLAINT FOR DAMAGES AND INJUNCTIVE RELIEF

1      2.    For a temporary restraining order, preliminary injunction and permanent

2  injunction prohibiting Defendants from engaging in unlawful and deceptive acts and practices

3  of foreclosing on property of California homeowners, including Plaintiff, without considering

4  her for within their guidelines, and when anticipated recovery through a modification or

5  workout plan exceeds anticipated recovery through foreclosure on a net present value basis.

6      3.    For disgorgement of Defendants' illegal profits and gain, including but not

7  limited to all foreclosure fees and costs charged California homeowners, including Plaintiff.

8      4.    For an award of actual damages in an amount within the jurisdictional limits of

9  this Court to be proven at trial.

10      5.    For general damages, according to proof.

11      6.    For special damages, according to proof.

12      7.    For consequential damages, and incidental damages, according to proof.

13      8.    For an award of reasonable attorney's fees pursuant to agreement of the parties,

14  according to proof.

15      9.    For an award of interest, including prejudgment interest, as provided by law.

16      10.   For costs of suit; and

17      11.   For such other relief as the Court deems just and proper.

18

19

20  DATED: June 2, 2016              KETTNER LAW CORPORATION

21

22                    BY: _____

23                       MARC APPLEBAUM

                         Attorney for Plaintiff

24

25

26

27

28

PARADISE v. FAY SERVICING, LLC – COMPLAINT FOR DAMAGES AND INJUNCTIVE RELIEF

(ENDORSED)
FILED

JUN 10 2016


BY: T. NGO
Deputy Clerk

1  Kettner Law Corporation
2  Marc Applbaum (SBN: 222511)
   2150 W Washington St., Suite 104
3  San Diego, CA 92110
   Tel: (619) 756-7300
4  Fax: (619) 363-3944
5  marc@kettnerlawcorp.com

6
   Attorney for Plaintiff, MICHAEL PARADISE
7

8
9          SUPERIOR COURT OF THE STATE OF CALIFORNIA
10                    COUNTY OF SANTA CLARA
11
                                          Case No.   16CV296237
12  MICHAEL PARADISE
13                                        NOTICE OF PENDENCY OF ACTION
                                          [CCP § 405.20]
14          Plaintiff,

15  v.                                    BY FAX

16
17
18  FAY SERVICING, LLC; U.S. BANK, N.A.;
    FLAGSTAR BANK, FSB; and DOES 1 through
19  50, inclusive,

20
21          Defendants
22
23      NOTICE IS HEREBY GIVEN that the above-entitled action was filed in the above court on

24  June 2, 2016, by MICHAEL PARADISE, Plaintiff, against FAY SERVICING, LLC; U.S. BANK,

25  N.A.; FLAGSTAR BANK, FSB; and DOES 1 through 50, inclusive, Defendants. The action effects

26
27  title to real property and the validity of foreclosure actions taken by defendants in the complaint. The
28

                                    - 1 -
        PARADISE v. FAY SERVICING, LLC -- NOTICE OF PENDENCY OF ACTION

specific real property is affected by the action is located in the County of Santa Clara, State of

California, and described as follows:

### LEGAL DESCRIPTION

LOT 17, AS DELINEATED UPON THAT CERTAIN MAP ENTITLED "TRACT NO. 4131," FILED
FOR RECORD IN THE OFFICE OF THE COUNTY OF SANTA CLARA, STATE OF
CALIFORNIA, ON FEBRUARY 24TH, 1966 IN BOOK 205 OF MAPS, AT PAGE 42.

EXCEPTING THEREFROM THE UNDERGROUND WATER OR RIGHTS THERETO WITH NO
RIGHTS OF SURFACE ENTRY, AS GRANTED TO SAN JOSE WATER WORKS, A
CALIFORNIA CORPORATION, BY INSTRUMENT, RECORDED MARCH 29, 1966 IN BOOK
7337 OF OFFICIAL RECORDS, PAGE 232.

APN: 299-18-117

DATED: June 2, 2016                    KETTNER LAW CORPORATION

BY: _____
                                                              MARC APPLBAUM
                                                              Attorney for Plaintiff

- 2 -

ATTACHMENT CV-5012

# CIVIL LAWSUIT NOTICE

16CV296237

Superior Court of California, County of Santa Clara
191 N. First St., San Jose, CA  95113

CASE NUMBER: _____

## PLEASE READ THIS ENTIRE FORM

*PLAINTIFF* (the person suing):  Within 60 days after filing the lawsuit, you must serve each Defendant with the *Complaint*, *Summons*, an *Alternative Dispute Resolution (ADR) Information Sheet*, and a copy of this *Civil Lawsuit Notice*, and you must file written proof of such service.

---

*DEFENDANT* (The person sued):  **You must do each of the following to protect your rights:**

1. You must file a written response to the *Complaint*, using the proper legal form or format, in the Clerk's Office of the Court, within **30 days** of the date you were served with the *Summons* and *Complaint*;
2. You must serve by mail a copy of your written response on the Plaintiff's attorney or on the Plaintiff if Plaintiff has no attorney (to "serve by mail" means to have an adult other than yourself mail a copy); and
3. You must attend the first Case Management Conference.

**Warning: If you, as the Defendant, do not follow these instructions,
you may automatically lose this case.**

---

*RULES AND FORMS:*  You must follow the California Rules of Court and the Superior Court of California, County of Santa Clara Local Civil Rules and use proper forms.  You can obtain legal information, view the rules and receive forms, free of charge, from the Self-Help Center at 99 Notre Dame Avenue, San Jose (408-882-2900 x-2926), www.scselfservice.org (Select "Civil") or from:

- State Rules and Judicial Council Forms:  www.courtinfo.ca.gov/forms and www.courtinfo.ca.gov/rules
- Local Rules and Forms:  http://www.sccsuperiorcourt.org/civil/rule1toc.htm

*CASE MANAGEMENT CONFERENCE (CMC):*  You must meet with the other parties and discuss the case, in person or by telephone, at least 30 calendar days before the CMC.  You must also fill out, file and serve a *Case Management Statement* (Judicial Council form CM-110) at least 15 calendar days before the CMC.

*You or your attorney must appear at the CMC.  You may ask to appear by telephone – see Local Civil Rule 8.*

---

*Your Case Management Judge is:* Maureen Folan _____ *Department:* ___8___

*The 1st CMC is scheduled for:* (Completed by Clerk of Court)

Date: **OCT - 4 2016** _____ Time: **3:30pm** In Department: **8**

*The next CMC is scheduled for:* (Completed by party if the 1st CMC was continued or has passed)

Date: _____ Time: _____ In Department: _____

---

*ALTERNATIVE DISPUTE RESOLUTION (ADR):*  If all parties have appeared and filed a completed *ADR Stipulation Form* (local form CV-5008) at least 15 days before the CMC, the Court will cancel the CMC and mail notice of an ADR Status Conference. Visit the Court's website at www.sccsuperiorcourt.org/civil/ADR/ or call the ADR Administrator (408-882-2100 x-2530) for a list of ADR providers and their qualifications, services, and fees.

*WARNING:* Sanctions may be imposed if you do not follow the California Rules of Court or the Local Rules of Court.

---

# SANTA CLARA COUNTY SUPERIOR COURT
## ALTERNATIVE DISPUTE RESOLUTION
## INFORMATION SHEET

Many cases can be resolved to the satisfaction of all parties without the necessity of traditional litigation, which can be expensive, time consuming, and stressful. The Court finds that it is in the best interests of the parties that they participate in alternatives to traditional litigation, including arbitration, mediation, neutral evaluation, special masters and referees, and settlement conferences. Therefore, all matters shall be referred to an appropriate form of Alternative Dispute Resolution (ADR) before they are set for trial, unless there is good cause to dispense with the ADR requirement.

*What is ADR?*
ADR is the general term for a wide variety of dispute resolution processes that are alternatives to litigation. Types of ADR processes include mediation, arbitration, neutral evaluation, special masters and referees, and settlement conferences, among others forms.

*What are the advantages of choosing ADR instead of litigation?*
ADR can have a number of advantages over litigation:

- **ADR can save time.** A dispute can be resolved in a matter of months, or even weeks, while litigation can take years.

- **ADR can save money.** Attorney's fees, court costs, and expert fees can be reduced or avoided altogether.

- **ADR provides more participation.** Parties have more opportunities with ADR to express their interests and concerns, instead of focusing exclusively on legal rights.

- **ADR provides more control and flexibility.** Parties can choose the ADR process that is most likely to bring a satisfactory resolution to their dispute.

- **ADR can reduce stress.** ADR encourages cooperation and communication, while discouraging the adversarial atmosphere of litigation. Surveys of parties who have participated in an ADR process have found much greater satisfaction than with parties who have gone through litigation.

*What are the main forms of ADR offered by the Court?*
**Mediation** is an informal, confidential, flexible and non-binding process in the mediator helps the parties to understand the interests of everyone involved, and their practical and legal choices. The mediator helps the parties to communicate better, explore legal and practical settlement options, and reach an acceptable solution of the problem. The mediator does not decide the solution to the dispute; the parties do.

Mediation may be appropriate when:
- The parties want a non-adversary procedure
- The parties have a continuing business or personal relationship
- Communication problems are interfering with a resolution
- There is an emotional element involved
- The parties are interested in an injunction, consent decree, or other form of equitable relief

**Neutral evaluation,** sometimes called "Early Neutral Evaluation" or "ENE", is an informal process in which the evaluator, an experienced neutral lawyer, hears a compact presentation of both sides of the case, gives a non-binding assessment of the strengths and weaknesses on each side, and predicts the likely outcome. The evaluator can help parties to identify issues, prepare stipulations, and draft discovery plans. The parties may use the neutral's evaluation to discuss settlement.

Neutral evaluation may be appropriate when:
- The parties are far apart in their view of the law or value of the case
- The case involves a technical issue in which the evaluator has expertise
- Case planning assistance would be helpful and would save legal fees and costs
- The parties are interested in an injunction, consent decree, or other form of equitable relief

*-over-*

**Arbitration** is a less formal process than a trial, with no jury. The arbitrator hears the evidence and arguments of the parties and then makes a written decision. The parties can agree to binding or non-binding arbitration. In binding arbitration, the arbitrator's decision is final and completely resolves the case, without the opportunity for appeal. In non-binding arbitration, the arbitrator's decision could resolve the case, without the opportunity for appeal, unless a party timely rejects the arbitrator's decision within 30 days and requests a trial. Private arbitrators are allowed to charge for their time.

Arbitration may be appropriate when:

- The action is for personal injury, property damage, or breach of contract
- Only monetary damages are sought
- Witness testimony, under oath, needs to be evaluated
- An advisory opinion is sought from an experienced litigator (if a non-binding arbitration)

**Civil Judge ADR** allows parties to have a mediation or settlement conference with an experienced judge of the Superior Court. Mediation is an informal, confidential, flexible and non-binding process in which the judge helps the parties to understand the interests of everyone involved, and their practical and legal choices. A settlement conference is an informal process in which the judge meets with the parties or their attorneys, hears the facts of the dispute, helps identify issues to be resolved, and normally suggests a resolution that the parties may accept or use as a basis for further negotiations. The request for mediation or settlement conference may be made promptly by stipulation (agreement) upon the filing of the Civil complaint and the answer. There is no charge for this service.

Civil Judge ADR may be appropriate when:

- The parties have complex facts to review
- The case involves multiple parties and problems
- The courthouse surroundings would be helpful to the settlement process

**Special masters and referees** are neutral parties who may be appointed by the court to obtain information or to make specific fact findings that may lead to a resolution of a dispute.
Special masters and referees can be particularly effective in complex cases with a number of parties, like construction disputes.

**Settlement conferences** are informal processes in which the neutral (a judge or an experienced attorney) meets with the parties or their attorneys, hears the facts of the dispute, helps identify issues to be resolved, and normally suggests a resolution that the parties may accept or use as a basis for further negotiations.
Settlement conferences can be effective when the authority or expertise of the judge or experienced attorney may help the parties reach a resolution.

*What kind of disputes can be resolved by ADR?*
Although some disputes must go to court, almost any dispute can be resolved through ADR. This includes disputes involving business matters; civil rights; collections; corporations; construction; consumer protection; contracts; copyrights; defamation; disabilities; discrimination; employment; environmental problems; fraud; harassment; health care; housing; insurance; intellectual property; labor; landlord/tenant; media; medical malpractice and other professional negligence; neighborhood problems; partnerships; patents; personal injury; probate; product liability; property damage; real estate; securities; sports; trade secret; and wrongful death, among other matters.

*Where can you get assistance with selecting an appropriate form of ADR and a neutral for your case, information about ADR procedures, or answers to other questions about ADR?*

*Contact:*
Santa Clara County Superior Court        Santa Clara County DRPA Coordinator
ADR Administrator                        408-792-2784
408-882-2530

1    WRIGHT, FINLAY & ZAK, LLP
     T. Robert Finlay, Esq., SBN 167280

2    Ronald M. Arlas, Esq., SBN 59091
     4665 MacArthur Court, Suite 280

3    Newport Beach, CA 92660

4    Tel: (949) 477-5050; Fax: (949) 477-9200

5    WRIGHT, FINLAY & ZAK, LLP
     Ronald M. Arlas, Esq. SBN 59091

6    907 Sir Francis Drake Blvd.

7    Kentfield, Ca. 94904
     Tel: 415/230-4350; Fax: 415/455-0370

8    rarlas@wrightlegal.net

9    Attorneys for Defendants FAY SERVICING, LLC AND US BANK, N.A. AS TRUSTEE FOR CVF

10   MORTGAGE LOAN ACQUISITION COMPANY (erroneously sued as US Bank, N.A)

11              IN THE SUPERIOR COURT OF THE STATE OF CALIFORNIA

12                  IN AND FOR THE COUNTY OF SANTA CLARA

13   MICHAEL PARADISE,                         Case No. 16CV296237

14              Plaintiff                      NOTICE OF DEMURRER AND
                                               DEMURRER TO COMPLAINT BY
15        vs.                                  DEFENDANTS    FAY    SERVICING,
                                               LLC AND  US  BANK,   N.A.  AS
16   FAY SERVICING, LLC, et al.                TRUSTEE   TO   THE   ORIGINAL
                                               COMPLAINT
17              Defendants

18                                             Date:      August 30, 2016

19                                             Time:      9:00 a.m.

20                                             Place:     Dept. 8

21                                             Reserved Hearing Date

22        TO THE HONORABLE COURT AND ALL PARTIES AND THEIR ATTORNEYS

23   OF RECORD, IF ANY:

24

25        PLEASE TAKE NOTICE that on August 30, 2016, at 9:00 a.m. in Department 8 of the

26   above-captioned Court located at located at 191 North First Street, San Jose, California, 95113,

27   defendants FAY SERVICING, LLC and US BANK, N.A. AS TRUSTEE FOR CVF MORTGAGE

28

ENDORSED
FILED

JUL 15 2016


Santa Clara County Superior Court
State of California
By _____ J. CAO-NGUYEN
Deputy Clerk

-1-
NOTICE OF DEMURRER AND DEMURRER TO COMPLAINT BY DEFENDANTS FAY SERVICING, LLC
AND US BANK, N.A. AS TRUSTEE TO THE ORIGINAL COMPLAINT

LOAN ACQUISITION COMPANY (erroneously sued as US Bank, N.A), collectively "defendants" will demur to the original complaint filed by plaintiff MICHAEL PARADISE ("plaintiff"), on the grounds set forth in the accompanying Demurrer.

This demurrer is made pursuant to California Code of Civil Procedure ("CCP") §§430.10(b), (e) and (f) on the grounds that the plaintiffs do not have the legal capacity to sue, that all of the causes of action of the complaint do not state facts sufficient to constitute causes of action against all of the defendants and that many of said causes of action are also uncertain and ambiguous. The demurrer is based upon this Notice, the supporting Memorandum of Points and Authorities filed concurrently herewith, the Request for Judicial Notice filed concurrently herewith, the complete files and records in this action, the oral argument of counsel, if any, and such other and further evidence as the Court might deem proper.

Respectfully submitted,

WRIGHT, FINLAY & ZAK, LLP

Dated: July 15, 2016                    By: _Ronald M. Arlas_
                                        T. Robert Finlay, Esq.,
                                        Ronald M. Arlas, Esq., Attorneys for
                                        Defendants Fay Servicing, LLC and
                                        Wilmington Savings Fund Society FSB
                                        Dba Christiana Trust, as Trustee of the
                                        ARLP Trust 2

NOTICE OF DEMURRER AND DEMURRER TO COMPLAINT BY DEFENDANTS FAY SERVICING, LLC
AND US BANK, N.A. AS TRUSTEE TO THE ORIGINAL COMPLAINT

**DEMURRER**

Defendants FAY SERVICING, LLC and US BANK, N.A. AS TRUSTEE FOR CVF MORTGAGE LOAN ACQUISITION COMPANY (erroneously sued as US Bank, N.A), collectively "defendants", generally and specifically demur to plaintiffs' complaint and all of its causes of action enumerated below on the following grounds:

1.  The entire complaint is demurrable because the plaintiff stated herein does not have the legal capacity to sue.  CCP §430.10(b).

2.  The First Cause of Action fails because the plaintiff stated herein does not have the legal capacity to sue; it also fails to state facts sufficient to constitute a cause of action against defendants and it is also vague and ambiguous.  CCP §430.10(b), (e) & (f).

3.  The Second Cause of Action fails because the plaintiff stated herein does not have the legal capacity to sue; it also fails to state facts sufficient to constitute a cause of action against defendants and it is also vague and ambiguous.  CCP §430.10(b), (e) & (f).

4.  The Third Cause of Action fails because the plaintiff stated herein does not have the legal capacity to sue; it also fails to state facts sufficient to constitute a cause of action against defendants and it is also vague and ambiguous.  CCP §430.10(b), (e) & (f).

5.  The Fourth Cause of Action fails because the plaintiff stated herein does not have the legal capacity to sue; it also fails to state facts sufficient to constitute a cause of action against defendants and it is also vague and ambiguous.  CCP §430.10(b), (e) & (f).

6.  The Fifth Cause of Action fails because the plaintiff stated herein does not have the legal capacity to sue; it also fails to state facts sufficient to constitute a cause of action against defendants and it is also vague and ambiguous.  CCP §430.10(b), (e) & (f).

7.  The Sixth Cause of Action fails because the plaintiff stated herein does not have the

NOTICE OF DEMURRER AND DEMURRER TO COMPLAINT BY DEFENDANTS FAY SERVICING, LLC
AND US BANK, N.A. AS TRUSTEE TO THE ORIGINAL COMPLAINT

legal capacity to sue; it also fails to state facts sufficient to constitute a cause of action against defendants and it is also vague and ambiguous.  CCP §430.10(b), (e) & (f).

8.   The Seventh Cause of Action fails because the plaintiff stated herein does not have the legal capacity to sue and because it fails to state facts sufficient to constitute a cause of action against defendants.  CCP §430.10(b) & (e).

9.   The Eighth Cause of Action fails because the plaintiff stated herein does not have the legal capacity to sue and because it fails to state facts sufficient to constitute a cause of action against defendants.  CCP §430.10(b) & (e).

Respectfully submitted,

WRIGHT, FINLAY & ZAK, LLP

Dated: July 15, 2016

By: _____
T. Robert Finlay, Esq.,
Ronald M. Arlas, Esq., Attorneys for
Defendants Fay Servicing, LLC and US Bank,
N.A as Trustee for CVF Mortgage Loan
Acquisition Company

NOTICE OF DEMURRER AND DEMURRER TO COMPLAINT BY DEFENDANTS FAY SERVICING, LLC
AND US BANK, N.A. AS TRUSTEE TO THE ORIGINAL COMPLAINT

1

**PROOF OF SERVICE**

2

    I, Catherine Lawler, declare as follows:

3

    I am employed in the County of Marin, State of California where the mailing occurred.  I

4

am over the age of eighteen (18) and not a party to the within action.  My business address is 907 Sir Francis Drake Blvd., Kentfield, CA 94904.  I am readily familiar with the practices of

5

Wright, Finlay & Zak, LLP, for collection and processing of correspondence for mailing with the United States Postal Service.  Such correspondence is deposited with the United States Postal

6

Service the same day in the ordinary course of business.  I am aware that on motion of party served, service is presumed invalid if postal cancellation date or postage meter date is more than

7

one day after date of deposit for mailing in affidavit.

8

    On July 15, 2016, I served the foregoing **DEFENDANTS' NOTICE OF DEMURRER**

9

**AND DEMURRER TO PLAINTIFF'S COMPLAINT** on all interested parties in this action by placing [ ] the original [X] a true copy thereof enclosed in sealed envelope(s) addressed as

10

follows:

11

Marc Applbaum, Esq.
KETTNER LAW CORPORATION

12

2150 West Washington Street, Suite 104
San Diego, CA 92110

13

Telephone:    (619) 756-7300
Facsimile:    (619) 363-3944

14

E-Mail:       marc@kettnerlawcorp.com

15

**Attorneys for Plaintiff**

16

**MICHAEL PARADISE**

17

18

19

[X]    **(BY UNITED STATES MAIL)** I placed such envelope(s) for collection and mailing, following our ordinary business practices.

20

[ ]    **(BY UNITED STATES CERTIFIED MAIL)** I placed such envelope(s) for collection

21

to be mailed on this date following ordinary business practices, via Certified Mail, Return Receipt Requested.

22

[ ]    **(BY OVERNIGHT DELIVERY)** I enclosed the document(s) in an envelope or package

23

provided by an overnight delivery carrier and addressed to the person(s) at the address(es) listed herein.  I caused to be placed the envelope or package for collection

24

and overnight delivery at an office or a regularly utilized drop box of the overnight carrier.

25

[ ]    **(BY MESSENGER SERVICE)** I served the document(s) by placing them in an

26

envelope or package addressed to the person(s) at the address(es) listed herein and providing them to a professional messenger service for service.  A Declaration of

27

Messenger is attached to the original Proof of Service.

28

-1-

PROOF OF SERVICE

1

[ ]   **(BY PERSONAL SERVICE)** I personally delivered the document(s) to the person(s) at

2      the address(es) as set forth on the attached service list.  (1) For a party represented by an
       attorney, delivery was made (a) to the attorney personally; or (b) by leaving the

3      document(s) at the attorney's office, in an envelope or package clearly labeled to identify
       the attorney being served, with a receptionist or an individual in charge of the office; or

4      (c) if there was no person in the office with whom the notice of papers could be left, by
       leaving them in a conspicuous place in the office between the hours of nine in the

5      morning and five in the evening.  (2) For a party, delivery was made to the party or by
       leaving the document(s) at the party's residence with some person not younger than 18

6      years of age between the hours of eight in the morning and six in the evening.

7          I declare under penalty of perjury under the laws of the State of California that the

8      foregoing is true and correct.

9          Executed on July 15, 2016, at Kentfield, California.

10

11     Catherine Lawler

12

13

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28

-2-

PROOF OF SERVICE

WRIGHT, FINLAY & ZAK, LLP
T. Robert Finlay, Esq., SBN 167280
Ronald M. Arlas, Esq., SBN 59091
4665 MacArthur Court, Suite 280
Newport Beach, CA 92660
Tel: (949) 477-5050; Fax: (949) 477-9200

WRIGHT, FINLAY & ZAK, LLP
Ronald M. Arlas, Esq. SBN 59091
907 Sir Francis Drake Blvd.
Kentfield, Ca. 94904
Tel: 415/230-4350; Fax: 415/455-0370
rarlas@wrightlegal.net

Attorneys for Defendants FAY SERVICING, LLC AND US BANK, N.A. AS TRUSTEE FOR CVF
MORTGAGE LOAN ACQUISITION COMPANY (erroneously sued as US Bank, N.A)

## IN THE SUPERIOR COURT OF THE STATE OF CALIFORNIA
## IN AND FOR THE COUNTY OF SANTA CLARA

| | |
|---|---|
| MICHAEL PARADISE,<br><br>Plaintiff<br><br>vs.<br><br>FAY SERVICING, LLC, et al.<br><br>Defendants | Case No. 16CV296237<br><br>DECLARATION OF RONALD M. ARLAS, ESQ. PURSUANT TO CCP §430.41(a)(3)<br><br>Date:      August 30, 2016<br>Time:      9:00 a.m.<br>Place:     Dept. 8<br>Reserved Hearing Date |

I, RONALD M. ARLAS, do hereby declare:

1.      That I am an attorney licensed to practice before all of the courts of the State of California and that I am employed as a Senior Litigator by the Law Firm of WRIGHT, FINLAY & ZAK, counsel for defendants FAY SERVICING, LLC AND US BANK, N.A. AS TRUSTEE FOR CVF MORTGAGE LOAN ACQUISITION COMPANY (erroneously sued as US Bank, N.A), hereinafter collectively "defendants".

1         2.       On July 12, 2016, I had a telephonic meet and confer with plaintiff's counsel as

2 required by CCP §430.41 with regards to plaintiff's original complaint. The parties were unable to

3 reach an agreement resolving the objections to be raised in defendants' proposed demurrer to

4 plaintiff's complaint.

5         I declare under penalty of perjury that the foregoing is true and correct and that if called as a

6 witness would so testify thereto.

7

8         Executed this 15th day of July 2016 at Kentfield, Ca.

9

10                                  RONALD M. ARLAS, ESQ.

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28

## PROOF OF SERVICE

I, Catherine Lawler, declare as follows:

I am employed in the County of Marin, State of California where the mailing occurred. I am over the age of eighteen (18) and not a party to the within action. My business address is 907 Sir Francis Drake Blvd., Kentfield, CA 94904. I am readily familiar with the practices of Wright, Finlay & Zak, LLP, for collection and processing of correspondence for mailing with the United States Postal Service. Such correspondence is deposited with the United States Postal Service the same day in the ordinary course of business. I am aware that on motion of party served, service is presumed invalid if postal cancellation date or postage meter date is more than one day after date of deposit for mailing in affidavit.

On July 15, 2016, I served the foregoing **DECLARATION OF RONALD M. ARLAS, ESQ. PURSUANT TO CCP § 430.41(a)(3)** on all interested parties in this action by placing [ ] the original [X] a true copy thereof enclosed in sealed envelope(s) addressed as follows:

Marc Applbaum, Esq.
KETTNER LAW CORPORATION
2150 West Washington Street, Suite 104
San Diego, CA 92110
Telephone:      (619) 756-7300
Facsimile:      (619) 363-3944
E-Mail:         marc@kettnerlawcorp.com

**Attorneys for Plaintiff**
**MICHAEL PARADISE**

[X]   **(BY UNITED STATES MAIL)** I placed such envelope(s) for collection and mailing, following our ordinary business practices.

[ ]   **(BY UNITED STATES CERTIFIED MAIL)** I placed such envelope(s) for collection to be mailed on this date following ordinary business practices, via Certified Mail, Return Receipt Requested.

[ ]   **(BY OVERNIGHT DELIVERY)** I enclosed the document(s) in an envelope or package provided by an overnight delivery carrier and addressed to the person(s) at the address(es) listed herein. I caused to be placed the envelope or package for collection and overnight delivery at an office or a regularly utilized drop box of the overnight carrier.

[ ]   **(BY MESSENGER SERVICE)** I served the document(s) by placing them in an envelope or package addressed to the person(s) at the address(es) listed herein and providing them to a professional messenger service for service. A Declaration of Messenger is attached to the original Proof of Service.

[ ]   **(BY PERSONAL SERVICE)** I personally delivered the document(s) to the person(s) at the address(es) as set forth on the attached service list. (1) For a party represented by an

attorney, delivery was made (a) to the attorney personally; or (b) by leaving the document(s) at the attorney's office, in an envelope or package clearly labeled to identify the attorney being served, with a receptionist or an individual in charge of the office; or (c) if there was no person in the office with whom the notice of papers could be left, by leaving them in a conspicuous place in the office between the hours of nine in the morning and five in the evening.  (2) For a party, delivery was made to the party or by leaving the document(s) at the party's residence with some person not younger than 18 years of age between the hours of eight in the morning and six in the evening.

I declare under penalty of perjury under the laws of the State of California that the foregoing is true and correct.

Executed on July 15, 2016, at Kentfield, California.

Catherine Lawler

PROOF OF SERVICE

1  WRIGHT, FINLAY & ZAK, LLP
   T. Robert Finlay, Esq., SBN 167280
2  Ronald M. Arlas, Esq., SBN 59091
   4665 MacArthur Court, Suite 280
3  Newport Beach, CA 92660
   Tel: (949) 477-5050; Fax: (949) 477-9200
4

5  WRIGHT, FINLAY & ZAK, LLP
   Ronald M. Arlas, Esq. SBN 59091
6  907 Sir Francis Drake Blvd.
   Kentfield, Ca. 94904
7  Tel: 415/230-4350; Fax: 415/455-0370
8  rarlas@wrightlegal.net

9  Attorneys for Defendants FAY SERVICING, LLC AND US BANK, N.A. AS TRUSTEE FOR CVF
10 MORTGAGE LOAN ACQUISITION COMPANY (erroneously sued as US Bank, N.A)

11          IN THE SUPERIOR COURT OF THE STATE OF CALIFORNIA
12             IN AND FOR THE COUNTY OF SANTA CLARA

13 MICHAEL PARADISE,                    Case No. 16CV296237

14                                      **MEMORANDUM OF POINTS AND**
                                        **AUTHORITIES BY DEFENDANTS FAY**
15              Plaintiff               **SERVICING, LLC AND US BANK, N.A.,**
                                        **AS TRUSTEE IN SUPPORT OF**
16          vs.                         **DEMURRER TO PLAINTIFF'S**
                                        **ORIGINAL COMPLAINT**
17 FAY SERVICING, LLC; U.S. BANK,
   N.A.; FLAGSTAR BANK, FSB; and        Date:      August 30, 2016
18 DOES 1 through 50, inclusive,
                                        Time:      9:00 a.m.
19
                                        Place:     Dept. 8
               Defendants
20                                      Reserved Hearing Date

21

22 / / /

23 / / /

24 / / /

25 / / /

26 / / /

27 / /

28
   ───────────────────────────────────────────────
   MEMORANDUM OF POINTS AND AUTHORITIES BY DEFENDANTS FAY SERVICING, LLC AND
     U.S. BANK, N.A. AS TRUSTEE IN SUPPORT OF THEIR DEMURRER TO PLAINTIFF'S
                         ORIGINAL COMPLAINT

# TABLE OF CONTENTS

Page No.

| | | | |
|---|---|---|---|
| I. | INTRODUCTION | | 1 |
| II. | FACTS | | 1 |
| III. | ARGUMENT | | 2 |
| | A. | PLAINTIFF LACKS STANDING TO BRING THIS LAWSUIT | 2 |
| | B. | INDIVIDUAL CAUSES OF ACTION | 3 |
| | | 1. THE FIRST CAUSE OF ACTION FAILS | 3 |
| | | 2. THE COMPLAINT'S REMAINING CAUSES OF ACTION FAIL | 6 |
| | | a. THE SECOND CAUSE OF ACTION FAILS | 7 |
| | | b. THE THIRD CAUSE OF ACTION FAILS | 9 |
| | | c, THE FOURTH CAUSE OF ACTION FAILS | 10 |
| | | d. THE FIFTH CAUSE OF ACTION FAILS | 11 |
| | | e. THE SIXTH CAUSE OF ACTION FAILS | 12 |
| | | f, THE SEVENTH CAUSE OF ACTION FAILS | 14 |
| | | g. THE EIGHTH CAUSE OF ACTION FAILS | 14 |
| IV. | CONCLUSION | | 15 |

MEMORANDUM OF POINTS AND AUTHORITIES BY DEFENDANTS FAY SERVICING, LLC AND
U.S. BANK, N.A. AS TRUSTEE IN SUPPORT OF THEIR DEMURRER TO PLAINTIFF'S
ORIGINAL COMPLAINT

# TABLE OF AUTHORITIES

Page No.

Cases

Babb v. Superior Court
  (1971) 3 Cal.3d 841, 848 [92 Cal. Rptr. 179, 479 P.2d 379]............................. 14
Branch v. Homefed Bank
  (1992) 6 Cal.App.4th 793, 801 ......................................................................... 12
Butler Rupp v. Lourdeaux
  (2005) 137 Cal. App. 4th 1220, 1229 .............................................................. 12
Canova v. Trs. of Imperial Irrigation Dist. Emp. Pension Plan,
  150 Cal. App. 4th 1487, 1497 (2007), ............................................................. 14
Das v. Bank of America, N.A.
  (2010) 186 Cal.App.4th 727, 740-741. ............................................................ 11
Degelman v. Advanced Med. Optics, Inc.,
  659 F.3d 835, 839 (9th Cir. 2011). "[ .............................................................. 8
Durell v. Sharp Healthcare,
  183 Cal. App. 4th 1350, 1369 (2010) ............................................................... 9
Emery v. Visa Int'l Service Ass'n,
  95 Cal.App.4th 952, 960 (2002)). ..................................................................... 8
Foley v. Interactive Data Corp.
  (1988) 47 Cal.3d 654, 692–693 [254 Cal. Rptr. 211, 765 P.2d 373]................. 9
Ford v. Lehman Bros. Bank, FSB,
  2012 WL 2343898 at *8 (N.D. Cal. 2012)......................................................... 8
Friendly Village Comm. Assn v.  Silva & Hill Const. Co.
  (1973) 31 Cal.App.3d 220, 224........................................................................ 2
Gorham-DiMaggio v. Countrywide Home Loans, Inc.,
  592 F. Supp. 2d 283, 291 (N.D. N.Y. 2008) ................................................... 13
Guessous v. Chrome Hearts, LLC
  (2009) 179 Cal.App.4th 1177, 1187 ............................................................... 15
Hafiz v. Greenpoint Mortg. Funding, Inc.
  (N.D. Cal., 2009) 652 F.Supp.2d 1039, 1049 ................................................. 15
Jackson v. Teachers Ins. Co.
  (1973) 30 Cal. App. 3d 341, 344 [106 Cal. Rptr. 208] ................................... 14
Karimi v. Wells Fargo,
  2011 WL 10653746 at *3 (C.D. Cal. 2011)...................................................... 11
Khoury v. Maly's of California,
  14 Cal. App. 4th 612, 619, (1993) ................................................................... 8
Klopstock v. Superior Court
  (1941) 17 Cal.2d 13, 18-19 [108 P.2d 906, 135 A.L.R. 318] .......................... 2
Ladd v. County Of San Mateo
  (1996) 12 Cal.4th 913, 917. ............................................................................. 11
Lopez v. Southern Cal. Rapid Transit Dist.,
  40 Cal.3d 780, 795 (1985), ............................................................................. 4

- ii –

*Morgan v. U.S. Bank,*
  2013 WL 684932 at *3 (N.D. Cal. 2013)....................................................... 11
*Parker v. Bowron*
  (1953) 40 Cal.2d 344, 351 [254 P.2d 6]......................................................... 2
*Pasadena Live v. City of Pasadena*
  (2004) 114 Cal.App.4th 1089, 1094 [8 Cal. Rptr. 3d 233].......................... 9,10
*Perfect 10, Inc. v. VISA Int'l Service Ass'n,*
  494 F.3d 788, 808-09 (9th Cir. 2007) ............................................................ 8
*Racine & Laramie v. Department of Parks and Recreation,*
  11 Cal. App. 4th 1026, 1031-1032 (1992). .................................................. 10
*Ragland v US Bank N.A.,*
  209 Cal.App.4th 182, 206 (2012), ............................................................. 9,11
*Rahbarian v. JP Morgan Chase,*
  2014 U.S. Dist. Lexis 158719, at *10 (E.D. Cal. Nov. 10, 2014)................... 4
*Rockridge Trust v. Wells Fargo, N.A.,*
  985 F.Supp.2d 1110, 1151-52 (N.D. Cal. Sept. 25, 2013)............................. 5
*Rubin v. Wal-Mart Stores, Inc.,*
  599 F.Supp.2d 1176, 1179 (N.D. Cal. 2009................................................... 7
*Shell Oil v Richter,*
  52 Cal.App.2d 164, 1268 (1942)................................................................... 14
*Camp v Board of Supervisors,*
  123 Cal.App.3d 334, 356 (1981); ................................................................ 14
*Smith v. City & Cnty. of San Francisco,*
  225 Cal.App.3d 38, 49 (1990), ...................................................................... 9
*Stewart v. Life Ins. Co. of North America,*
  388 F.Supp.2d 1138 (2005)............................................................................ 8
*Stoyanovich v. Fine Art Capital LLC,*
  2007 WL 2363656 at *2 (S.D. N.Y. 2007) .................................................. 14
*Truong v. Nguyen*
  (2007) 156 Cal. App. 4th 865, 875 .............................................................. 12
*White v. Starbucks Corp.,*
  497 F.Supp.2d 1080, 1089-90 (N.D. Cal. 2007)............................................ 7
*Woodring v. Ocwen Loan Servicing, LLC,*
  2014 U.S. Dist. LEXIS 100873, *20 (C.D. Cal. 2014) ................................. 4


Statutes

Business & Professions Code §17200.................................................................. 8
Code of Civil Procedure §430.10(b)................................................................ 2,3
Code of Civil Procedure §430.10(e)................................................................. 15
Code of Civil Procedure §430.10 (f) ..................................................... 10,14,15
Civil Code §2920.5 ............................................................................................. 3
Civil Code §2923.55 ................................................................................. 3,5,6,7
Civil Code §2923.6 ..................................................................................... 3,5,7
Civil Code §2923.6(i) ........................................................................................ 6

Civil Code §2923.7(b)..................................................................................... 5
Civil Code §2923.7(g)(1)............................................................................... 6
Civil Code §2924.18 ................................................................................. 3,5,6

Other Authorities
5 Witkin, Summary of California Law, Torts, § 732 (9th Ed. 2003 ..................................... 12

MEMORANDUM OF POINTS AND AUTHORITIES BY DEFENDANTS FAY SERVICING, LLC AND
U.S. BANK, N.A. AS TRUSTEE IN SUPPORT OF THEIR DEMURRER TO PLAINTIFF'S
ORIGINAL COMPLAINT

## I. INTRODUCTION

Plaintiff MICHAEL PARADISE ("plaintiff") filed his original complaint on or about 6/10/2016 against defendants FAY SERVICING, LLC ("Fay") and US BANK, N.A. AS TRUSTEE FOR CVF MORTGAGE LOAN ACQUISITION COMPANY (erroneously sued as US Bank, N.A) ("U.S. Bank"), collectively "defendants." Plaintiff has also named FLAGSTAR BANK ("Flagstar") as a defendant but this demurrer is being presented only on behalf of defendants Fay and Trustee.

According to the complaint, plaintiff claims that "all times relevant" he has been "an individual residing" in the subject property commonly known as 3927 Rhoda Drive, San Jose, Ca. 95117 ("the Property"). See ¶1, pg. 2, line 3 of the complaint[1]. Defendants request that the Court take special notice of how carefully this first paragraph is phrased because plaintiff leaves out a critical fact that makes him ineligible for protection under the Homeowner's Bill of Rights ("HOBR"). Specifically, as detailed below, the Property was purchased by a Rebekah Victoria Owen ("Owen") on or about 10/25/04. This is crucial because plaintiff was **never** a "borrower" on the Loan. HOBR does not apply to non-borrowers. Although plaintiff is now the title holder of the Property, he has never been on the Loan or the DOT and has never assumed the Loan. Thus, he is not and cannot be deemed a "borrower" as contemplated under *Civil Code* 2920.5. As a result, plaintiff does not have standing to bring any claims under HOBR. Because each of plaintiff's causes of action are intertwined with these alleged violations, each and every claim set forth in the Complaint equally fails.

## II.   FACTS

On 11/5/2004, a Grant Deed was recorded transferring title to the Property to Owen. *See* Request for Judicial Notice ("RJN"), Exhibit 1. On or about 10/23/2006, Owen, **as an unmarried person**, took out the subject loan in the principal amount of $620,000 ("the Loan"). RJN Exh. 2. The Loan was secured by a Deed of Trust ("DOT") recorded on 10/31/2006, and named Flagstar as the originating lender and Joan Anderson as the DOT Trustee. *Id.* On 4/10/2013, a substitution was recorded naming the Law Office of Les Zieve as the DOT Trustee. RJN, Exh. 3. That same day, a Notice of Default was recorded by the Law Office of Les Zieve noting a delinquency of $23,251.71 as of 4/8/2013. RJN, Exh. 4. On 7/19/2013, after the default had not been cured, a Notice of Trustee's

---

[1] All future references to pages and paragraph numbers are to those in the complaint unless otherwise indicated.

MEMORANDUM OF POINTS AND AUTHORITIES BY DEFENDANTS FAY SERVICING, LLC AND
U.S. BANK, N.A. AS TRUSTEE IN SUPPORT OF THEIR DEMURRER TO PLAINTIFF'S
ORIGINAL COMPLAINT

Sale was recorded setting a sale for 8/13/2013. RJN, Exh. 5.  On 9/19/2013, an assignment was recorded referencing the transfer of the DOT to U.S. Bank.  RJN Exh. 6.  On 2/18/2014, the 4/10/2013 Notice of Default was rescinded thereby terminating the foreclosure proceeding.  RJN Exh. 7.  **To date, no new foreclosure proceeding has been initiated and no new Notice of Default recorded**.

Evidently, at some point after entry into the Loan, which, per the 1-4 Family Rider, appears to be a rental property because the Rider eliminated the occupancy requirement, Owen married plaintiff. Unfortunately, Owen died on or about 12/13/2012.  On 4/1/2015, by virtue of an Order from the Santa Clara probate court, title to the Property was placed into the "Paradise Living Trust Dated December 11, 2012" that plaintiff and Owen apparently executed 2 days before her death.  RJN Exh. 8.  Plaintiff is the current trustee of said trust.  The Loan was never assumed by plaintiff or the Paradise Trust, and Fay was never notified on the transfer in title ownership, nor was Fay aware that borrower had died.

## III.    ARGUMENT

### A.    PLAINTIFF LACKS STANDING TO BRING THIS LAWSUIT

CCP §430.10(b) states, in pertinent parts, "[t]he party against whom a complaint ... has been filed may object, by demurrer ... to the pleading on any one or more of the following grounds:...(b) The person who filed the pleading does not have the legal capacity to sue." This subsection of the demurrer statute has been interpreted to mean "standing."  The distinction is succinctly described in *Friendly Village Comm. Assn v. Silva & Hill Const. Co.* (1973) 31 Cal.App.3d 220, 224 as follows:

> "There is a difference between the capacity to sue, which is the right to come into court, and the standing to sue, which is the right to relief in court. (*Parker v. Bowron* (1953) 40 Cal.2d 344, 351 [254 P.2d 6]; *Klopstock v. Superior Court* (1941) 17 Cal.2d 13, 18-19 [108 P.2d 906, 135 A.L.R. 318].) Thus, although a plaintiff may have "capacity" to sue, <u>if the complaint shows that he is not a real party in interest and therefore lacks "standing" to sue, a "general" demurrer will be sustained.</u> (extensive citations omitted)" (emphasis added.)

First and foremost, Plaintiff lacks the capacity to sue because he is not the title owner of the Property. As evidenced by the judicially noticeable facts, the title owner is the "Paradise Living Trust Dated December 11, 2012." RJN Exh. 8.  Plaintiff is merely the trustee of that Trust.  The Complaint concedes the same by stating that "Ms. Owen passed away and Subject Property was held in the "Paradise Living Trust." Plaintiff was confirmed Trustee of the 'Paradise Living Trust.'" ¶13.

1
2
3
4
5
6

Accordingly, it is undisputed that Plaintiff, who sued in his individual capacity, has no title ownership interest in the Property. See ¶1 ("Plaintiff, MICHAEL PARADISE,... is, and at all times relevant to the facts herein was, *an individual*..." (emphasis added)). Plaintiff, as an individual, is thus the wrong party and lacks the capacity to sue with respect to claims which threaten any ownership interest in the Property. Any such action would have to be brought by the real party in interest, Plaintiff, in his capacity as Trustee of the "Paradise Living Trust Dated December 11, 2012."

7

Next, and more importantly, *Civil Code* §2920.5 in HOBR states, in relevant part:

8
9
10
11
12
13
14

**"§ 2920.5. Definitions**
For purposes of this article, the following definitions apply:

(b) "Foreclosure prevention alternative" means a first lien loan modification or another available loss mitigation option.
(c) (1)    Unless otherwise provided and for purposes of Sections 2923.4, 2923.5, 2923.55, 2923.6, 2923.7, 2924.9, 2924.10, 2924.11, 2924.18, and 2924.19, **"borrower" means any natural person who is a *mortgagor or trustor* and who is potentially eligible for any federal, state, or proprietary foreclosure prevention alternative program** offered by, or through, his or her mortgage servicer. [Emphasis added.]

15
16
17
18
19
20
21
22
23

Under the undisputed facts here, plaintiff cannot be deemed a "borrower" with respect to HBOR because he was never on the original Loan. Thus, Plaintiff is not entitled to any protections under HBOR as a matter of law as HBOR only applies to a "borrower." Furthermore, there are no allegations in the complaint that he ever assumed the Loan. Thus, he is not a "borrower", "mortgagor", or "trustor." Moreover, plaintiff never informed any of the servicers of the death of the borrower. It is true that plaintiff had a number of conversations with Fay over the past year or so. However, these conversations were always in his original capacity as a "third party" authorized to speak on behalf of the borrower. The bottom line is that plaintiff does not have standing to bring this case or assert any violation under HBOR, which happens to be the linchpin to plaintiff's entire action. Therefore, the entire complaint should be dismissed without leave. CCP §430.10(b).

24

**B.    INDIVIDUAL CAUSES OF ACTION**

25

1.    THE FIRST CAUSE OF ACTION FAILS

26
27

Plaintiff's First Cause of Action is for violations of HOBR against all defendants. Plaintiff references violations of *Civil Code* §§2923.6, 2923.55, 2923.7 and 2924.18. ¶¶48-61. As stated

28

MEMORANDUM OF POINTS AND AUTHORITIES BY DEFENDANTS FAY SERVICING, LLC AND U.S. BANK, N.A. AS TRUSTEE IN SUPPORT OF THEIR DEMURRER TO PLAINTIFF'S ORIGINAL COMPLAINT

above, plaintiff is not entitled to any protections under HOBR because he was and is not a "borrower" under the Loan as defined by the express terms of the statute. For this reason alone, this First Cause of Action should be dismissed without leave to amend.

In addition, even if HBOR did apply to plaintiff, which it cannot, this claim still fails. First, plaintiff's allegations are vague and ambiguous both as to dates and the fact that plaintiff uses the word "defendants", plural, to allege actions undertaken against him. See, for example, ¶51 and ¶¶53-54 on pg. 10. In order to set forth a viable claim under HOBR and not mere conclusions, plaintiff is required to allege **specific** factual acts against **specific** defendants and not simply lump all of the defendants together as one. Statutory violations must be pled with particularity. *See Lopez v. Southern Cal. Rapid Transit Dist.*, 40 Cal.3d 780, 795 (1985), (holding that statutory violations be pled with particularity); *Rahbarian v. JP Morgan Chase*, 2014 U.S. Dist. Lexis 158719, at *10 (E.D. Cal. Nov. 10, 2014). Indeed, "courts typically uphold the sufficiency of such claims only upon the submission of much more robust factual allegations than what Plaintiff has provided here." *Woodring v. Ocwen Loan Servicing, LLC*, 2014 U.S. Dist. LEXIS 100873, *20 (C.D. Cal. 2014) (citing to cases). Plaintiff fails to set forth any facts to establish what particular statute was violated by which particular defendant(s) and when. This problem is particularly egregious here where plaintiff fails to allege specific dates of wrongdoing or even allege when the servicing changed from Flagstar to Fay. See ¶25 on pg. 5. Since HOBR was not effective until 1/1/2013, it is entirely unclear whether the alleged actions of either Flagstar or Fay even fall within the protections afforded by HOBR. It is equally impossible to tell from the Complaint whether the conduct plaintiff alleges fell within Flagstar's tenure as servicer, Fay's tenure, or both. Allowing the pleading to stand with such ambiguity would be highly prejudicial to Defendants.

Second, plaintiff alleges that defendants "are actively moving toward foreclosure of the home and took clear steps" to complete the foreclosure. See ¶43 on pg. 8. Plaintiff is referring to the recordation of the prior Notice of Default and Notice of Sale. ¶¶20 & 21 starting on pg. 4. Plaintiff sums up his position by indicating that he wants an injunction and that foreclosure is imminent. See ¶¶44 & 46 on pgs. 8-9 and ¶61 starting on pg. 11. However, as evidenced by the judicially noticeable facts, the disputed NOD was **rescinded** in February, 2014 which effectively terminated the foreclosure

1 proceeding based thereon by operation of law. RJN Exh. 7. No new notice of default has been
2 recorded in the two years since the Notice of Rescission was recorded. As such, the allegation in ¶44,
3 pg. 8 that "defendants" have failed to rescind the NOD is blatantly false and there is no active
4 foreclosure proceeding at this time.

5 Similarly, because there has been no new notice of default or notice of sale recorded, plaintiff's
6 claims under section 2923.6, 2923.55, and 2924.18 fail as a matter of law. Each of those statues
7 merely mandate certain obligations being taken by a servicer/lender before a notice of default, notice
8 of sale, or sale be conducted. *See Civil Code* §§2923.6(c), 2923.55(a), and 2924.18(a)(1). Because
9 there is no operative notice of default or notice of sale recorded, and no sale has taken place, plaintiff's
10 claims under 2923.6, 2923.55, and 2924.18 fail as a matter of law. As for section 2923.7, plaintiff
11 merely argues that "[d]espite Plaintiff's request for assistance with an alternative to foreclosure, the
12 numerous representatives at FAY that Plaintiff spoke with were unable and/or unwilling to help and
13 consistently gave Plaintiff vague answers to questions. Said representatives failed to offer adequate
14 assistance to Plaintiff..." ¶56. However, none of the above are obligations contemplated by the statute.
15 *See Civil Code* §2923.7(b). More importantly, as stated in the Code, "[f]or purposes of this section,
16 "single point of contact" means an individual or team of personnel each of whom has the ability and
17 authority to perform the responsibilities described in subdivisions (b) to (d), inclusive." *Civil Code*
18 §2923.7(e). Plaintiff's allegation that "numerous representatives" were provided is itself unavailing.
19 In addition, in order to successfully plead a cause of action for a violation of Section 2923.7, a plaintiff
20 must plead prejudice or damages. *See, e.g., Rockridge Trust v. Wells Fargo, N.A.*, 985 F.Supp.2d
21 1110, 1151-52 (N.D. Cal. Sept. 25, 2013) (holding that damages are a prerequisite to any violation of
22 Section 2923.7). Here, Plaintiff has not pled any prejudice or damages and cannot identify any harm
23 because no foreclosure proceedings have occurred—a new notice of default has not even been
24 recorded. Accordingly, this claim fails as a matter of law.

24 Lastly, up until 6/1/2016 defendant Fay was a "small servicer" as defined under *Civil Code*
25 §2924.18 of HOBR. *Civil Code* section 2924.18 states, in pertinent part:

26 "(b) This section shall apply only to [an entity that], during its immediately preceding
27 annual reporting period, as established with its primary regulator, foreclosed on 175 or

28

fewer residential real properties, containing no more than four dwelling units, that are located in California." [Emphasis added.]

In this case, RJN Exh. 9 is a licensing report wherein Fay notified the California regulator that it did not foreclose on more than 175 units during the time frame in which plaintiff alleges the wrongdoing occurred. This report is capable of being judicially noticed as it cannot be subject to reasonable dispute. Thus, because Fay foreclosed on 175 or fewer residential real properties for the relevant time frame apparently alleged by plaintiff, it was considered a "small servicer" for purposes of HOBR at all times pertinent in connection with plaintiff's Complaint. *Civil Code* section 2924.18(c) states that only after a servicer forecloses on more than 175 residential units in any prior calendar year immediately preceding the required annual reporting period will sections 2923.55, 2923.6 and 2923.7 apply to its actions. Specifically, the statute states:

> "(c) Within three months after the close of any calendar year or annual reporting period ... which an entity or person described in subdivision (b) exceeds the threshold of 175 specified in subdivision (b), that entity shall notify its primary regulator, in a manner acceptable to its primary regulator, and any mortgagor or trustor who is delinquent on a residential mortgage loan serviced by that entity of the date on which that entity will be subject to Sections 2923.55, 2923.6, 2923.7, 2924.9, 2924.10, 2924.11, and 2924.12...." [Emphasis added.]

Based on the above, by statute, *Civil Code* sections 2923.55, 2923.6 and 2923.7 **do not apply** to "small servicers" who foreclosed on 175 or fewer properties during its immediately preceding annual reporting period. See also *Civil Code* §2923.55(g), ("This section shall not apply to entities described in subdivision (b) of Section 2924.18."); *Civil Code* §2923.6(i) ("Subdivisions (c) to (h), inclusive, shall not apply to entities described in subdivision (b) of Section 2924.18"); and *Civil Code* §2923.7(g)(1). ("This section shall not apply to...[entities who have] foreclosed on 175 or fewer residential real properties..."). Since Fay was a small servicer at the time the alleged unlawful actions took place, prior to 6/1/2016, sections 2923.55, 2923.6 and 2923.7 are inapplicable.

For the numerous reasons previously detailed Plaintiff's first cause of action for violation of HBOR fails and should be dismissed without leave to amend.

2.    THE COMPLAINT'S REMAINING CAUSES OF ACTION FAIL

A review of the complaint shows that each and every one of its remaining cause of action, two through eight, against these defendants is based on alleged violations of one of the HOBR statutes,

-6-

either *Civil Code* section 2923.55, 2923.6, or 2923.7. See ¶39 on pgs.7; ¶¶41-44 on pg. 8 and ¶46 starting on pg. 8 of the complaint for plaintiff's general allegations against these defendants. Then see ¶¶64 on pg. 12 and ¶¶66-68 on pgs. 12-13 in the *Second Cause of Action*; see ¶¶73 and 75 on pgs. 13-14 in the *Third Cause of Action*; see ¶¶78 & 80 on pgs. 14-15 which incorporate by reference all prior paragraphs as the operative paragraphs for the *Fourth Cause of Action*; see ¶¶94 & 97 on pg. 17 which also incorporate by reference all prior paragraphs as the operative paragraphs for the *Fifth Cause of Action*; see ¶¶100-103 on pg. 18 in the *Sixth Cause of Action*; see ¶¶107 & 109 on pg. 19 which incorporate by reference all prior paragraphs as the operative paragraphs for the *Seventh Cause of Action* and finally ¶¶112-116 on pgs. 19-20 in the *Eighth Cause of Action*. However, plaintiff's entire statutory foundation for his complaint is based on statutes that were inapplicable and alleged violations that are insufficiently pled and invalid as to these moving defendants.

As such, plaintiff's entire action fails and should be dismissed without leave to amend. Nevertheless, in addition to the above reasons why the Complaint fails in general, each remaining cause of action also fails on its own accord as detailed below.

      a.      THE SECOND CAUSE OF ACTION FAILS

Plaintiff's Second Cause of Action is for violations of B&P §17200 et seq. against all defendants. Like the First Cause of Action, this cause of action is wholly predicated on alleged violations of HOBR. ¶¶63-70. Because these allegations are invalid, this dependent claim must suffer a similar fate. *Rubin v. Wal-Mart Stores, Inc.*, 599 F.Supp.2d 1176, 1179 (N.D. Cal. 2009) ("[p]laintiffs' ... claim under Section 17200 - which is derivative of their erroneous [other] claims - also fails to state a valid cause of action."); *White v. Starbucks Corp.*, 497 F.Supp.2d 1080, 1089-90 (N.D. Cal. 2007) (dismissing Section 17200 claim where underlying claim was invalid).

In addition, like plaintiff's HBOR claim, this cause of action is equally vague and ambiguous as to time frames and continues to lump all defendants together rather than stating specific allegations against specific defendants as required under due process. See, for example, ¶¶64-65 on pg. 12. Plaintiff fails to allege **facts**, as opposed to generalized statements as to which defendant supposedly engaged in violating conduct at what time. Furthermore, his generalized allegations in ¶66 on pg. 12 that "defendants", plural, fail to give "homeowners" the chance to apply for modifications clashes with

the factual allegations stated previously by plaintiff. Compare this ¶66 with ¶35 on pg. 7. In addition, plaintiff fails to allege facts, as opposed to generalized statements about supposedly being charged "fees and costs" without legal authority to do so. See ¶67 on pg. 12. Nowhere in his factual allegations is there a single mention of fees and costs supposedly improperly charged to him. Defendants cannot tell from this poorly written complaint what conduct they allegedly engaged in and what fees and costs plaintiff is referring to and which defendant supposedly imposed these charges. California law makes clear that there is no vicarious liability under the UCL. *Perfect 10, Inc. v. VISA Int'l Service Ass'n*, 494 F.3d 788, 808-09 (9th Cir. 2007) ("[A]n unfair practices claim under [the UCL] cannot be predicated on vicarious liability. . . . A defendant's liability [under the UCL] must be based on his personal participation in the unlawful practice and unbridled control over the practices that are found to violate [the UCL]") (quoting *Emery v. Visa Int'l Service Ass'n*, 95 Cal.App.4th 952, 960 (2002)). Plaintiff's failure to delineate which defendant engaged in what conduct is fatal to his claim.

Also, in order to set forth a valid claim under section §17200, a plaintiff must show either an (1) unlawful, unfair, or fraudulent business act or practice, or (2) unfair, deceptive, untrue, or misleading advertising. *Stewart v. Life Ins. Co. of North America*, 388 F.Supp. 2d 1138 (2005). Here, Plaintiff's section 17200 claim fails because he has not alleged any facts demonstrating conduct by Defendants that could be classified as unlawful, fraudulent, or an unfair act or business practice. Nor does Plaintiff allege any conduct that could be deemed fraudulent or found to significantly threaten or harm competition, or could constitute a reasonable violation of any law, or the policy or spirit of such a law. Plaintiff must also demonstrate that he suffered injury in fact as a <u>direct result</u> of the unfair competition. *Degelman v. Advanced Med. Optics, Inc.*, 659 F.3d 835, 839 (9th Cir. 2011). "[A] plaintiff... lacks standing if he cannot causally link the defendant's conduct to [the] loss." *Ford, supra*, 2012 WL 2343898 at *8. Plaintiff fails to assert any facts as to how his damages, if any, directly arose from Defendants' alleged conduct. Lastly, in order to allege a UCL claim, a plaintiff "must state with reasonable particularity the facts supporting the statutory elements of the violation." *Khoury v. Maly's of California, Inc.*, 14 Cal.App.4th 612, 619 (1993). Plaintiff's entire action suffers from a lack of particular facts. Therefore, this cause of action is demurrable pursuant to CCP §430.10(e) and (f) and should be dismissed <u>without</u> leave to amend.

b.    THE THIRD CAUSE OF ACTION FAILS

Plaintiff's Third Cause of Action is for breach of the implied covenant of good faith and fair dealing against all defendants.  Like the prior two causes of action, this cause of action is uncertain, vague and ambiguous because plaintiff continues to lump all defendants together and simple makes his allegations against all "defendants", plural, thereby denying them due process. See, for example, ¶¶76-77 on pg. 14. This type of pleading against "defendants," plural, is particularly problematic because plaintiff has not even pled that the required written contract for this cause of action exists between these defendants and himself.  As the Court of Appeals stated in *Smith v. City & Cnty. of San Francisco*, 225 Cal.App.3d 38, 49 (1990), "[t]he prerequisite for any action for breach of the implied covenant of good faith and fair dealing is the existence of a contractual relationship between the parties, since the covenant is an implied term in the contract. The court of Appeals in *Durell v. Sharp Healthcare*, 183 Cal. App. 4th 1350, 1369 (2010) further explained what the covenant of good faith and fair dealing meant, by stating:

> "The covenant of good faith and fair dealing, implied by law in every contract, exists merely to prevent one contracting party from unfairly frustrating the other party's right to receive the benefits of the agreement actually made. [Citation.] . . . The "covenant is implied as a supplement to the express contractual covenants, to prevent a contracting party from engaging in conduct that frustrates the other party's rights to the benefits of the agreement." [Citations omitted.]

See also *Ragland v US Bank N.A.*, 209 Cal.App.4th 182, 206 (2012), where the Court held,

> "[t]he implied covenant of good faith and fair dealing is limited to assuring compliance with the *express terms* of the contract, and cannot be extended to create obligations not contemplated by the contract.'" (*Pasadena Live v. City of Pasadena* (2004) 114 Cal.App.4th 1089, 1094 [8 Cal. Rptr. 3d 233].) <u>Outside of the insured-insurer relationship and others with similar qualities, breach of the implied covenant of good faith and fair dealing does not give rise to tort damages.</u> (*Foley v. Interactive Data Corp.* (1988) 47 Cal.3d 654, 692–693 [254 Cal. Rptr. 211, 765 P.2d 373]" [Emphasis added.]

Plaintiff has not and cannot allege any such written contract exists between these defendants and himself for the simple reason that <u>he was not and is not a borrower under the note and DOT</u>.

The only written contracts that plaintiff alleges are the Note and DOT ("Mortgage Agreement"). See ¶73 on pg. 13. However, as RJN Exhs. 1 & 2 show, plaintiff was **never** a party to

- 9 -

either of these documents, nor has he ever assumed the Loan.  As such, he cannot use the Mortgage Agreement as the "written contract" that is a necessary element for this cause of action and his claim that "[o]n or about October 23, 2006, Plaintiff entered into a loan agreement" is blatantly false.  In fact, plaintiff admits he was not a party to the Loan in para. 12. ¶12 ("[a]s evidence of the loan. Ms. Owen executed a promissory note [and] Deed of Trust…").

Furthermore, plaintiff contends that "Defendants breached the covenant of good faith and fair dealing and interfered with Plaintiff's ability to perform under the contract by refusing to provide Plaintiff any meaningful assistance and then impairing his ability to get current on his loan like he was trying desperately to do."  ¶73.  Plaintiff's reliance on the Mortgage Agreement is severely misplaced in that the fundamental benefit it offers to a borrower is the receipt of sums of money from the lender. As such, any implied covenants necessarily arise out of this fundamental benefit.  Plaintiff fails to identify any provision of the Mortgage Agreement which would require defendants to modify his Loan, engage in meaningful modification negotiations, or advise his as to his eligibility for a modification.  Such a duty/covenant does not flow from the express terms of the loan agreement.  And, in fact, plaintiff's desire to modify the Loan is diametrically opposed to the express terms set forth in the Note and DOT.  Because the terms of the contract (i.e., the Note and DOT) do not relate to any such duty, no implied duty with respect to modification negotiations can exist.  The implied covenant cannot be extended to create obligations not contemplated by the contract. See *Pasadena Live, LLC v. City of Pasadena*, 114 Cal. App. 4th 1089, 1094 (2004); *Racine & Laramie v. Department of Parks and Recreation*, 11 Cal. App. 4th 1026, 1031-1032 (1992).  Accordingly, plaintiff's third cause of action fails and should be dismissed without leave to amend.

c.    THE FOURTH CAUSE OF ACTION FAILS

The Fourth Cause of Action is for negligence against all defendants.  Again, plaintiff makes all of his allegations against "defendants", plural in this cause of action, thereby making it demurrable pursuant to CCP §430.10(f). See, for example, ¶80 on pg. 15.

Secondly, plaintiff has not pled any facts to show that any of the defendants owed him a duty of care, *particularly since he was never a borrower on the Loan*.  In order to prevail on a claim for negligence, a plaintiff must establish "(a) a legal duty to use due care; (b) a breach of such legal duty;

- 10 -

and (c) the breach as the proximate or legal cause of the resulting injury." *Ladd v. County Of San Mateo* (1996) 12 Cal.4th 913, 917. California has long recognized that in commercial transactions, each party acts in its own best interest. *Das v. Bank of America, N.A.* (2010) 186 Cal.App.4th 727, 740-741. "As a general rule, a financial institution owes no duty of care to a borrower when the institution's involvement in the loan transaction does not exceed the scope of its conventional role as a mere lender of money." Id. (citing *Nymark*, 231 Cal.App.3d at p. 1096). And this "conventional role" does not cease to exist at the time of consummation of a loan, but continues throughout the life of a loan, encompassing all actions concerning servicing of the loan, including loan modification negotiations. *Karimi v. Wells Fargo*, 2011 WL 10653746 at *3 (C.D. Cal. 2011). "[E]ven where a lender offers a loan modification, that is nothing more than a renegotiation of loan terms." *Morgan v. U.S. Bank*, 2013 WL 684932 at *3 (N.D. Cal. 2013).

Here, plaintiff fails to allege specific facts against specific defendants in order to support his claim that "defendants", plural, owed him, *a non-borrower*, a duty of care. See, for example, ¶¶84 & 85 on pgs. 15-16. Plaintiff further fails to explain how a servicer or lender would owe any duty to a non-borrower in the first place. Plaintiff's generalized statements and raw conclusions utterly fail to set forth the existence of a viable legal duty of care owed or that "defendants" exceeded the scope of their conventional roles. And at a minimum, plaintiff fails to set forth any actions on defendants' part which could create a special relationship necessary to impose such a duty of care. Lastly, in light of the Notice of Rescission (RJN, Exh. 7), the prior foreclosure proceeding was terminated and no sale has taken place. Plaintiff therefore cannot establish any breach of any legal duty, damages or causation. As such, plaintiff's fourth cause of action fails and should be dismissed <u>without</u> leave to amend.

        d.     <u>THE FIFTH CAUSE OF ACTION FAILS</u>

Plaintiff's Fifth Cause of Action is for negligent infliction of emotional distress ("NIED") against all defendants. Once again, like the prior causes of action, this cause of action lumps all the defendants together which makes the cause of action impermissibly vague and ambiguous. See ¶95 on pg. 17. Additionally, there is no such independent cause of action for NIED. As noted in *Ragland v. U.S. Bank, N.A.* (2012) 209 Cal.App.4th 182, 205, "[t]here is no independent tort of negligent

infliction of emotional distress; rather, "[t]he tort is negligence, a cause of action in which a duty to the plaintiff is an essential element." (*Potter v. Firestone Tire & Rubber Co.*, supra, 6 Cal.4th at p. 984.) "That duty may be imposed by law, be assumed by the defendant, or exist by virtue of a special relationship." (Id. at p. 985.)'" Thus, the elements of a claim for negligent infliction of emotional distress are: (1) a legal duty to use due care; (2) a breach of such legal duty; and (3) the breach is the proximate or legal cause of the resulting injury. 5 Witkin, Summary of California Law, Torts, § 732 (9th Ed. 2003); see also, *Truong v. Nguyen* (2007) 156 Cal.App.4th 865, 875.

In this case, as detailed above, plaintiff has not <u>and cannot</u> allege any special factual circumstances that would have imposed a duty of care on any of these defendants, especially given his capacity as **a non-borrower**. Plaintiff also has not and cannot establish any breach, causation or damages considering that no foreclosure has taken place and the prior foreclosure proceeding was rescinded. Finally, as far as plaintiff supposedly suffering "countless nights from severe anxiety" because of the alleged delays in reviewing his various loan modification applications (¶98, pg. 18), such an allegation is ambiguous and conclusory. More importantly, such alleged damages are not recoverable. Emotional distress damages are not recoverable where the emotional distress arises solely from property damage or economic injury to the plaintiff. *Butler Rupp v. Lourdeaux* (2005) 134 Cal.App.4th 1220, 1228-1229 ("a plaintiff may not recover damages for emotional distress in an action for negligent misrepresentation where the 'plaintiff's direct loss resulting from the negligent conduct of the defendant was [only] economic.'" (citing *Branch v. Homefed Bank* (1992) 6 Cal.App.4th 793, 801)). Here, not only has plaintiff incurred no damages, but any damages which could have been incurred would be purely economic. Thus, plaintiff's fifth cause of action for NIED fails and should be dismissed <u>without</u> leave to amend.

e.    THE SIXTH CAUSE OF ACTION FAILS

The Sixth Cause of Action is for breach of the Equal Credit Opportunity Act ("ECOA"). There are three major problems with this cause of action. First and foremost, plaintiff's continued use of the word "defendants", plural, renders the entire cause of action uncertain, vague and ambiguous. See ¶¶102-103 on pg. 18.

Secondly, the basis of this Sixth Cause of Action is plaintiff's claim that defendants violated 12

- 12 -

CFR 1002.9 of ECOA which states, "a creditor must notify **an applicant** of action taken on the applicant's request for credit, whether favorable or adverse, within 30 days after receiving a **completed** application." (Emphasis added). However, plaintiff has not alleged facts to show that he was and is an "applicant" as defined under ECOA. An "applicant" is defined under ECOA, 15 USC §1691(b) as "any person who applies to a creditor directly for an extension, renewal, or continuation of credit, or applies to a creditor indirectly by use of an existing credit plan for an amount exceeding a previously established credit limit." In plaintiff's case, he did not apply "directly" for credit because he was not the "borrower" on the Loan. Instead, he allegedly sought a loan modification on a loan which he had no legal or factual relationship to since he was not a borrower thereunder and never assumed the Loan either while his wife was alive or at any time after she passed away. As a result, it is factually impossible for any violation of the ECOA to have ensued. Additionally, Regulation B, 12 CFR 202.7(d)(4), states:

> "(4) Secured credit. If an applicant requests secured credit, a creditor may require the signature of the applicant's spouse or other person on any instrument necessary, or reasonably believed by the creditor to be necessary, under applicable state law to make the property being offered as security available to satisfy the debt in the event of default, for example, an instrument to create a valid lien, pass clear title, waive inchoate rights, or assign earnings." [Emphasis added.]

As stated a number of times before, plaintiff is a stranger to the Loan and its security instrument, the DOT [see RJN Exh. 2]. A modification would involve making sure that the security instrument stayed intact and applicable to the modified loan. But since this plaintiff never executed the DOT, nor did he ever assume it, the security instrument supporting any modification, *i.e.*, Owen's DOT, would not be legally binding on plaintiff. And while the creditor could demand that the borrower agree in writing to allow plaintiff to join on the DOT, since the borrower is now deceased, this becomes impossible. As such, plaintiff cannot claim to be an "applicant" entitled to ECOA protection.

Moreover, plaintiff is not an "applicant" within the plain meaning of the ECOA since any misconduct admittedly occurred during the servicing of the *existing* Loan. See *Gorham-DiMaggio v Countrywide Home Loans, Inc.*, 592 F. Supp. 2d 283, 291 (N.D. N.Y. 2008) (court held that the

- 13 -

"Plaintiff was not an applicant within the plain meaning of the ECOA, and therefore cannot invoke the protections of the Act...[because] [a]ny discrimination alleged in the complaint occurred during the servicing of Plaintiff's *existing* loan"); *see also Stoyanovich v. Fine Art Capital LLC,* 2007 WL 2363656 at *2 (S.D. N.Y. 2007) (noting the Plaintiff must be a "loan applicant" to recover under the ECOA. Finally, the ECOA statute requires that the creditor receive a "complete" application. As plaintiff admits in ¶40 on pg. 8, Fay denied his last modification application attempt because the application was **incomplete.** Thus, plaintiff's ECOA claim fails and his sixth cause of action should be dismissed <u>without</u> leave to amend.

f.      THE SEVENTH CAUSE OF ACTION

The Seventh Cause of Action is for declaratory relief against all defendants.  Again, this cause of action is demurrable for vagueness and ambiguity because plaintiff continues to refer only to "defendants" plural, throughout this cause of action. CCP §430.10(f).  This cause of action also fails in that it is duplicative of the relief sought in Plaintiff's other claims and is predicated on the Complaint's prior allegations which have been invalidated herein.

In addition, pursuant to ¶109 on pg. 19, plaintiff seeks to have this Court review the **past actions** of "defendants" described in this paragraph.  However, a declaratory relief order can only work prospectively.  It does not apply to events that have already happened.  As stated in *Canova v. Trs. of Imperial Irrigation Dist. Emp. Pension Plan,* 150 Cal. App. 4th 1487, 1497 (2007), "Declaratory relief operates prospectively to declare future rights, rather than to redress past wrongs. (*Babb v. Superior Court* (1971) 3 Cal.3d 841, 848 [92 Cal. Rptr. 179, 479 P.2d 379].)  Where, as here, a party has a fully matured cause of action for money, the party must seek the remedy of damages, and not pursue a declaratory relief claim. (*Jackson v. Teachers Ins. Co.* (1973) 30 Cal. App. 3d 341, 344 [106 Cal. Rptr. 208].)"  For these reasons, plaintiff's seventh cause of action is for declaratory relief claim fails and should be dismissed <u>without</u> leave to amend.

g.      THE EIGHTH CAUSE OF ACTION

The Eighth Cause of Action is for injunctive relief in general.  It is well settled that injunctive relief is not a cause of action, it is a remedy. See *Shell Oil v Richter,* 52 Cal.App.2d 164, 1268 (1942); *Camp v Board of Supervisors,* 123 Cal.App.3d 334, 356 (1981); *Guessous v. Chrome Hearts, LLC*

- 14 -

(2009) 179 Cal.App.4th 1177, 1187 (Injunctive relief is a remedy, not a cause of action).  As explained in *Hafiz v. Greenpoint Mortg. Funding, Inc.* (N.D. Cal., 2009) 652 F.Supp.2d 1039, 1049, "injunctive relief is a remedy which must rely upon underlying claims.  If plaintiff seeks injunctive relief, she should request it as part of her prayer for relief." (*Ibid.*)  Thus, because injunctive relief is not a viable cause of action and because plaintiff's remaining causes of action, on which his request for injunctive relief is predicated, fail, plaintiff's cause of action fails and is subject to this Demurrer.

In addition, plaintiff's cause of action fails because there is nothing here to enjoin.  As mentioned, there is no pending foreclosure proceeding.  Therefore, plaintiff's request for injunctive relief is improper.  Finally, this claim fails since plaintiff seeks the issuance of an injunction based on alleged violations of HOBR.  But, as shown above, plaintiff is not entitled to any protections under HOBR since he is not a borrower as defined by the statute.  Accordingly, plaintiff's eighth and final cause of action for injunctive relief fails and should be dismissed <u>without</u> leave to amend.

## IV.    CONCLUSION

In sum, plaintiff does not have standing to bring this complaint because he has brought it in the name of the wrong party and was and is not the borrower on the Loan, nor has he ever assumed said Loan.  As a result, plaintiff's action is fatally deficient and *cannot reasonably be cured*.  Furthermore, plaintiff's complaint is long on generalizations and legal conclusions but absent on actual substantiating facts.  In addition, the Complaint is impermissibly uncertain, vague and ambiguous as to dates when crucial events and occurrences took place and equally unclear as to which particular defendant is alleged to have engaged in unlawful conduct.  As such, Plaintiff's Complaint, in its entirety, is subject to dismissal pursuant to CCP §430.10(b), (e) and (f), and defendants thus respectfully request that this Court sustain their demurrer to each and every cause of action <u>without</u> leave to amend.

Respectfully submitted,
WRIGHT, FINLAY & ZAK, LLP

Dated: July 15, 2016                    By: _Ronald M. Arlas_

Ronald M. Arlas, Esq., Attorneys for
Defendants Fay Servicing, LLC and US Bank,
N.A as Trustee for CVF Mortgage Loan
Acquisition Company

MEMORANDUM OF POINTS AND AUTHORITIES BY DEFENDANTS FAY SERVICING, LLC AND
U.S. BANK, N.A. AS TRUSTEE IN SUPPORT OF THEIR DEMURRER TO PLAINTIFF'S
ORIGINAL COMPLAINT

1

## PROOF OF SERVICE

2

I, Catherine Lawler, declare as follows:

3

I am employed in the County of Marin, State of California where the mailing occurred. I
4 am over the age of eighteen (18) and not a party to the within action. My business address is 907
Sir Francis Drake Blvd., Kentfield, CA 94904. I am readily familiar with the practices of
5 Wright, Finlay & Zak, LLP, for collection and processing of correspondence for mailing with the
United States Postal Service. Such correspondence is deposited with the United States Postal
6 Service the same day in the ordinary course of business. I am aware that on motion of party
served, service is presumed invalid if postal cancellation date or postage meter date is more than
7 one day after date of deposit for mailing in affidavit.

8

On July 15, 2016, I served the foregoing **DEFENDANTS' MEMORANDUM OF
9 POINTS AND AUTHORITIES IN SUPPORT OF THEIR DEMURRER TO
PLAINTIFF'S COMPLAINT** on all interested parties in this action by placing [ ] the original
10 [X] a true copy thereof enclosed in sealed envelope(s) addressed as follows:

11 Marc Applbaum, Esq.
KETTNER LAW CORPORATION
12 2150 West Washington Street, Suite 104
San Diego, CA 92110
13 Telephone:     (619) 756-7300
Facsimile:     (619) 363-3944
14 E-Mail:     marc@kettnerlawcorp.com

15 **Attorneys for Plaintiff
MICHAEL PARADISE**
16

17

18

19 [X]     **(BY UNITED STATES MAIL)** I placed such envelope(s) for collection and mailing,
following our ordinary business practices.

20
[ ]     **(BY UNITED STATES CERTIFIED MAIL)** I placed such envelope(s) for collection
21     to be mailed on this date following ordinary business practices, via Certified Mail, Return
Receipt Requested.

22
[ ]     **(BY OVERNIGHT DELIVERY)** I enclosed the document(s) in an envelope or package
23     provided by an overnight delivery carrier and addressed to the person(s) at the
address(es) listed herein. I caused to be placed the envelope or package for collection
24     and overnight delivery at an office or a regularly utilized drop box of the overnight
carrier.

25
[ ]     **(BY MESSENGER SERVICE)** I served the document(s) by placing them in an
26     envelope or package addressed to the person(s) at the address(es) listed herein and
providing them to a professional messenger service for service. A Declaration of
27     Messenger is attached to the original Proof of Service.

28

-1-

PROOF OF SERVICE

1

[ ]     **(BY PERSONAL SERVICE)** I personally delivered the document(s) to the person(s) at
        the address(es) as set forth on the attached service list.  (1) For a party represented by an
        attorney, delivery was made (a) to the attorney personally; or (b) by leaving the
        document(s) at the attorney's office, in an envelope or package clearly labeled to identify
        the attorney being served, with a receptionist or an individual in charge of the office; or
        (c) if there was no person in the office with whom the notice of papers could be left, by
        leaving them in a conspicuous place in the office between the hours of nine in the
        morning and five in the evening.  (2) For a party, delivery was made to the party or by
        leaving the document(s) at the party's residence with some person not younger than 18
        years of age between the hours of eight in the morning and six in the evening.

I declare under penalty of perjury under the laws of the State of California that the
foregoing is true and correct.

Executed on July 15, 2016, at Kentfield, California.

*Catherine Lawler*

Catherine Lawler

PROOF OF SERVICE

1   WRIGHT, FINLAY & ZAK, LLP
     T. Robert Finlay, Esq., SBN 167280
2   Ronald M. Arlas, Esq., SBN 59091
     4665 MacArthur Court, Suite 280
3   Newport Beach, CA 92660
     Tel: (949) 477-5050; Fax: (949) 477-9200
4

5   WRIGHT, FINLAY & ZAK, LLP
     Ronald M. Arlas, Esq. SBN 59091
6   907 Sir Francis Drake Blvd.
     Kentfield, Ca. 94904
7   Tel: 415/230-4350; Fax: 415/455-0370
     rarlas@wrightlegal.net
8

9   Attorneys for Defendants FAY SERVICING, LLC AND US BANK, N.A. AS TRUSTEE FOR CVF
10  MORTGAGE LOAN ACQUISITION COMPANY (erroneously sued as US Bank, N.A)

11            **IN THE SUPERIOR COURT OF THE STATE OF CALIFORNIA**
12              **IN AND FOR THE COUNTY OF SANTA CLARA**

13

| | |
|---|---|
| MICHAEL PARADISE, | Case No. 16CV296237 |
| Plaintiff | REQUEST FOR JUDICIAL NOTICE |
| vs. | BY DEFENDANTS FAY SERVICING, LLC AND US BANK, N.A. AS |
| FAY SERVICING, LLC, et al. | TRUSTEE IN SUPPORT OF THEIR |
| Defendants | DEMURRER TO PLAINTIFF'S ORIGINAL COMPLAINT |

14

15

16

17

18                  Date:     August 30, 2016
19                  Time:     9:00 a.m.
20                  Place:   Dept. 8
                     Reserved Hearing Date
21

22

23       Pursuant to Evidence Code §451, 452 and 453, defendants FAY SERVICING, LLC and US
24

25  BANK, N.A. AS TRUSTEE FOR CVF MORTGAGE LOAN ACQUISITION COMPANY

26  (erroneously sued as US Bank, N.A), collectively "defendants", request that this Court take judicial

27  notice of the documents attached hereto in support of their demurrer to plaintiff's original

28

Complaint.  Evidence Code §452(g) and (h), states, in pertinent parts, as follows:

"Judicial notice may be taken of the following matters to the extent that they are not embraced within Section 451:

(g).  Facts and propositions that are of such common knowledge within the territorial jurisdiction of the court that they cannot be reasonably be the subject of dispute.

(h).  Facts and propositions that are not reasonably subject to dispute and are capable of immediate and accurate determination by resort to sources of reasonably indisputable accuracy."

Evidence Code section 452(h) provides that a court may take judicial notice of "[f]acts and propositions that are not reasonably subject to dispute and are capable of immediate and accurate determination by resort to sources of reasonably indisputable accuracy."  The Court "may take judicial notice of recorded deeds."  *Evans v. California Trailer Court, Inc.* (1994) 28 Cal.App.4th 540, 549 (citing Maryland Casualty Co. v Reeder (1990) 221 Cal.App.3d 961, 977); See also *Poseidon Development, Inc. v. Woodland Lane Estates, LLC* (2007) 152 Cal.App.4th 1106, 1116 (trial court took judicial notice of various recorded documents related to the deed of trust securing the Note).   Additionally, the Court may take judicial notice of documents referred to in the Complaint even when not attached.   *Pomona College v. Superior Court* (1996) 45 Cal. App. 4th 1716, 1727-1728.  *See also Ingram v. Flippo* (1999) 74 Cal. App. 4th 1280, 1285 n.3.

While California law is that specific facts stated in judicially noticed documents cannot be assumed to be true for purposes of a demurrer, the law does allow a court to take notice of the legal effect of that recorded document.  This distinction is fully discussed in the recent case of *Fontenot v Wells Fargo Bank, N.A.*, 198 Cal. App. 4th 256 (Aug. 2011).   The court summarized the state of California law by holding:

"Taken together, the decisions discussed above establish that a court may take judicial notice of the fact of a document's recordation, the date the document was

REQUEST FOR JUDICIAL NOTICE BY DEFENDANTS FAY SERVICING, LLC AND US BANK, N.A.
AS TRUSTEE IN SUPPORT OF THEIR DEMURRER TO PLAINTIFF'S ORIGINAL COMPLAINT

recorded and executed, the parties to the transaction reflected in a recorded document, and <u>the document's legally operative language</u>, assuming there is no genuine dispute regarding the documents authenticity. <u>From this, the court may deduce and rely upon the legal effect of the recorded document, when that effect is clear from its face.</u>" 198 Cal. App. 4th at 265. [Emphasis added.]

Based on the holding in *Fontenot, supra*, this Court can take judicial notice of the "legal effect of the recorded document" submitted herewith.

Each of the documents described below to be judicially noticed come from sources of "reasonably indisputable accuracy". Based on the above, defendants respectfully request that the Court take judicial notice of the following documents pursuant to Evidence Code §§ 451, 452 and 453:

      1.    A true and correct copy of the Grant Deed memorializing the purchase of the subject property by Rebekah Owen and recorded on 11/05/2004 in the Santa Clara County Recorder's Office as Document #18081457.

      2.    A true and correct copy of the Deed of Trust executed by Rebekah Owen and recorded on 10/31/2006 in the Santa Clara County Recorder's Office as Document #19164224.

      3.    A true and correct copy of the Substitution of Trustee executed by Rebekah Owen and recorded on 4/10/2013 in the Santa Clara County Recorder's Office as Document #22166797.

      4.    A true and correct copy of the Notice of Default ("NOD") recorded on 4/10/2013 in the Santa Clara County Recorder's Office, as Document #22166798.

      5.    A true and correct copy of the Notice of Sale ("NOS") recorded on 7/19/2013 in the Santa Clara County Recorder's Office, as Document #22308679.

      6.    A true and correct copy of the Assignment of Deed of Trust recorded on 9/19/2013 in the Santa Clara County Recorder's Office, as Document #22391632.

7.   A true and correct copy of the Notice of Rescission recorded on 2/18/2014 in the Santa Clara County Recorder's Office, as Document #22520761.

8.   A true and correct copy of the Order Confirming Trustee and Confirming Assets Owned by Trust recorded on 4/9/2015 in the Santa Clara County Recorder's Office, as Document #22913096.

9.   A true and correct copy of the CMRL reported required to be filed by the Ca. Office of Business Oversight by Fay Servicing, LLC on 2/27/2015; see especially the bottom of pg. 3 and the top of pg. 4 of this report.

Respectfully submitted,

WRIGHT, FINLAY & ZAK, LLP

Dated: July 15, 2016                    By: _Ronald M. Arlas_

T. Robert Finlay, Esq.,
Ronald M. Arlas, Esq., Attorneys for
Defendants Fay Servicing, LLC and US Bank,
N.A as Trustee for CVF Mortgage Loan
Acquisition Company

REQUEST FOR JUDICIAL NOTICE BY DEFENDANTS FAY SERVICING, LLC AND US BANK, N.A.
AS TRUSTEE IN SUPPORT OF THEIR DEMURRER TO PLAINTIFF'S ORIGINAL COMPLAINT

# EXHIBIT 1

RECORDING REQUESTED BY
First American Title Company

AND WHEN RECORDED MAIL TO:
Rebekah Victoria Owen

PO BOX 1913
LOS GATOS, CA 95031

DOCUMENT: 18081457

Pages: 4

Fees . 36.00
Taxes .. 2706.00
Copies
AMT PAID 2742.00

BRENDA DAVIS
SANTA CLARA COUNTY RECORDER
Recorded at the request of
First American Title Company

RDE # 009
11/05/2004
8:00 AM

Space Above This Line for Recorder's Use Only

A.P.N.: 299-18-117

File No.: 4312-1637770 (CV)

## GRANT DEED
## SIGNED IN COUNTERPART

The Undersigned Grantor(s) Declare(s): DOCUMENTARY TRANSFER TAX $676.50; CITY TRANSFER TAX $2,029.50;
SURVEY MONUMENT FEE $

[ x ]  computed on the consideration or full value of property conveyed, OR

[   ]  computed on the consideration or full value less value of liens and/or encumbrances remaining at time of sale,

[   ]  unincorporated area; [ x ] City of San Jose, and

[ x ]  _____
       Signature of Declarant

FOR A VALUABLE CONSIDERATION, receipt of which is hereby acknowledged, **Paul M. Nauss, an unmarried man who acquired title as Paul M. Nauss, a married man as his sole and separate property and Benjamin M. Nauss and Marilyn K. Nauss, as trustees of the Nauss Family Living Trust, dated March 16, 1990 as to an undivided 56% interest all as tenants in Common**

hereby GRANTS to **Rebekah Victoria Owen, an unmarried woman**

the following described property in the City of **San Jose**, County of **SANTA CLARA**, State of **California**:

LOT 17, AS DELINEATED UPON THAT CERTAIN MAP ENTITLED "TRACT NO. 4131", FILED FOR RECORD IN THE OFFICE OF THE COUNTY OF SANTA CLARA, STATE OF CALIFORNIA, ON FEBRUARY 24TH, 1966 IN BOOK 205 OF MAPS, AT PAGE 42.

EXCEPTING THEREFROM THE UNDERGROUND WATER OR RIGHTS THERETO WITH NO RIGHTS OF SURFACE ENTRY, AS GRANTED TO SAN JOSE WATER WORKS, A CALIFORNIA CORPORATION, BY INSTRUMENT, RECORDED MARCH 29, 1966 IN BOOK 7337 OF OFFICIAL RECORDS, PAGE 232.

Dated: _____10/25/2004_____

Mail Tax Statements To: SAME AS ABOVE

Description: Santa Clara,CA Document - DocID 18081457 Page: 1 of 4
Order: N Comment:

**A.P.N.: 299-18-117**

Grant Deed - continued

**File No.:4312-1637770**
**(CV)**
**Date: 10/25/2004**

Paul M. Nauss

Benjamin M. Nauss and Marilyn K. Nauss, as
trustees of the Nauss Family Living Trust,
dated March 16, 1990 as to an undivided
56% interest all as tenants in Common

*Benjamin M Nauss Trustee*
Benjamin M. Nauss, Trustee

*Marilyn K Nau Trustee*
Marilyn M. Nauss, Trustee
            K.

STATE OF *California*                    }
                                         } ss.
COUNTY OF *Santa Clara*                  }

On *October 28 2004* _____, before
me, *C. Van Dijl* _____, personally
appeared *Benjamin M. Nauss & Marilyn K. Nauss* _____,
personally known to me (or proved to me on the basis of satisfactory evidence) to be the person(s) whose
name(s) is/are subscribed to the within instrument and acknowledged to me that he/she/they executed the same
in his/her/their authorized capacity(ies) and that his/her/their signature(s) on the instrument the person(s) or the
entity upon behalf of which the person(s) acted, executed the instrument.

WITNESS my hand and official seal.

*This area for official
notarial seal*

[notary seal: C. VAN DIJK, Comm. # 1388651, NOTARY PUBLIC-CALIFORNIA, Santa Clara County, My Comm. Expires Aug. 6, 2006]

Signature *C. Van Dijl*

My Commission Expires: *8-6-06*

Notary Name: *C. Van Dijl*
Notary Registration Number: *1388651*

Notary Phone: *408·873·2900*
County of Principal Place of Business: *Santa Clara*

Description: Santa Clara,CA Document - DocID 18081457 Page: 2 of 4
Order: M Comment:

**RECORDING REQUESTED BY**
First American Title Company

**AND WHEN RECORDED MAIL TO:**
Rebekah Victoria Owen

_____ Space Above This Line for Recorder's Use Only _____

A.P.N.: 299-18-117                                      File No.: 4312-1637770 (CV)

# GRANT DEED
# SIGNED IN COUNTERPART

The Undersigned Grantor(s) Declare(s): DOCUMENTARY TRANSFER TAX $ ...; CITY TRANSFER TAX $
SURVEY MONUMENT FEE $

[  x  ]     computed on the consideration or full value of property conveyed, OR

[     ]     computed on the consideration or full value less value of liens and/or encumbrances remaining at time of sale,

[     ]     unincorporated area; [ x ] City of San Jose, and

[  x  ]     _____
            Signature of Declarant

FOR A VALUABLE CONSIDERATION, receipt of which is hereby acknowledged, Paul M. Nauss, an unmarried man who acquired title as Paul M. Nauss, a married man as his sole and separate property and Benjamin M. Nauss and Marilyn K. Nauss, as trustees of the Nauss Family Living Trust, dated March 16, 1990 as to an undivided 56% interest all as tenants in Common

hereby GRANTS to Rebekah Victoria Owen, an unmarried woman

the following described property in the City of San Jose, County of SANTA CLARA, State of California:

LOT 17, AS DELINEATED UPON THAT CERTAIN MAP ENTITLED "TRACT NO. 4131", FILED FOR RECORD IN THE OFFICE OF THE COUNTY OF SANTA CLARA, STATE OF CALIFORNIA, ON FEBRUARY 24TH, 1966 IN BOOK 205 OF MAPS, AT PAGE 42.

EXCEPTING THEREFROM THE UNDERGROUND WATER OR RIGHTS THERETO WITH NO RIGHTS OF SURFACE ENTRY, AS GRANTED TO SAN JOSE WATER WORKS, A CALIFORNIA CORPORATION, BY INSTRUMENT, RECORDED MARCH 29, 1966 IN BOOK 7337 OF OFFICIAL RECORDS, PAGE 232.

Dated:   **10/25/2004** _____

Mail Tax Statements To:  SAME AS ABOVE

_____

Description: Santa Clara, CA Document - DocID 18081457 Page: 3 of 4
Order: M Comment:

A.P.No: 299-18-117          Grant Deed - continued          File No.:4312-1637770
                                                                         (CV)
                                                              Date: 10/25/2004

_Paul M. Nauss_
Paul M. Nauss

Benjamin M. Nauss and Marilyn K. Nauss, as
trustees of the Nauss Family Living Trust,
dated March 16, 1990 as to an undivided
56% interest all as tenants in Common

_____
Benjamin M. Nauss, Trustee

_____
Marilyn M. Nauss, Trustee

STATE OF    Colorado              }
                                  } ss.
COUNTY OF   Larimer               }

On  October 29, 2004 _____, before
me,  LYNN LEAR                                                  personally
appeared  Paul M. Nauss _____
personally known to me (or proved to me on the basis of satisfactory evidence) to be the person(s) whose
name(s) is/are subscribed to the within instrument and acknowledged to me that he/she/they executed the same
in his/her/their authorized capacity(ies) and that his/her/their signature(s) on the instrument the person(s) or the
entity upon behalf of which the person(s) acted, executed the instrument.

WITNESS my hand and official seal.

                                          _This area for official_
                                          _notarial seal_

Signature
                                          ┌─────────────────────────┐
         _Lynn Lear_                      │       LYNN LEAR          │
                                          │    NOTARY PUBLIC         │
_____          │  STATE OF COLORADO       │
My Commission Expires: _02/05/2007_       └─────────────────────────┘
                                          My Commission Expires 02/05/2007

Notary Name: _LYNN LEAR_          Notary Phone: _970-223-4000_
Notary Registration Number:_____  County of Principal Place of Business: _Larimer_

Description: Santa Clara,CA Document - DocID 18081457 Page: 4 of 4
Order: N Comment:

**EXHIBIT 2**

DOCUMENT: 19164224

Pages: 16

Fees.... 54 00
Taxes
Copies..
AMT PAID 54 00

BRENDA DAVIS
SANTA CLARA COUNTY RECORDER
Recorded at the request of
Commonwealth Land Title

RDE # 004
10/31/2006
1:30 PM

*CLE 66211164-602 P64*
After Recording Return To:
FLAGSTAR BANK
5151 CORPORATE DRIVE
TROY, MI 48098
FINAL DOCUMENTS, MAIL STOP W-530-3

Escrow No.: 66211164
V1 WBCD LOAN # 501231839

———————————————— [Space Above This Line For Recording Data] ————————————————

## DEED OF TRUST

MIN 100052550123183997

### DEFINITIONS

Words used in multiple sections of this document are defined below and other words are defined in Sections 3, 11, 13, 18, 20 and 21. Certain rules regarding the usage of words used in this document are also provided in Section 16.

(A) "Security Instrument" means this document, which is dated OCTOBER 23, 2006, together with all Riders to this document.

(B) "Borrower" is ~~An Unmarried Woman As Her Sole & Separate Property~~
Rebekah V. Owen, an unmarried woman

Borrower is the trustor under this Security Instrument.

(C) "Lender" is FLAGSTAR BANK, FSB.

CALIFORNIA--Single Family--Fannie Mae/Freddie Mac UNIFORM INSTRUMENT   Form 3005 1/01
© 1999-2004 Online Documents, Inc.            Page 1 of 12         CAEDEED

Initials: [signature]

CAEDEDL 0402
10-23-2006 14:09

Lender is a **FEDERALLY CHARTERED SAVINGS BANK**
**UNITED STATES OF AMERICA.**
**TROY, MI  48098-2639.**

V1 WBCD LOAN # 501231839
organized and existing under the laws of
Lender's address is 5151 CORPORATE DR,

(D) "Trustee" is **JOAN H. ANDERSON.**

(E) "MERS" is Mortgage Electronic Registration Systems, Inc. MERS is a separate corporation that is acting solely as a nominee for Lender and Lender's successors and assigns. MERS is the beneficiary under this Security Instrument. MERS is organized and existing under the laws of Delaware, and has an address and telephone number of P.O. Box 2026, Flint, MI 48501-2026, tel. (888) 679-MERS.

(F) "Note" means the promissory note signed by Borrower and dated **OCTOBER 23, 2006.**       The Note states that Borrower owes Lender ************************SIX HUNDRED TWENTY THOUSAND AND NO/100 ****************************************************** Dollars (U.S.    $620,000.00    ) plus interest. Borrower has promised to pay this debt in regular Periodic Payments and to pay the debt in full not later than **NOVEMBER 1, 2036.**

(G) "Property" means the property that is described below under the heading "Transfer of Rights in the Property."

(H) "Loan" means the debt evidenced by the Note, plus interest, any prepayment charges and late charges due under the Note, and all sums due under this Security Instrument, plus interest.

(I) "Riders" means all Riders to this Security Instrument that are executed by Borrower. The following Riders are to be executed by Borrower [check box as applicable]:

- [ ] Adjustable Rate Rider
- [ ] Balloon Rider
- [x] 1-4 Family Rider
- [ ] V.A. Rider
- [ ] Condominium Rider
- [ ] Planned Unit Development Rider
- [ ] Biweekly Payment Rider
- [ ] Second Home Rider
- [ ] Other(s) [specify]

(J) "Applicable Law" means all controlling applicable federal, state and local statutes, regulations, ordinances and administrative rules and orders (that have the effect of law) as well as all applicable final, non-appealable judicial opinions.

(K) "Community Association Dues, Fees, and Assessments" means all dues, fees, assessments and other charges that are imposed on Borrower or the Property by a condominium association, homeowners association or similar organization.

(L) "Electronic Funds Transfer" means any transfer of funds, other than a transaction originated by check, draft, or similar paper instrument, which is initiated through an electronic terminal, telephonic instrument, computer, or magnetic tape so as to order, instruct, or authorize a financial institution to debit or credit an account. Such term includes, but is not limited to, point-of-sale transfers, automated teller machine transactions, transfers initiated by telephone, wire transfers, and automated clearinghouse transfers.

(M) "Escrow Items" means those items that are described in Section 3.

(N) "Miscellaneous Proceeds" means any compensation, settlement, award of damages, or proceeds paid by any third party (other than insurance proceeds paid under the coverages described in Section 5) for: (i) damage to, or destruction of, the Property; (ii) condemnation or other taking of all or any part of the Property; (iii) conveyance in lieu of condemnation; or (iv) misrepresentations of, or omissions as to, the value and/or condition of the Property.

(O) "Mortgage Insurance" means insurance protecting Lender against the nonpayment of, or default on, the Loan.

(P) "Periodic Payment" means the regularly scheduled amount due for (i) principal and interest under the Note, plus (ii) any amounts under Section 3 of this Security Instrument.

(Q) "RESPA" means the Real Estate Settlement Procedures Act (12 U.S.C. §2601 et seq.) and its implementing regulation, Regulation X (24 C.F.R. Part 3500), as they might be amended from time to time, or any additional or successor legislation or regulation that governs the same subject matter. As used in this Security Instrument, "RESPA" refers to all requirements and restrictions that are imposed in regard to a "federally related mortgage loan" even if the Loan does not qualify as a "federally related mortgage loan" under RESPA.

(R) "Successor in Interest of Borrower" means any party that has taken title to the Property, whether or not that party has assumed Borrower's obligations under the Note and/or this Security Instrument.

CALIFORNIA--Single Family--Fannie Mae/Freddie Mac UNIFORM INSTRUMENT   Form 3005 1/01
© 1999-2004 Online Documents, Inc.                    Page 2 of 12

Initials: _____
OAEDEDL   0402
10-23-2006 14:09

V1 WBCD LOAN # 501231839

TRANSFER OF RIGHTS IN THE PROPERTY
The beneficiary of this Security Instrument is MERS (solely as nominee for Lender and Lender's successors and assigns) and the successors and assigns of MERS. This Security Instrument secures to Lender: (i) the repayment of the Loan, and all renewals, extensions and modifications of the Note; and (ii) the performance of Borrower's covenants and agreements under this Security Instrument and the Note. For this purpose, Borrower irrevocably grants and conveys to Trustee, in trust, with power of sale, the following described property located in the
COUNTY                                     [Type of Recording Jurisdiction] of SANTA CLARA
[Name of Recording Jurisdiction]:
LEGAL DESCRIPTION ATTACHED HERETO AND MADE A PART HEREOF
APN #: 299-18-117

which currently has the address of 3927 3929 RHODA DRIVE, SAN JOSE,
                                                                                        [Street] [City]

California  95117              ("Property Address"):
            [Zip Code]

    TOGETHER WITH all the improvements now or hereafter erected on the property, and all easements, appurtenances, and fixtures now or hereafter a part of the property. All replacements and additions shall also be covered by this Security Instrument. All of the foregoing is referred to in this Security Instrument as the "Property." Borrower understands and agrees that MERS holds only legal title to the interests granted by Borrower in this Security Instrument, but, if necessary to comply with law or custom, MERS (as nominee for Lender and Lender's successors and assigns) has the right: to exercise any or all of those interests, including, but not limited to, the right to foreclose and sell the Property; and to take any action required of Lender including, but not limited to, releasing and canceling this Security Instrument.

    BORROWER COVENANTS that Borrower is lawfully seised of the estate hereby conveyed and has the right to grant and convey the Property and that the Property is unencumbered, except for encumbrances of record. Borrower warrants and will defend generally the title to the Property against all claims and demands, subject to any encumbrances of record.

    THIS SECURITY INSTRUMENT combines uniform covenants for national use and non-uniform covenants with limited variations by jurisdiction to constitute a uniform security instrument covering real property.

    UNIFORM COVENANTS. Borrower and Lender covenant and agree as follows:
    1.  Payment of Principal, Interest, Escrow Items, Prepayment Charges, and Late Charges. Borrower shall pay when due the principal of, and interest on, the debt evidenced by the Note and any prepayment charges and late charges due under the Note. Borrower shall also pay funds for Escrow Items pursuant to Section 3. Payments due under the Note and this Security Instrument shall be made in U.S. currency. However, if any check or other instrument received by Lender as payment under the Note or this Security Instrument is returned to Lender unpaid, Lender may require that any or all subsequent payments due under the Note and this Security Instrument be made in one or more of the following forms, as selected by Lender: (a) cash; (b) money order; (c) certified check, bank check, treasurer's check or cashier's check, provided any such check is drawn upon an institution whose deposits are insured by a federal agency, instrumentality, or entity; or (d) Electronic Funds Transfer.
    Payments are deemed received by Lender when received at the location designated in the Note or at such other location as may be designated by Lender in accordance with the notice provisions in Section 15. Lender may return any payment or partial payment if the payment or partial payments are insufficient to bring the Loan current. Lender

CALIFORNIA–Single Family–Fannie Mae/Freddie Mac UNIFORM INSTRUMENT    Form 3005 1/01         Initials: _____
© 1999-2004 Online Documents, Inc.                          Page 3 of 12                                  CAEDEDL  0402
                                                                                                         10-23-2006 14:09

V1 WBCD LOAN # 501231839

may accept any payment or partial payment insufficient to bring the Loan current, without waiver of any rights hereunder or prejudice to its rights to refuse such payment or partial payments in the future, but Lender is not obligated to apply such payments at the time such payments are accepted. If each Periodic Payment is applied as of its scheduled due date, then Lender need not pay interest on unapplied funds. Lender may hold such unapplied funds until Borrower makes payment to bring the Loan current. If Borrower does not do so within a reasonable period of time, Lender shall either apply such funds or return them to Borrower. If not applied earlier, such funds will be applied to the outstanding principal balance under the Note immediately prior to foreclosure. No offset or claim which Borrower might have now or in the future against Lender shall relieve Borrower from making payments due under the Note and this Security Instrument or performing the covenants and agreements secured by this Security Instrument.

2. **Application of Payments or Proceeds.** Except as otherwise described in this Section 2, all payments accepted and applied by Lender shall be applied in the following order of priority: (a) interest due under the Note; (b) principal due under the Note; (c) amounts due under Section 3. Such payments shall be applied to each Periodic Payment in the order in which it became due. Any remaining amounts shall be applied first to late charges, second to any other amounts due under this Security Instrument, and then to reduce the principal balance of the Note.

If Lender receives a payment from Borrower for a delinquent Periodic Payment which includes a sufficient amount to pay any late charge due, the payment may be applied to the delinquent payment and the late charge. If more than one Periodic Payment is outstanding, Lender may apply any payment received from Borrower to the repayment of the Periodic Payments if, and to the extent that, each payment can be paid in full. To the extent that any excess exists after the payment is applied to the full payment of one or more Periodic Payments, such excess may be applied to any late charges due. Voluntary prepayments shall be applied first to any prepayment charges and then as described in the Note.

Any application of payments, insurance proceeds, or Miscellaneous Proceeds to principal due under the Note shall not extend or postpone the due date, or change the amount, of the Periodic Payments.

3. **Funds for Escrow Items.** Borrower shall pay to Lender on the day Periodic Payments are due under the Note, until the Note is paid in full, a sum (the "Funds") to provide for payment of amounts due for: (a) taxes and assessments and other items which can attain priority over this Security Instrument as a lien or encumbrance on the Property; (b) leasehold payments or ground rents on the Property, if any; (c) premiums for any and all insurance required by Lender under Section 5; and (d) Mortgage Insurance premiums, if any, or any sums payable by Borrower to Lender in lieu of the payment of Mortgage Insurance premiums in accordance with the provisions of Section 10. These items are called "Escrow Items." At origination or at any time during the term of the Loan, Lender may require that Community Association Dues, Fees, and Assessments, if any, be escrowed by Borrower, and such dues, fees and assessments shall be an Escrow Item. Borrower shall promptly furnish to Lender all notices of amounts to be paid under this Section. Borrower shall pay Lender the Funds for Escrow Items unless Lender waives Borrower's obligation to pay the Funds for any or all Escrow Items. Lender may waive Borrower's obligation to pay to Lender Funds for any or all Escrow Items at any time. Any such waiver may only be in writing. In the event of such waiver, Borrower shall pay directly, when and where payable, the amounts due for any Escrow Items for which payment of Funds has been waived by Lender and, if Lender requires, shall furnish to Lender receipts evidencing such payment within such time period as Lender may require. Borrower's obligation to make such payments and to provide receipts shall for all purposes be deemed to be a covenant and agreement contained in this Security Instrument, as the phrase "covenant and agreement" is used in Section 9. If Borrower is obligated to pay Escrow Items directly, pursuant to a waiver, and Borrower fails to pay the amount due for an Escrow Item, Lender may exercise its rights under Section 9 and pay such amount and Borrower shall then be obligated under Section 9 to repay to Lender any such amount. Lender may revoke the waiver as to any or all Escrow Items at any time by a notice given in accordance with Section 15 and, upon such revocation, Borrower shall pay to Lender all Funds, and in such amounts, that are then required under this Section 3.

Lender may, at any time, collect and hold Funds in an amount (a) sufficient to permit Lender to apply the Funds at the time specified under RESPA, and (b) not to exceed the maximum amount a lender can require under RESPA. Lender shall estimate the amount of Funds due on the basis of current data and reasonable estimates of expenditures of future Escrow Items or otherwise in accordance with Applicable Law.

The Funds shall be held in an institution whose deposits are insured by a federal agency, instrumentality, or entity (including Lender, if Lender is an institution whose deposits are so insured) or in any Federal Home Loan Bank. Lender shall apply the Funds to pay the Escrow Items no later than the time specified under RESPA. Lender shall not charge Borrower for holding and applying the Funds, annually analyzing the escrow account, or verifying the Escrow Items, unless Lender pays Borrower interest on the Funds and Applicable Law permits Lender to make such a charge. Unless an agreement is made in writing or Applicable Law requires interest to be paid on the Funds, Lender shall not be required to pay Borrower

CALIFORNIA--Single Family--Fannie Mae/Freddie Mac UNIFORM INSTRUMENT   Form 3005 1/01
© 1999-2004 Online Documents, Inc.                    Page 4 of 12

Initials: _____
CAEDEDL   0402
10-23-2006  14:09

V1 WBCD LOAN # 501231839

any interest or earnings on the Funds. Borrower and Lender can agree in writing, however, that interest shall be paid on the Funds. Lender shall give to Borrower, without charge, an annual accounting of the Funds as required by RESPA.

If there is a surplus of Funds held in escrow, as defined under RESPA, Lender shall account to Borrower for the excess funds in accordance with RESPA. If there is a shortage of Funds held in escrow, as defined under RESPA, Lender shall notify Borrower as required by RESPA, and Borrower shall pay to Lender the amount necessary to make up the shortage in accordance with RESPA, but in no more than 12 monthly payments. If there is a deficiency of Funds held in escrow, as defined under RESPA, Lender shall notify Borrower as required by RESPA, and Borrower shall pay to Lender the amount necessary to make up the deficiency in accordance with RESPA, but in no more than 12 monthly payments.

Upon payment in full of all sums secured by this Security Instrument, Lender shall promptly refund to Borrower any Funds held by Lender.

4.   **Charges; Liens.** Borrower shall pay all taxes, assessments, charges, fines, and impositions attributable to the Property which can attain priority over this Security Instrument, leasehold payments or ground rents on the Property, if any, and Community Association Dues, Fees, and Assessments, if any. To the extent that these items are Escrow Items, Borrower shall pay them in the manner provided in Section 3.

Borrower shall promptly discharge any lien which has priority over this Security Instrument unless Borrower: (a) agrees in writing to the payment of the obligation secured by the lien in a manner acceptable to Lender, but only so long as Borrower is performing such agreement; (b) contests the lien in good faith by, or defends against enforcement of the lien in, legal proceedings which in Lender's opinion operate to prevent the enforcement of the lien while those proceedings are pending, but only until such proceedings are concluded; or (c) secures from the holder of the lien an agreement satisfactory to Lender subordinating the lien to this Security Instrument. If Lender determines that any part of the Property is subject to a lien which can attain priority over this Security Instrument, Lender may give Borrower a notice identifying the lien. Within 10 days of the date on which that notice is given, Borrower shall satisfy the lien or take one or more of the actions set forth above in this Section 4.

Lender may require Borrower to pay a one-time charge for a real estate tax verification and/or reporting service used by Lender in connection with this Loan.

5.   **Property Insurance.** Borrower shall keep the improvements now existing or hereafter erected on the Property insured against loss by fire, hazards included within the term "extended coverage," and any other hazards including, but not limited to, earthquakes and floods, for which Lender requires insurance. This insurance shall be maintained in the amounts (including deductible levels) and for the periods that Lender requires. What Lender requires pursuant to the preceding sentences can change during the term of the Loan. The insurance carrier providing the insurance shall be chosen by Borrower subject to Lender's right to disapprove Borrower's choice, which right shall not be exercised unreasonably. Lender may require Borrower to pay, in connection with this Loan, either: (a) a one-time charge for flood zone determination, certification and tracking services; or (b) a one-time charge for flood zone determination and certification services and subsequent charges each time remappings or similar changes occur which reasonably might affect such determination or certification. Borrower shall also be responsible for the payment of any fees imposed by the Federal Emergency Management Agency in connection with the review of any flood zone determination resulting from an objection by Borrower.

If Borrower fails to maintain any of the coverages described above, Lender may obtain insurance coverage, at Lender's option and Borrower's expense. Lender is under no obligation to purchase any particular type or amount of coverage. Therefore, such coverage shall cover Lender, but might or might not protect Borrower, Borrower's equity in the Property, or the contents of the Property, against any risk, hazard or liability and might provide greater or lesser coverage than was previously in effect. Borrower acknowledges that the cost of the insurance coverage so obtained might significantly exceed the cost of insurance that Borrower could have obtained. Any amounts disbursed by Lender under this Section 5 shall become additional debt of Borrower secured by this Security Instrument. These amounts shall bear interest at the Note rate from the date of disbursement and shall be payable, with such interest, upon notice from Lender to Borrower requesting payment.

All insurance policies required by Lender and renewals of such policies shall be subject to Lender's right to disapprove such policies, shall include a standard mortgage clause, and shall name Lender as mortgagee and/or as an additional loss payee and Borrower further agrees to generally assign rights to insurance proceeds to the holder of the Note up to the amount of the outstanding loan balance. Lender shall have the right to hold the policies and renewal certificates. If Lender requires, Borrower shall promptly give to Lender all receipts of paid premiums and renewal notices. If Borrower obtains any form of insurance coverage, not otherwise required by Lender, for damage to, or destruction of, the Property, such policy shall include a standard mortgage clause and shall name Lender as mortgagee and/or as an additional loss payee and Borrower further agrees to generally assign rights to insurance proceeds to the holder of the Note up to the amount of the outstanding loan balance.

CALIFORNIA--Single Family--Fannie Mae/Freddie Mac UNIFORM INSTRUMENT    Form 3005 1/01
© 1999-2004 Online Documents, Inc.                    Page 5 of 12

Initials: [signature]
CAEDEDL  0402
10-23-2006 14:09

V1 WBCD LOAN # 501231839

In the event of loss, Borrower shall give prompt notice to the insurance carrier and Lender. Lender may make proof of loss if not made promptly by Borrower. Unless Lender and Borrower otherwise agree in writing, any insurance proceeds, whether or not the underlying insurance was required by Lender, shall be applied to restoration or repair of the Property, if the restoration or repair is economically feasible and Lender's security is not lessened. During such repair and restoration period, Lender shall have the right to hold such insurance proceeds until Lender has had an opportunity to inspect such Property to ensure the work has been completed to Lender's satisfaction, provided that such inspection shall be undertaken promptly. Lender may disburse proceeds for the repairs and restoration in a single payment or in a series of progress payments as the work is completed. Unless an agreement is made in writing or Applicable Law requires interest to be paid on such insurance proceeds, Lender shall not be required to pay Borrower any interest or earnings on such proceeds. Fees for public adjusters, or other third parties, retained by Borrower shall not be paid out of the insurance proceeds and shall be the sole obligation of Borrower. If the restoration or repair is not economically feasible or Lender's security would be lessened, the insurance proceeds shall be applied to the sums secured by this Security Instrument, whether or not then due, with the excess, if any, paid to Borrower. Such insurance proceeds shall be applied in the order provided for in Section 2.

If Borrower abandons the Property, Lender may file, negotiate and settle any available insurance claim and related matters. If Borrower does not respond within 30 days to a notice from Lender that the insurance carrier has offered to settle a claim, then Lender may negotiate and settle the claim. The 30-day period will begin when the notice is given. In either event, or if Lender acquires the Property under Section 22 or otherwise, Borrower hereby assigns to Lender (a) Borrower's rights to any insurance proceeds in an amount not to exceed the amounts unpaid under the Note or this Security Instrument, and (b) any other of Borrower's rights (other than the right to any refund of unearned premiums paid by Borrower) under all insurance policies covering the Property, insofar as such rights are applicable to the coverage of the Property. Lender may use the insurance proceeds either to repair or restore the Property or to pay amounts unpaid under the Note or this Security Instrument, whether or not then due.

6. **Occupancy.** Borrower shall occupy, establish, and use the Property as Borrower's principal residence within 60 days after the execution of this Security Instrument and shall continue to occupy the Property as Borrower's principal residence for at least one year after the date of occupancy, unless Lender otherwise agrees in writing, which consent shall not be unreasonably withheld, or unless extenuating circumstances exist which are beyond Borrower's control.

7. **Preservation, Maintenance and Protection of the Property; Inspections.** Borrower shall not destroy, damage or impair the Property, allow the Property to deteriorate or commit waste on the Property. Whether or not Borrower is residing in the Property, Borrower shall maintain the Property in order to prevent the Property from deteriorating or decreasing in value due to its condition. Unless it is determined pursuant to Section 5 that repair or restoration is not economically feasible, Borrower shall promptly repair the Property if damaged to avoid further deterioration or damage. If insurance or condemnation proceeds are paid in connection with damage to, or the taking of, the Property, Borrower shall be responsible for repairing or restoring the Property only if Lender has released proceeds for such purposes. Lender may disburse proceeds for the repairs and restoration in a single payment or in a series of progress payments as the work is completed. If the insurance or condemnation proceeds are not sufficient to repair or restore the Property, Borrower is not relieved of Borrower's obligation for the completion of such repair or restoration.

Lender or its agent may make reasonable entries upon and inspections of the Property. If it has reasonable cause, Lender may inspect the interior of the improvements on the Property. Lender shall give Borrower notice at the time of or prior to such an interior inspection specifying such reasonable cause.

8. **Borrower's Loan Application.** Borrower shall be in default if, during the Loan application process, Borrower or any persons or entities acting at the direction of Borrower or with Borrower's knowledge or consent gave materially false, misleading, or inaccurate information or statements to Lender (or failed to provide Lender with material information) in connection with the Loan. Material representations include, but are not limited to, representations concerning Borrower's occupancy of the Property as Borrower's principal residence.

9. **Protection of Lender's Interest in the Property and Rights Under this Security Instrument.** If (a) Borrower fails to perform the covenants and agreements contained in this Security Instrument, (b) there is a legal proceeding that might significantly affect Lender's interest in the Property and/or rights under this Security Instrument (such as a proceeding in bankruptcy, probate, for condemnation or forfeiture, for enforcement of a lien which may attain priority over this Security Instrument or to enforce laws or regulations), or (c) Borrower has abandoned the Property, then Lender may do and pay for whatever is reasonable or appropriate to protect Lender's interest in the Property and rights under this Security Instrument, including protecting and/or assessing the value of the Property, and securing and/or repairing the Property. Lender's actions can include, but are not limited to: (a) paying any sums secured by a lien which has priority over this Security Instrument; (b) appearing in court; and (c) paying reasonable attorneys' fees to protect

CALIFORNIA--Single Family--Fannie Mae/Freddie Mac UNIFORM INSTRUMENT    Form 3005 1/01
© 1999-2004 Online Documents, Inc.                                       Page 6 of 12

Initials:

CAEDEDL  0402
10-23-2006 14:09

V1 WBCD LOAN # 501231839

its interest in the Property and/or rights under this Security Instrument, including its secured position in a bankruptcy proceeding. Securing the Property includes, but is not limited to, entering the Property to make repairs, change locks, replace or board up doors and windows, drain water from pipes, eliminate building or other code violations or dangerous conditions, and have utilities turned on or off. Although Lender may take action under this Section 9, Lender does not have to do so and is not under any duty or obligation to do so. It is agreed that Lender incurs no liability for not taking any or all actions authorized under this Section 9.

Any amounts disbursed by Lender under this Section 9 shall become additional debt of Borrower secured by this Security Instrument. These amounts shall bear interest at the Note rate from the date of disbursement and shall be payable, with such interest, upon notice from Lender to Borrower requesting payment.

If this Security Instrument is on a leasehold, Borrower shall comply with all the provisions of the lease. Borrower shall not surrender the leasehold estate and interests herein conveyed or terminate or cancel the ground lease. Borrower shall not, without the express written consent of Lender, alter or amend the ground lease. If Borrower acquires fee title to the Property, the leasehold and the fee title shall not merge unless Lender agrees to the merger in writing.

10. **Mortgage Insurance.** If Lender required Mortgage Insurance as a condition of making the Loan, Borrower shall pay the premiums required to maintain the Mortgage Insurance in effect. If, for any reason, the Mortgage Insurance coverage required by Lender ceases to be available from the mortgage insurer that previously provided such insurance and Borrower was required to make separately designated payments toward the premiums for Mortgage Insurance, Borrower shall pay the premiums required to obtain coverage substantially equivalent to the Mortgage Insurance previously in effect, at a cost substantially equivalent to the cost to Borrower of the Mortgage Insurance previously in effect, from an alternate mortgage insurer selected by Lender. If substantially equivalent Mortgage Insurance coverage is not available, Borrower shall continue to pay to Lender the amount of the separately designated payments that were due when the insurance coverage ceased to be in effect. Lender will accept, use and retain these payments as a non-refundable loss reserve in lieu of Mortgage Insurance. Such loss reserve shall be non-refundable, notwithstanding the fact that the Loan is ultimately paid in full, and Lender shall not be required to pay Borrower any interest or earnings on such loss reserve. Lender can no longer require loss reserve payments if Mortgage Insurance coverage (in the amount and for the period that Lender requires) provided by an insurer selected by Lender again becomes available, is obtained, and Lender requires separately designated payments toward the premiums for Mortgage Insurance. If Lender required Mortgage Insurance as a condition of making the Loan and Borrower was required to make separately designated payments toward the premiums for Mortgage Insurance, Borrower shall pay the premiums required to maintain Mortgage Insurance in effect, or to provide a non-refundable loss reserve, until Lender's requirement for Mortgage Insurance ends in accordance with any written agreement between Borrower and Lender providing for such termination or until termination is required by Applicable Law. Nothing in this Section 10 affects Borrower's obligation to pay interest at the rate provided in the Note.

Mortgage Insurance reimburses Lender (or any entity that purchases the Note) for certain losses it may incur if Borrower does not repay the Loan as agreed. Borrower is not a party to the Mortgage Insurance.

Mortgage insurers evaluate their total risk on all such insurance in force from time to time, and may enter into agreements with other parties that share or modify their risk, or reduce losses. These agreements are on terms and conditions that are satisfactory to the mortgage insurer and the other party (or parties) to these agreements. These agreements may require the mortgage insurer to make payments using any source of funds that the mortgage insurer may have available (which may include funds obtained from Mortgage Insurance premiums).

As a result of these agreements, Lender, any purchaser of the Note, another insurer, any reinsurer, any other entity, or any affiliate of any of the foregoing, may receive (directly or indirectly) amounts that derive from (or might be characterized as) a portion of Borrower's payments for Mortgage Insurance, in exchange for sharing or modifying the mortgage insurer's risk, or reducing losses. If such agreement provides that an affiliate of Lender takes a share of the insurer's risk in exchange for a share of the premiums paid to the insurer, the arrangement is often termed "captive reinsurance." Further:

(a) Any such agreements will not affect the amounts that Borrower has agreed to pay for Mortgage Insurance, or any other terms of the Loan. Such agreements will not increase the amount Borrower will owe for Mortgage Insurance, and they will not entitle Borrower to any refund.

(b) Any such agreements will not affect the rights Borrower has - if any - with respect to the Mortgage Insurance under the Homeowners Protection Act of 1998 or any other law. These rights may include the right to receive certain disclosures, to request and obtain cancellation of the Mortgage Insurance, to have the Mortgage Insurance terminated automatically, and/or to receive a refund of any Mortgage Insurance premiums that were unearned at the time of such cancellation or termination.

11. **Assignment of Miscellaneous Proceeds; Forfeiture.** All Miscellaneous Proceeds are hereby assigned to and shall be paid to Lender.

CALIFORNIA–Single Family–Fannie Mae/Freddie Mac UNIFORM INSTRUMENT     Form 3005 1/01
© 1999-2004 Online Documents, Inc.     Page 7 of 12

Initials: _____
CAEDEDL  0402
10-23-2006 14:09

V1 WBCD LOAN # 501231839

If the Property is damaged, such Miscellaneous Proceeds shall be applied to restoration or repair of the Property, if the restoration or repair is economically feasible and Lender's security is not lessened. During such repair and restoration period, Lender shall have the right to hold such Miscellaneous Proceeds until Lender has had an opportunity to inspect such Property to ensure the work has been completed to Lender's satisfaction, provided that such inspection shall be undertaken promptly. Lender may pay for the repairs and restoration in a single disbursement or in a series of progress payments as the work is completed. Unless an agreement is made in writing or Applicable Law requires interest to be paid on such Miscellaneous Proceeds, Lender shall not be required to pay Borrower any interest or earnings on such Miscellaneous Proceeds. If the restoration or repair is not economically feasible or Lender's security would be lessened, the Miscellaneous Proceeds shall be applied to the sums secured by this Security Instrument, whether or not then due, with the excess, if any, paid to Borrower. Such Miscellaneous Proceeds shall be applied in the order provided for in Section 2.

In the event of a total taking, destruction, or loss in value of the Property, the Miscellaneous Proceeds shall be applied to the sums secured by this Security Instrument, whether or not then due, with the excess, if any, paid to Borrower.

In the event of a partial taking, destruction, or loss in value of the Property in which the fair market value of the Property immediately before the partial taking, destruction, or loss in value is equal to or greater than the amount of the sums secured by this Security Instrument immediately before the partial taking, destruction, or loss in value, unless Borrower and Lender otherwise agree in writing, the sums secured by this Security Instrument shall be reduced by the amount of the Miscellaneous Proceeds multiplied by the following fraction: (a) the total amount of the sums secured immediately before the partial taking, destruction, or loss in value divided by (b) the fair market value of the Property immediately before the partial taking, destruction, or loss in value. Any balance shall be paid to Borrower.

In the event of a partial taking, destruction, or loss in value of the Property in which the fair market value of the Property immediately before the partial taking, destruction, or loss in value is less than the amount of the sums secured immediately before the partial taking, destruction, or loss in value, unless Borrower and Lender otherwise agree in writing, the Miscellaneous Proceeds shall be applied to the sums secured by this Security Instrument whether or not the sums are then due.

If the Property is abandoned by Borrower, or if, after notice by Lender to Borrower that the Opposing Party (as defined in the next sentence) offers to make an award to settle a claim for damages, Borrower fails to respond to Lender within 30 days after the date the notice is given, Lender is authorized to collect and apply the Miscellaneous Proceeds either to restoration or repair of the Property or to the sums secured by this Security Instrument, whether or not then due. "Opposing Party" means the third party that owes Borrower Miscellaneous Proceeds or the party against whom Borrower has a right of action in regard to Miscellaneous Proceeds.

Borrower shall be in default if any action or proceeding, whether civil or criminal, is begun that, in Lender's judgment, could result in forfeiture of the Property or other material impairment of Lender's interest in the Property or rights under this Security Instrument. Borrower can cure such a default and, if acceleration has occurred, reinstate as provided in Section 19, by causing the action or proceeding to be dismissed with a ruling that, in Lender's judgment, precludes forfeiture of the Property or other material impairment of Lender's interest in the Property or rights under this Security Instrument. The proceeds of any award or claim for damages that are attributable to the impairment of Lender's interest in the Property are hereby assigned and shall be paid to Lender.

All Miscellaneous Proceeds that are not applied to restoration or repair of the Property shall be applied in the order provided for in Section 2.

**12. Borrower Not Released; Forbearance By Lender Not a Waiver.** Extension of the time for payment or modification of amortization of the sums secured by this Security Instrument granted by Lender to Borrower or any Successor in Interest of Borrower shall not operate to release the liability of Borrower or any Successors in Interest of Borrower. Lender shall not be required to commence proceedings against any Successor in Interest of Borrower or to refuse to extend time for payment or otherwise modify amortization of the sums secured by this Security Instrument by reason of any demand made by the original Borrower or any Successors in Interest of Borrower. Any forbearance by Lender in exercising any right or remedy including, without limitation, Lender's acceptance of payments from third persons, entities or Successors in Interest of Borrower or in amounts less than the amount then due, shall not be a waiver of or preclude the exercise of any right or remedy.

**13. Joint and Several Liability; Co-signers; Successors and Assigns Bound.** Borrower covenants and agrees that Borrower's obligations and liability shall be joint and several. However, any Borrower who co-signs this Security Instrument but does not execute the Note (a "co-signer"): (a) is co-signing this Security Instrument only to mortgage, grant and convey the co-signer's interest in the Property under the terms of this Security Instrument; (b) is not personally obligated to pay the sums secured by this Security Instrument; and (c) agrees that Lender and any other Borrower can

CALIFORNIA--Single Family--Fannie Mae/Freddie Mac UNIFORM INSTRUMENT   Form 3005 1/01
© 1999-2004 Online Documents, Inc.                          Page 8 of 12

Initials: [handwritten]
CAEDEDL  0402
10-23-2006 14:09

V1 WBCD LOAN # 501231839

agree to extend, modify, forbear or make any accommodations with regard to the terms of this Security Instrument or the Note without the co-signer's consent.

Subject to the provisions of Section 18, any Successor in Interest of Borrower who assumes Borrower's obligations under this Security Instrument in writing, and is approved by Lender, shall obtain all of Borrower's rights and benefits under this Security Instrument.Borrower shall not be released from Borrower's obligations and liability under this Security Instrument unless Lender agrees to such release in writing. The covenants and agreements of this Security Instrument shall bind (except as provided in Section 20) and benefit the successors and assigns of Lender.

14. **Loan Charges.** Lender may charge Borrower fees for services performed in connection with Borrower's default, for the purpose of protecting Lender's interest in the Property and rights under this Security Instrument, including, but not limited to, attorneys' fees, property inspection and valuation fees. In regard to any other fees, the absence of express authority in this Security Instrument to charge a specific fee to Borrower shall not be construed as a prohibition on the charging of such fee. Lender may not charge fees that are expressly prohibited by this Security Instrument or by Applicable Law.

If the Loan is subject to a law which sets maximum loan charges, and that law is finally interpreted so that the interest or other loan charges collected or to be collected in connection with the Loan exceed the permitted limits, then: (a) any such loan charge shall be reduced by the amount necessary to reduce the charge to the permitted limit; and (b) any sums already collected from Borrower which exceeded permitted limits will be refunded to Borrower. Lender may choose to make this refund by reducing the principal owed under the Note or by making a direct payment to Borrower. If a refund reduces principal, the reduction will be treated as a partial prepayment without any prepayment charge (whether or not a prepayment charge is provided for under the Note). Borrower's acceptance of any such refund made by direct payment to Borrower will constitute a waiver of any right of action Borrower might have arising out of such overcharge.

15. **Notices.** All notices given by Borrower or Lender in connection with this Security Instrument must be in writing. Any notice to Borrower in connection with this Security Instrument shall be deemed to have been given to Borrower when mailed by first class mail or when actually delivered to Borrower's notice address if sent by other means. Notice to any one Borrower shall constitute notice to all Borrowers unless Applicable Law expressly requires otherwise. The notice address shall be the Property Address unless Borrower has designated a substitute notice address by notice to Lender. Borrower shall promptly notify Lender of Borrower's change of address. If Lender specifies a procedure for reporting Borrower's change of address, then Borrower shall only report a change of address through that specified procedure. There may be only one designated notice address under this Security Instrument at any one time. Any notice to Lender shall be given by delivering it or by mailing it by first class mail to Lender's address stated herein unless Lender has designated another address by notice to Borrower. Any notice in connection with this Security Instrument shall not be deemed to have been given to Lender until actually received by Lender. If any notice required by this Security Instrument is also required under Applicable Law, the Applicable Law requirement will satisfy the corresponding requirement under this Security Instrument.

16. **Governing Law; Severability; Rules of Construction.** This Security Instrument shall be governed by federal law and the law of the jurisdiction in which the Property is located. All rights and obligations contained in this Security Instrument are subject to any requirements and limitations of Applicable Law. Applicable Law might explicitly or implicitly allow the parties to agree by contract or it might be silent, but such silence shall not be construed as a prohibition against agreement by contract. In the event that any provision or clause of this Security Instrument or the Note conflicts with Applicable Law, such conflict shall not affect other provisions of this Security Instrument or the Note which can be given effect without the conflicting provision.

As used in this Security Instrument: (a) words of the masculine gender shall mean and include corresponding neuter words or words of the feminine gender; (b) words in the singular shall mean and include the plural and vice versa; and (c) the word "may" gives sole discretion without any obligation to take any action.

17. **Borrower's Copy.** Borrower shall be given one copy of the Note and of this Security Instrument.

18. **Transfer of the Property or a Beneficial Interest in Borrower.** As used in this Section 18, "Interest in the Property" means any legal or beneficial interest in the Property, including, but not limited to, those beneficial interests transferred in a bond for deed, contract for deed, installment sales contract or escrow agreement, the intent of which is the transfer of title by Borrower at a future date to a purchaser.

If all or any part of the Property or any Interest in the Property is sold or transferred (or if Borrower is not a natural person and a beneficial interest in Borrower is sold or transferred) without Lender's prior written consent, Lender may require immediate payment in full of all sums secured by this Security Instrument. However, this option shall not be exercised by Lender if such exercise is prohibited by Applicable Law.

If Lender exercises this option, Lender shall give Borrower notice of acceleration. The notice shall provide a period of not less than 30 days from the date the notice is given in accordance with Section 15 within which Borrower must pay

CALIFORNIA--Single Family--Fannie Mae/Freddie Mac UNIFORM INSTRUMENT   Form 3005 1/01
© 1999-2004 Online Documents, Inc.                                           Page 9 of 12

Initials: [handwritten initials]
CAEDEDL  0402
10-23-2006 14:09

V1 WBCD LOAN # 501231839

all sums secured by this Security Instrument. If Borrower fails to pay these sums prior to the expiration of this period, Lender may invoke any remedies permitted by this Security Instrument without further notice or demand on Borrower.

19. Borrower's Right to Reinstate After Acceleration. If Borrower meets certain conditions, Borrower shall have the right to have enforcement of this Security Instrument discontinued at any time prior to the earliest of: (a) five days before sale of the Property pursuant to any power of sale contained in this Security Instrument; (b) such other period as Applicable Law might specify for the termination of Borrower's right to reinstate; or (c) entry of a judgment enforcing this Security Instrument. Those conditions are that Borrower: (a) pays Lender all sums which then would be due under this Security Instrument and the Note as if no acceleration had occurred; (b) cures any default of any other covenants or agreements; (c) pays all expenses incurred in enforcing this Security Instrument, including, but not limited to, reasonable attorneys' fees, property inspection and valuation fees, and other fees incurred for the purpose of protecting Lender's interest in the Property and rights under this Security Instrument; and (d) takes such action as Lender may reasonably require to assure that Lender's interest in the Property and rights under this Security Instrument, and Borrower's obligation to pay the sums secured by this Security Instrument, shall continue unchanged. Lender may require that Borrower pay such reinstatement sums and expenses in one or more of the following forms, as selected by Lender: (a) cash; (b) money order; (c) certified check, bank check, treasurer's check or cashier's check, provided any such check is drawn upon an institution whose deposits are insured by a federal agency, instrumentality or entity; or (d) Electronic Funds Transfer. Upon reinstatement by Borrower, this Security Instrument and obligations secured hereby shall remain fully effective as if no acceleration had occurred. However, this right to reinstate shall not apply in the case of acceleration under Section 18.

20. Sale of Note; Change of Loan Servicer; Notice of Grievance. The Note or a partial interest in the Note (together with this Security Instrument) can be sold one or more times without prior notice to Borrower. A sale might result in a change in the entity (known as the "Loan Servicer") that collects Periodic Payments due under the Note and this Security Instrument and performs other mortgage loan servicing obligations under the Note, this Security Instrument, and Applicable Law. There also might be one or more changes of the Loan Servicer unrelated to a sale of the Note. If there is a change of the Loan Servicer, Borrower will be given written notice of the change which will state the name and address of the new Loan Servicer, the address to which payments should be made and any other information RESPA requires in connection with a notice of transfer of servicing. If the Note is sold and thereafter the Loan is serviced by a Loan Servicer other than the purchaser of the Note, the mortgage loan servicing obligations to Borrower will remain with the Loan Servicer or be transferred to a successor Loan Servicer and are not assumed by the Note purchaser unless otherwise provided by the Note purchaser.

Neither Borrower nor Lender may commence, join, or be joined to any judicial action (as either an individual litigant or the member of a class) that arises from the other party's actions pursuant to this Security Instrument or that alleges that the other party has breached any provision of, or any duty owed by reason of, this Security Instrument, until such Borrower or Lender has notified the other party (with such notice given in compliance with the requirements of Section 15) of such alleged breach and afforded the other party hereto a reasonable period after the giving of such notice to take corrective action. If Applicable Law provides a time period which must elapse before certain action can be taken, that time period will be deemed to be reasonable for purposes of this paragraph. The notice of acceleration and opportunity to cure given to Borrower pursuant to Section 22 and the notice of acceleration given to Borrower pursuant to Section 18 shall be deemed to satisfy the notice and opportunity to take corrective action provisions of this Section 20.

21. Hazardous Substances. As used in this Section 21: (a) "Hazardous Substances" are those substances defined as toxic or hazardous substances, pollutants, or wastes by Environmental Law and the following substances: gasoline, kerosene, other flammable or toxic petroleum products, toxic pesticides and herbicides, volatile solvents, materials containing asbestos or formaldehyde, and radioactive materials; (b) "Environmental Law" means federal laws and laws of the jurisdiction where the Property is located that relate to health, safety or environmental protection; (c) "Environmental Cleanup" includes any response action, remedial action, or removal action, as defined in Environmental Law; and (d) an "Environmental Condition" means a condition that can cause, contribute to, or otherwise trigger an Environmental Cleanup.

Borrower shall not cause or permit the presence, use, disposal, storage, or release of any Hazardous Substances, or threaten to release any Hazardous Substances, on or in the Property. Borrower shall not do, nor allow anyone else to do, anything affecting the Property (a) that is in violation of any Environmental Law, (b) which creates an Environmental Condition, or (c) which, due to the presence, use, or release of a Hazardous Substance, creates a condition that adversely affects the value of the Property. The preceding two sentences shall not apply to the presence, use, or storage on the Property of small quantities of Hazardous Substances that are generally recognized to be appropriate to normal residential uses and to maintenance of the Property (including, but not limited to, hazardous substances in consumer products).

CALIFORNIA--Single Family--Fannie Mae/Freddie Mac UNIFORM INSTRUMENT   Form 3005 1/01
© 1999-2004 Online Documents, Inc.   Page 10 of 12

Initials: _____
CAEDEDL  0402
10-23-2006 14:09

V1 WBCD LOAN # 501231839

Borrower shall promptly give Lender written notice of (a) any investigation, claim, demand, lawsuit or other action by any governmental or regulatory agency or private party involving the Property and any Hazardous Substance or Environmental Law of which Borrower has actual knowledge, (b) any Environmental Condition, including but not limited to, any spilling, leaking, discharge, release or threat of release of any Hazardous Substance, and (c) any condition caused by the presence, use or release of a Hazardous Substance which adversely affects the value of the Property. If Borrower learns, or is notified by any governmental or regulatory authority, or any private party, that any removal or other remediation of any Hazardous Substance affecting the Property is necessary, Borrower shall promptly take all necessary remedial actions in accordance with Environmental Law. Nothing herein shall create any obligation on Lender for an Environmental Cleanup.

NON-UNIFORM COVENANTS. Borrower and Lender further covenant and agree as follows:

22. Acceleration; Remedies. Lender shall give notice to Borrower prior to acceleration following Borrower's breach of any covenant or agreement in this Security Instrument (but not prior to acceleration under Section 18 unless Applicable Law provides otherwise). The notice shall specify: (a) the default; (b) the action required to cure the default; (c) a date, not less than 30 days from the date the notice is given to Borrower, by which the default must be cured; and (d) that failure to cure the default on or before the date specified in the notice may result in acceleration of the sums secured by this Security Instrument and sale of the Property. The notice shall further inform Borrower of the right to reinstate after acceleration and the right to bring a court action to assert the non-existence of a default or any other defense of Borrower to acceleration and sale. If the default is not cured on or before the date specified in the notice, Lender at its option may require immediate payment in full of all sums secured by this Security Instrument without further demand and may invoke the power of sale and any other remedies permitted by Applicable Law. Lender shall be entitled to collect all expenses incurred in pursuing the remedies provided in this Section 22, including, but not limited to, reasonable attorneys' fees and costs of title evidence.

If Lender invokes the power of sale, Lender shall execute or cause Trustee to execute a written notice of the occurrence of an event of default and of Lender's election to cause the Property to be sold. Trustee shall cause this notice to be recorded in each county in which any part of the Property is located. Lender or Trustee shall mail copies of the notice as prescribed by Applicable Law to Borrower and to the other persons prescribed by Applicable Law. Trustee shall give public notice of sale to the persons and in the manner prescribed by Applicable Law. After the time required by Applicable Law, Trustee, without demand on Borrower, shall sell the Property at public auction to the highest bidder at the time and place and under the terms designated in the notice of sale in one or more parcels and in any order Trustee determines. Trustee may postpone sale of all or any parcel of the Property by public announcement at the time and place of any previously scheduled sale. Lender or its designee may purchase the Property at any sale.

Trustee shall deliver to the purchaser Trustee's deed conveying the Property without any covenant or warranty, expressed or implied. The recitals in the Trustee's deed shall be prima facie evidence of the truth of the statements made therein. Trustee shall apply the proceeds of the sale in the following order: (a) to all expenses of the sale, including, but not limited to, reasonable Trustee's and attorneys' fees; (b) to all sums secured by this Security Instrument; and (c) any excess to the person or persons legally entitled to it.

23. Reconveyance. Upon payment of all sums secured by this Security Instrument, Lender shall request Trustee to reconvey the Property and shall surrender this Security Instrument and all notes evidencing debt secured by this Security Instrument to Trustee. Trustee shall reconvey the Property without warranty to the person or persons legally entitled to it. Lender may charge such person or persons a reasonable fee for reconveying the Property, but only if the fee is paid to a third party (such as the Trustee) for services rendered and the charging of the fee is permitted under Applicable Law. If the fee charged does not exceed the fee set by Applicable Law, the fee is conclusively presumed to be reasonable.

24. Substitute Trustee. Lender, at its option, may from time to time appoint a successor trustee to any Trustee appointed hereunder by an instrument executed and acknowledged by Lender and recorded in the office of the Recorder of the county in which the Property is located. The instrument shall contain the name of the original Lender, Trustee and Borrower, the book and page where this Security Instrument is recorded and the name and address of the successor trustee. Without conveyance of the Property, the successor trustee shall succeed to all the title, powers and duties conferred upon the Trustee herein and by Applicable Law. This procedure for substitution of trustee shall govern to the exclusion of all other provisions for substitution.

25. Statement of Obligation Fee. Lender may collect a fee not to exceed the maximum amount permitted by Applicable Law for furnishing the statement of obligation as provided by Section 2943 of the Civil Code of California.

CALIFORNIA--Single Family--Fannie Mae/Freddie Mac UNIFORM INSTRUMENT   Form 3005 1/01
© 1999-2004 Online Documents, Inc.
Page 11 of 12

Initials:

CAEDEDL  0402
10-23-2006 14:09

V1 WBCD LOAN # 501231839

BY SIGNING BELOW, Borrower accepts and agrees to the terms and covenants contained in this Security Instrument and in any Rider executed by Borrower and recorded with it.

_____ (Seal)
REBEKAH V. OWEN

State of CALIFORNIA                        County of SANTA CLARA

On  10·23·06        , before me,  Paula G. Alves Notary Public _____
(here insert name and title of the officer), personally appeared _____
    Rebekah V. Owen
_____,

personally known to me (or proved to me on the basis of satisfactory evidence) to be the person(s) whose name(s) is/are subscribed to the within instrument and acknowledged to me that he/she/they executed the same in his/her/their authorized capacity(ies), and that by his/her/their signature(s) on the instrument the person(s), or the entity upon behalf of which the person(s) acted, executed the instrument.

WITNESS my hand and official seal.

PAULA G. ALVES
COMM. #1622272
NOTARY PUBLIC • CALIFORNIA
SANTA CLARA COUNTY
Comm. Exp. OCT. 29, 2008

_____

CALIFORNIA—Single Family—Fannie Mae/Freddie Mac UNIFORM INSTRUMENT    Form 3005 1/01
© 1999-2004 Online Documents, Inc.            Page 12 of 12                CAEDEDL  0402
                                                                          10-23-2006 14:09

Order No: 66211164

## Legal Description

All that certain real property situated in the County of Santa Clara, State of California, described as follows:

(City of San Jose)

Lot 17, as delineated upon that certain Map entitled "Tract No. 4131", filed for record in the Office of the County of Santa Clara, State of California, on February 24ᵗʰ, 1966 in Book 205 of Maps, at Page 42.

Excepting therefrom the underground water or rights thereto with no rights of surface entry, as granted to San Jose Water Works, a California Corporation, by instrument, recorded March 29, 1966 in Book 7337 of Official Records, Page 232.

V1 WBCD LOAN # 501231839
MIN #: 100052550123183997

### 1-4 FAMILY RIDER
### (Assignment of Rents)

THIS 1-4 FAMILY RIDER is made this      23RD      day of OCTOBER, 2006
and is incorporated into and shall be deemed to amend and supplement the Mortgage,
Deed of Trust, or Security Deed (the "Security Instrument") of the same date given by
the undersigned (the "Borrower") to secure Borrower's Note to FLAGSTAR BANK,
FSB, A FEDERALLY CHARTERED SAVINGS BANK

(the "Lender")
of the same date and covering the Property described in the Security Instrument and
located at: 3927 3929 RHODA DRIVE, SAN JOSE, CA 95117.

**1-4 FAMILY COVENANTS.** In addition to the covenants and agreements made in
the Security Instrument, Borrower and Lender further covenant and agree as follows:
**A. ADDITIONAL PROPERTY SUBJECT TO THE SECURITY INSTRUMENT.**
In addition to the Property described in Security Instrument, the following items now
or hereafter attached to the Property to the extent they are fixtures are added to the
Property description, and shall also constitute the Property covered by the Security
Instrument: building materials, appliances and goods of every nature whatsoever
now or hereafter located in, on, or used, or intended to be used in connection with
the Property, including, but not limited to, those for the purposes of supplying or
distributing heating, cooling, electricity, gas, water, air and light, fire prevention and
extinguishing apparatus, security and access control apparatus, plumbing, bath
tubs, water heaters, water closets, sinks, ranges, stoves, refrigerators, dishwashers,
disposals, washers, dryers, awnings, storm windows, storm doors, screens, blinds,
shades, curtains and curtain rods, attached mirrors, cabinets, paneling and
attached floor coverings, all of which, including replacements and additions thereto,
shall be deemed to be and remain a part of the Property covered by the Security
Instrument. All of the foregoing together with the Property described in the Security
Instrument (or the leasehold estate if the Security Instrument is on a leasehold) are
referred to in this 1-4 Family Rider and the Security Instrument as the "Property."
**B. USE OF PROPERTY; COMPLIANCE WITH LAW.** Borrower shall not seek,
agree to or make a change in the use of the Property or its zoning classification,
unless Lender has agreed in writing to the change. Borrower shall comply with all
laws, ordinances, regulations and requirements of any governmental body applicable
to the Property.
**C. SUBORDINATE LIENS.** Except as permitted by federal law, Borrower shall
not allow any lien inferior to the Security Instrument to be perfected against the
Property without Lender's prior written permission.

Initials: [signature]

MULTISTATE 1-4 FAMILY RIDER--Fannie Mae/Freddie Mac UNIFORM INSTRUMENT
© 1999-2004 Online Documents, Inc.                    Page 1 of 3

Form 3170 1/01
F3170RDU   F0170RLU  0412
10-23-2006 14:09

V1 WBCD LOAN # 501231839

**D. RENT LOSS INSURANCE.** Borrower shall maintain insurance against rent loss in addition to the other hazards for which insurance is required by Section 5.

**E. "BORROWER'S RIGHT TO REINSTATE" DELETED.** Section 19 is deleted.

**F. BORROWER'S OCCUPANCY.** Unless Lender and Borrower otherwise agree in writing, Section 6 concerning Borrower's occupancy of the Property is deleted.

**G. ASSIGNMENT OF LEASES.** Upon Lender's request after default, Borrower shall assign to Lender all leases of the Property and all security deposits made in connection with leases of the Property. Upon the assignment, Lender shall have the right to modify, extend or terminate the existing leases and to execute new leases, in Lender's sole discretion. As used in this paragraph G, the word "lease" shall mean "sublease" if the Security Instrument is on a leasehold.

**H. ASSIGNMENT OF RENTS; APPOINTMENT OF RECEIVER; LENDER IN POSSESSION.** Borrower absolutely and unconditionally assigns and transfers to Lender all the rents and revenues ("Rents") of the Property, regardless of to whom the Rents of the Property are payable. Borrower authorizes Lender or Lender's agents to collect the Rents, and agrees that each tenant of the Property shall pay the Rents to Lender or Lender's agents. However, Borrower shall receive the Rents until (i) Lender has given Borrower notice of default pursuant to Section 22 of the Security Instrument and (ii) Lender has given notice to the tenant(s) that the Rents are to be paid to Lender or Lender's agent. This assignment of Rents constitutes an absolute assignment and not an assignment for additional security only.

If Lender gives notice of default to Borrower: (i) all Rents received by Borrower shall be held by Borrower as trustee for the benefit of Lender only, to be applied to the sums secured by the Security Instrument; (ii) Lender shall be entitled to collect and receive all of the Rents of the Property; (iii) Borrower agrees that each tenant of the Property shall pay all Rents due and unpaid to Lender or Lender's agents upon Lender's written demand to the tenant; (iv) unless applicable law provides otherwise, all Rents collected by Lender or Lender's agents shall be applied first to the costs of taking control of and managing the Property and collecting the Rents, including, but not limited to, attorney's fees, receiver's fees, premiums on receiver's bonds, repair and maintenance costs, insurance premiums, taxes, assessments and other charges on the Property, and then to the sums secured by the Security Instrument; (v) Lender, Lender's agents or any judicially appointed receiver shall be liable to account for only those Rents actually received; and (vi) Lender shall be entitled to have a receiver appointed to take possession of and manage the Property and collect the Rents and profits derived from the Property without any showing as to the inadequacy of the Property as security.

If the Rents of the Property are not sufficient to cover the costs of taking control of and managing the Property and of collecting the Rents any funds expended by Lender for such purposes shall become indebtedness of Borrower to Lender secured by the Security Instrument pursuant to Section 9.

Borrower represents and warrants that Borrower has not executed any prior assignment of the Rents and has not performed, and will not perform, any act that would prevent Lender from exercising its rights under this paragraph.

Initials:

MULTISTATE 1-4 FAMILY RIDER—Fannie Mae/Freddie Mac UNIFORM INSTRUMENT
© 1999-2004 Online Documents, Inc.          Page 2 of 3

Form 3170 1/01
F3170RLU  0412
10-23-2006 14:09

V1 WBCD LOAN # 501231839

Lender, or Lender's agents or a judicially appointed receiver, shall not be required to enter upon, take control of or maintain the Property before or after giving notice of default to Borrower. However, Lender, or Lender's agents or a judicially appointed receiver, may do so at any time when a default occurs. Any application of Rents shall not cure or waive any default or invalidate any other right or remedy of Lender. This assignment of Rents of the Property shall terminate when all the sums secured by the Security Instrument are paid in full.

**I.   CROSS-DEFAULT PROVISION.** Borrower's default or breach under any note or agreement in which Lender has an interest shall be a breach under the Security Instrument and Lender may invoke any of the remedies permitted by the Security Instrument.

BY SIGNING BELOW, Borrower accepts and agrees to the terms and covenants contained in this 1-4 Family Rider.

_____ (Seal)
REBEKAH V. OWEN

MULTISTATE 1-4 FAMILY RIDER--Fannie Mae/Freddie Mac UNIFORM INSTRUMENT      Form 3170 1/01
© 1999-2004 Online Documents, Inc.                    **Page 3 of 3**
                                                                                   F3170RLU  0412
                                                                             10-23-2006 14:09

**EXHIBIT 3**

DOCUMENT: 22166797

Pages   1

| Fees . | 25 00 |
| Taxes | |
| Copies | |
| AMT PAID | 25 00 |

RECORDING REQUESTED BY:

ServiceLink

AND WHEN RECORDED MAIL TO:
Law Offices of Les Zieve
18377 Beach Blvd., Suite 210
Huntington Beach, California 92648

REGINA ALCOMENDRAS
SANTA CLARA COUNTY RECORDER
Recorded at the request of
Recording Service

RDE # 005
4/10/2013
9:14 AM

---

Loan No.: 0004002327                                          TS No.: 13-22335

## SUBSTITUTION OF TRUSTEE

   WHEREAS, REBEKAH V. OWEN, AN UNMARRIED WOMAN was the original Trustor, JOAN H. ANDERSON was the original Trustee, and FLAGSTAR BANK, FSB as Lender, Mortgage Electronic Registration Systems, Inc. was the original Beneficiary under that certain Deed of Trust dated 10/23/2006 and recorded on 10/31/2006, as Instrument Number 19164224 of Official Records of Santa Clara County, California; and

   WHEREAS, the undersigned is the present Beneficiary under said Deed of Trust, and

   WHEREAS, the undersigned desires to substitute a new Trustee under said Deed of Trust in place and instead of said original Trustee, or Successor Trustee, thereunder, in the manner in said Deed of Trust provided,

   NOW, THEREFORE, the undersigned hereby substitutes Law Offices of Les Zieve, as Trustee under said Deed of Trust. Whenever the context hereof so requires, the masculine gender includes the feminine and/or neuter, and the singular number includes the plural.

Dated:  1/14/13                    Flagstar Bank FSB

                                   KEVIN PAPERD

State of   MICHIGAN
County of  OAKLAND

On  1-14-13       before me,    EVELYN D. MESSINA            Notary Public, personally appeared        KEVIN PAPERD              who proved to me on the basis of satisfactory evidence  to be the person(s) whose name(s) is/are subscribed to the within instrument and acknowledged to me that he/she/they executed the same in his/her/their authorized capacity(ies), and that by his/her/their signature(s) on the instrument the person(s), or the entity upon behalf of which the person(s) acted, executed the instrument.
I certify under PENALTY OF PERJURY under the laws of the State of    MICHIGAN        that the foregoing paragraph is true and correct.
WITNESS my hand and official seal.

Signature                              (Seal)

EVELYN D MESSINA
Notary Public, State of Michigan
County of Macomb
My Commission Expires August 26, 2016
Acting in the County of Oakland

**EXHIBIT 4**

RECORDING REQUESTED BY:

WHEN RECORDED MAIL TO:

**Law Offices of Les Zieve**
18377 Beach Blvd., Suite 210
Huntington Beach, California 92648

DOCUMENT:   22166798          Pages:      4

Fees . ............. 34 00
Taxes ..
Copies.
AMT PAID           34.00

REGINA ALCOMENDRAS
SANTA CLARA COUNTY RECORDER
Recorded at the request of
Recording Service

RDE #  005
4/10/2013
9:14 AM

TS No.: 13-22335
APN: 299-18-117

## NOTICE OF DEFAULT AND ELECTION TO SELL UNDER DEED OF TRUST

**PURSUANT TO CIVIL CODE § 2923.3(a), THE SUMMARY OF INFORMATION REFERRED TO BELOW IS NOT ATTACHED TO THE RECORDED COPY OF THIS DOCUMENT BUT ONLY TO THE COPIES PROVIDED TO THE TRUSTOR.**

NOTE: THERE IS A SUMMARY OF THE INFORMATION IN THIS DOCUMENT ATTACHED
注：本文件包含一个信息摘要
참고사항: 본 첨부 문서에 정보 요약서가 있습니다
NOTA: SE ADJUNTA UN RESUMEN DE LA INFORMACIÓN DE ESTE DOCUMENTO ·
TALA: MAYROONG BUOD NG IMPORMASYON SA DOKUMENTONG ITO NA NAKALAKIP
LƯU Ý: KÈM THEO ĐÂY LÀ BẢN TRÌNH BÀY TÓM LƯỢC VỀ THÔNG TIN TRONG TÀI LIỆU NÀY

### IMPORTANT NOTICE

## IF YOUR PROPERTY IS IN FORECLOSURE BECAUSE YOU ARE BEHIND IN YOUR PAYMENTS IT MAY BE SOLD WITHOUT ANY COURT ACTION, and you may have the legal right to bring your account in good standing by

paying all of your past due payments plus permitted costs and expenses within the time permitted by law for reinstatement of your account, which is normally five business days prior to the date set for the sale of your property. No sale date may be set until approximately 90 days from the date this notice of default may be recorded (which date of recordation appears on this notice).

This amount is ___$23,251.71___ as of ___4/8/2013___, and will increase until your account becomes current. While your property is in foreclosure, you still must pay other obligations (such as insurance and taxes) required by your Note and Deed of Trust or mortgage. If you fail to make future payments on the loan, pay taxes on the property, provide insurance on the property, or pay other obligations as required in the Note and Deed of Trust or mortgage, the Beneficiary or mortgagee may insist that you do so in order to reinstate your account in good standing. In addition, the Beneficiary or mortgagee may require as a condition of reinstatement that you provide reliable written evidence that you paid all senior liens, property taxes, and hazard insurance premiums.

Upon your written request, the Beneficiary or mortgagee will give you a written itemization of the entire amount you must pay. You may not have to pay the entire unpaid portion of your account, even though full payment was demanded, but you must pay all amounts in default at the time payment is made.

**NOTICE OF DEFAULT AND ELECTION TO SELL UNDER DEED OF TRUST**
TS No. 13-22335

However, you and your Beneficiary or mortgagee may mutually agree in writing prior to the time the Notice of Sale is posted (which may not be earlier than three months after this notice of default is recorded) to, among other things. (1) Provide additional time in which to cure the default by transfer of the property or otherwise; or (2) Establish a schedule of payments in order to cure your default; or, both (1) and (2).

Following the expiration of the time period referred to in the first paragraph of this notice, unless the obligation being foreclosed upon or a separate written agreement between you and your creditor permits a longer period, you have only the legal right to stop the sale of your property by paying the entire amount demanded by your creditor.

**To find out the amount you must pay, or to arrange for payment to stop the foreclosure, or if your property is in foreclosure for any other reason, contact:**

**Flagstar Bank FSB**
**C/O Law Offices of Les Zieve**
**18377 Beach Blvd., Suite 210**
**Huntington Beach, California 92648**
**Phone: 1-800-393-4887**

If you have any questions, you should contact a lawyer or the governmental agency which may have insured your loan. Notwithstanding the fact that your property is in foreclosure, you may offer your property for sale provided the sale is concluded prior to the conclusion of the foreclosure. **Remember, YOU MAY LOSE LEGAL RIGHTS IF YOU DO NOT TAKE PROMPT ACTION.**

NOTICE IS HEREBY GIVEN: That Law Offices of Les Zieve is either the original Trustee, the duly appointed substituted Trustee, or acting as agent for the Trustee or Beneficiary under a Deed of Trust dated 10/23/2006, executed by REBEKAH V. OWEN, AN UNMARRIED WOMAN, as Trustor, to secure certain obligations in favor of FLAGSTAR BANK, FSB as Lender, Mortgage Electronic Registration Systems, Inc. as Beneficiary, recorded 10/31/2006, as Instrument No. 19164224, in Book --, Page --, of Official Records in the Office of the Recorder of Santa Clara County, California describing land therein as: As more particularly described on said Deed of Trust.

The subject obligation includes NOTE(S) FOR THE ORIGINAL sum of $620,000.00. A breach of, and default in, the obligations for which such Deed of Trust is security has occurred in that payment has not been made of the following:

The monthly installment which became due on 10/1/2012, along with late charges, and all subsequent monthly installments.

You are responsible to pay all payments and charges due under the terms and conditions of the loan documents which come due subsequent to the date of this notice, including, but not limited to; foreclosure trustee fees and costs, advances and late charges.

Furthermore, as a condition to bring your account in good standing, you must provide the undersigned with written proof that you are not in default on any senior encumbrance and provide proof of insurance.

Nothing in this Notice of Default should be construed as a waiver of any fees owing to the beneficiary under the Deed of Trust, pursuant to the terms and provisions of the loan documents.

**NOTICE OF DEFAULT AND ELECTION TO SELL UNDER DEED OF TRUST**
TS No. 13-22335

That by reason thereof, the present Beneficiary under such Deed of Trust, has executed and delivered to said duly appointed Trustee, a written Declaration of Default and Demand for same, and has deposited with said duly appointed Trustee, such Deed of Trust and all documents evidencing obligations secured thereby, and has declared and does hereby declare all sums secured thereby immediately due and payable and has elected and does hereby elect to cause the trust property to be sold to satisfy the obligations secured thereby.

WE ARE ASSISTING THE BENEFICIARY TO COLLECT A DEBT AND ANY INFORMATION WE OBTAIN WILL BE USED FOR THE PURPOSE BY EITHER OURSELVES OR THE BENEFICIARY, WHETHER RECEIVED ORALLY OR IN WRITING. YOU MAY DISPUTE THE DEBT OR A PORTION THEREOF UPON WRITTEN REQUEST WITHIN THIRTY (30) DAYS. THEREAFTER WE WILL OBTAIN AND FORWARD TO YOU WRITTEN VERIFICATION THEREOF. SHOULD YOU NOT DO SO, THE DEBT WILL BE CONSIDERED VALID. IN ADDITION, YOU MAY REQUEST THE NAME AND ADDRESS OF THE ORIGINAL CREDITOR IF DIFFERENT FROM THE CURRENT ONE

The loan servicer has fulfilled its obligation under either California Civil Code section 2923.5 or 2923.55 (as applicable). Please see Declaration of Compliance attached hereto.

Dated: 4/8/2013                              Law Offices of Les Zieve, as Trustee

                                             _____
                                             Sara Simonini / Trustee Sale Officer

# CALIFORNIA DECLARATION OF COMPLIANCE
## (Civil Code § 2923.55(c))

Borrower(s): **REBEKAH V. OWEN**
Mortgage Servicer: Flagstar Bank FSB
Property Address: 3927 & 3929 RHODA DRIVE
SAN JOSE, CA 95117
T.S No: 13-22335

The undersigned, as an authorized agent or employee of the mortgage servicer named below, declares that:

1. ☐ The mortgage servicer has contacted the Borrower pursuant to California Civil Code § 2923.55(b)(2) to assess the borrower's financial situation and explore options for the borrower to avoid foreclosure . Thirty (30) days, or more, have passed since the initial contact was made.

2. ☑ The mortgage servicer has exercised due diligence to contact the borrower pursuant to California Civil Code § 2923.55(f) to assess the borrower's financial situation and explore options for the borrower to avoid foreclosure . Thirty (30) days, or more, have passed since these due diligence efforts were satisfied.

3. ☐ No contact was required by the mortgage servicer because the individual did not meet the definition of 'borrower pursuant to California Civil Code subdivision (c) of § 2920.5(c).

4. ☐ The requirements of California Civil Code § 2923.55 do not apply because the loan is not secured by a first lien mortgage or deed of Trust on owner occupied residential real property as defined by California Civil Code § 2924.15.

I certify and represent that this mortgage servicer's declaration is accurate, complete and based upon competent and reliable evidence, which the mortgage servicer has reviewed including my review of the mortgage servicer's business records, to substantiate the borrower s default and the right to foreclose, including the borrower s loan status and loan information.

Date: 4/8/13

Flagstar Bank FSB, Mortgage Servicer

By: Solution Manager

### ATTACHMENT TO NOTICE OF DEFAULT

# EXHIBIT 5

| DOCUMENT: | 22308679 | | Pages: | 2 |
|---|---|---|---|---|
| | | | Fees. . . . | 28.00 |
| | | | Taxes. . | .00 |
| | | | Copies . . | .00 |
| | 0022308679 | | AMT PAID | 28.00 |

[RECORDING REQUESTED BY]
Law Offices of Les Zieve

[WHEN RECORDED MAIL TO:]
Law Offices of Les Zieve
18377 Beach Blvd., Suite 210
Huntington Beach, California 92648

REGINA ALCOMENDRAS
SANTA CLARA COUNTY RECORDER
Recorded at the request of
ServiceLink - Irvine SIM

RDE # 009
7/19/2013
10:18 AM

T.S. No. 13-22335          APN: 299-18-117

[SPACE ABOVE THIS LINE FOR RECORDER'S USE ONLY]

## NOTICE OF TRUSTEE'S SALE

**PURSUANT TO CIVIL CODE § 2923.3(a), THE SUMMARY OF INFORMATION REFERRED TO BELOW IS NOT ATTACHED TO THE RECORDED COPY OF THIS DOCUMENT BUT ONLY TO THE COPIES PROVIDED TO THE TRUSTOR.**

NOTE: THERE IS A SUMMARY OF THE INFORMATION IN THIS DOCUMENT ATTACHED
注：本文件包含一个信息摘要
참고사항: 본 첨부 문서에 정보 요약서가 있습니다
NOTA: SE ADJUNTA UN RESUMEN DE LA INFORMACIÓN DE ESTE DOCUMENTO
TALA: MAYROONG BUOD NG IMPORMASYON SA DOKUMENTONG ITO NA NAKALAKIP
LƯU Ý: KÈM THEO ĐÂY LÀ BẢN TRÌNH BÀY TÓM LƯỢC VỀ THÔNG TIN TRONG TÀI LIỆU NÀY

**YOU ARE IN DEFAULT UNDER A DEED OF TRUST DATED 10/23/2006. UNLESS YOU TAKE ACTION TO PROTECT YOUR PROPERTY, IT MAY BE SOLD AT A PUBLIC SALE. IF YOU NEED AN EXPLANATION OF THE NATURE OF THE PROCEEDING AGAINST YOU, YOU SHOULD CONTACT A LAWYER.**

A public auction sale to the highest bidder for cash, cashier's check drawn on a state or national bank, check drawn by a state or federal credit union, or a check drawn by a state or federal savings and loan association, or savings association, or savings bank specified in Section 5102 of the Financial Code and authorized to do business in this state will be held by the duly appointed trustee as shown below, of all right, title, and interest conveyed to and now held by the trustee in the hereinafter described property under and pursuant to a Deed of Trust described below. The sale will be made, but without covenant or warranty, expressed or implied, regarding title, possession, or encumbrances, to pay the remaining principal sum of the note(s) secured by the Deed of Trust, with interest and late charges thereon, as provided in the note(s), advances, under the terms of the Deed of Trust, interest thereon, fees, charges and expenses of the Trustee for the total amount (at the time of the initial publication of the Notice of Sale) reasonably estimated to be set forth below. The amount may be greater on the day of sale.

Trustor: **REBEKAH V. OWEN, AN UNMARRIED WOMAN**
Duly Appointed Trustee: Law Offices of Les Zieve  Deed of Trust recorded 10/31/2006 as Instrument No. 19164224 in book --, page — of Official Records in the office of the Recorder of Santa Clara County, California,
Date of Sale: 8/13/2013 at 10:00 AM
Place of Sale:      At the entrance to the Superior Courthouse 190 N Market Street San Jose, CA
Estimated amount of unpaid balance and other charges: **$693,412.42**
Note: Because the Beneficiary reserves the right to bid less than the total debt owed, it is possible that at the time of the sale the opening bid may be less than the total debt owed.

| Street Address or other common designation of real property: | **3927 & 3929 RHODA DRIVE SAN JOSE, CA 95117** |

Described as follows:

AS MORE FULLY DESCRIBED ON SAID DEED OF TRUST

A.P.N #.: 299-18-117

The undersigned Trustee disclaims any liability for any incorrectness of the street address or other common designation, if any, shown above. If no street address or other common designation is shown, directions to the location of the property may be obtained by sending a written request to the beneficiary within 10 days of the date of first publication of this Notice of Sale.

NOTICE TO POTENTIAL BIDDERS: If you are considering bidding on this property lien, you should understand that there are risks involved in bidding at a trustee auction. You will be bidding on a lien, not on the property itself. Placing the highest bid at a trustee auction does not automatically entitle you to free and clear ownership of the property. You should also be aware that the lien being auctioned off may be a junior lien. If you are the highest bidder at the auction, you are or may be responsible for paying off all liens senior to the lien being auctioned off, before you can receive clear title to the property. You are encouraged to investigate the existence, priority, and size of outstanding liens that may exist on this property by contacting the county recorder's office or a title insurance company, either of which may charge you a fee for this information. If you consult either of these resources, you should be aware that the same lender may hold more than one mortgage or deed of trust on the property.

NOTICE TO PROPERTY OWNER: The sale date shown on this notice of sale may be postponed one or more times by the mortgagee, beneficiary, trustee, or a court, pursuant to Section 2924g of the California Civil Code. The law requires that information about trustee sale postponements be made available to you and to the public, as a courtesy to those not present at the sale. If you wish to learn whether your sale date has been postponed, and, if applicable, the rescheduled time and date for the sale of this property, you may call (714) 848-9272 or visit this Internet Web site www.elitepostandpub.com, using the file number assigned to this case 13-22335. Information about postponements that are very short in duration or that occur close in time to the scheduled sale may not immediately be reflected in the telephone information or on the Internet Web site. The best way to verify postponement information is to attend the scheduled sale.

Dated: 7/17/2013

**Law Offices of Les Zieve, as Trustee
18377 Beach Blvd., Suite 210
Huntington Beach, California 92648
For Non-Automated Sale Information, call: (714) 848-7920
For Sale Information: (714) 848-9272  www.elitepostandpub.com**

Christine O'Brien, Trustee Sale Officer

THIS FIRM IS ATTEMPTING TO COLLECT A DEBT AND ANY INFORMATION WE OBTAINED WILL BE USED FOR THAT PURPOSE

**EXHIBIT 6**

DOCUMENT: 22391632          Pages:    2

Fees          34 00
Taxes.
Copies
AMT PAID      34 00

REGINA ALCOMENDRAS              RDE H  001
SANTA CLARA COUNTY RECORDER     9/19/2013
Recorded at the request of      9:12 AM
Financial Company

When recorded return to:
CoreLogic
450 E Boundary St.
Chapin, SC 29036
26419912

(SPACE ABOVE THIS LINE FOR RECORDER'S USE ONLY)
ASSIGNMENT OF DEED OF TRUST
KNOW ALL MEN BY THESE PRESENTS

STATE OF California                Loan# 004002327
COUNTY OF SANTA CLARA              MIN# 100052550123183997

That, MORTGAGE ELECTRONIC REGISTRATION SYSTEM, INC., AS NOMINEE FOR FLAGSTAR BANK, FSB,
ITS SUCCESSOR'S AND/OR ASSIGNS its successors and assigns, which has an address and phone number of P.O. BOX
2026, FLINT MI 48501 (ASSIGNOR) acting herein by and through a duly authorized officer, does assign its interest in the
Deed of Trust executed by REBEKAH V. OWEN securing the amount of $620,000.00 dated 10/23/2006, and recorded
10/31/2006 as DOCUMENT NO. 19164224, PG:1-16 which was recorded on the lot(s) or parcel(s) described therein
situated in the City of SAN JOSE, County of SANTA CLARA, State of California

SEE ATTACHED FOR LEGAL DESCRIPTION

Commonly Known As: 3927 3929 RHODA DRIVE, SAN JOSE, CA 95117

For good, valuable and sufficient consideration paid, the receipt of which is hereby acknowledged, does hereby transfer and
assign, set over and deliver to U.S. Bank National Association, as Trustee for CVF Mortgage Loan
Acquisition Company its successors and assigns, which has an address of 60 Livingston Avenue, EP-MN-
WS3D, St. Paul, MN 55107 (ASSIGNEE) all interest in and title to said Mortgage, together with all other liens against
said property securing the payment thereof, and all title held by the undersigned in and to said land.

TO HAVE AND TO HOLD unto said Assignee said above described Mortgage, together with all and singular the liens, rights,
equities, title and estate in said real estate therein described securing the payment thereof, or otherwise.

On 6/27/2013

                                   MORTGAGE ELECTRONIC REGISTRATION
                                   SYSTEM, INC., AS NOMINEE FOR
                                   FLAGSTAR BANK, FSB, ITS SUCCESSOR'S
                                   AND/OR ASSIGNS

WITNESSES:
BY:                                BY:
   Tiff Anderson                      LISA LOUISE MAHONY

                                   ITS:      VICE PRESIDENT
BY:
   Billie Lison
STATE OF MICHIGAN
COUNTY OF OAKLAND

                    ACKNOWLEDGEMENT

On 6/27/2013 before me, Notary Public, appeared LISA LOUISE MAHONY, VICE PRESIDENT, personally known to me
or proved to me on the basis of satisfactory evidence to be the individual(s) whose name(s) is (are) subscribed to the within
instrument and acknowledged to me that he/she/they executed the same in his/her/their capacity(ies) that by his/her/their
signature(s) on the instrument, the individual(s) or the person upon behalf of which the individual(s) acted, executed the
instrument, and that such individual make such appearance before the undersigned in the City of Troy, MI

Drafted By:
FLAGSTAR BANK              BEKKA CAMPARA
5151 CORPORATE DRIVE      NOTARY PUBLIC, STATE OF MI
TROY, MI 48098            COUNTY OF OAKLAND
(248)312-2000             MY COMMISSION EXPIRES Oct 24, 2013
Mail Stop: W-535-1        ACTING IN COUNTY OF      Oakland       Notary Public

FS LN # 004002327

## Legal Description

All that certain real property situated in the County of Santa Clara, State of California, described as follows:

(City of San Jose)

Lot 17, as delineated upon that certain Map entitled "Tract No. 4131", filed for record in the Office of the County of Santa Clara, State of California, on February 24th, 1966 in Book 205 of Maps, at Page 42.

Excepting therefrom the underground water or rights thereto with no rights of surface entry, as granted to San Jose Water Works, a California Corporation, by instrument, recorded March 29, 1966 in Book 7337 of Official Records, Page 232.

**EXHIBIT 7**

4

RECORDING REQUESTED BY:

AND WHEN RECORDED MAIL TO

Law Offices of Les Zieve
30 Corporate Park, Suite 450
Irvine, CA 92606

| DOCUMENT:   22520761 | Pages: | 1 |
|---|---|---|

Fees            25 00
Taxes .
Copies.
AMT PAID        25.00

REGINA ALCOMENDRAS          RDE # 004
SANTA CLARA COUNTY RECORDER  2/18/2014
Recorded at the request of   9:18 AM
Attorney

TS No.: 13-22335
Property Address:
3927 & 3929 RHODA DRIVE
SAN JOSE, CA 95117

APN: 299-18-117

## NOTICE OF RESCISSION
### OF DECLARATION OF DEFAULT AND DEMAND FOR SALE
### AND OF NOTICE OF BREACH AND ELECTION TO SELL UNDER DEED OF TRUST

**NOTICE IS HEREBY GIVEN:** That Law Offices of Les Zieve is duly appointed Trustee under a Deed of Trust dated 10/23/2006, executed by REBEKAH V. OWEN, AN UNMARRIED WOMAN, as Trustor, to secure certain obligations in favor of FLAGSTAR BANK, FSB as Lender, Mortgage Electronic Registration Systems, Inc., as Beneficiary, recorded 10/31/2006, as Instrument No.19164224, in book --, page --, of Official Records in the Office of the Recorder of Santa Clara County, California describing land therein as more fully described on the above referenced deed of trust.

**WHEREAS:** The present beneficiary under that certain Deed of Trust herein above described, heretofore delivered to the Trustee thereunder written Declaration of Default and Demand for Sale; and

**WHEREAS:** Notice was heretofore given of breach of obligations for which said Deed of Trust is security and of election to cause to be sold the property therein described.

**NOW THEREFORE:** Notice is hereby given that the present Beneficiary and/or the Trustee, does hereby rescind, cancel and withdraw said Declaration of Default and Demand for Sale and said Notice of Breach and Election to Cause Sale; it being understood, however, that this rescission shall not in any manner be construed as waiving or affecting any breach of default past, present or future under said Deed of Trust, or as impairing any right or remedy thereunder, but is, and shall be deemed to be, only an election, without prejudice, not to cause a sale to be made pursuant to said Declaration and Notice, and shall no way jeopardize or impair any right, remedy or privilege secured to the Beneficiary and/or the Trustee, under said Deed of Trust, nor modify nor alter in any respect, any of the terms, covenants, conditions or obligations thereof, and said Deed of Trust and all obligations secured thereby are hereby reinstated and shall be and remain in force and effect the same as if said Declaration of Default and Notice of Breach had not been made and given. Said Notice was recorded on 4/10/2013 as Instrument No. 22166798, in Book  , Page , of Official Records in the office of the Recorder of Santa Clara County, California

Dated: 2/11/2014

_____
Marcy Axelrod, Trustee Sale Officer

**EXHIBIT 8**

RECORDING REQUESTED BY:

DOUGLAS P. BARNES,
A PROFESSIONAL LAW CORPORATION

WHEN RECORDED MAIL TO:

DOUGLAS P. BARNES,
A PROFESSIONAL LAW CORPORATION
210 ALMENDRA AVENUE
LOS GATOS, CALIFORNIA 95030-7211

DOCUMENT: 22913096          Pages:    4

Fees... 39 00
Taxes ..
Copies
AMT PAID       39.00

REGINA ALCOMENDRAS            RDE # 026
SANTA CLARA COUNTY RECORDER   4/09/2015
Recorded at the request of   3:08 PM
Recording Service

(SPACE ABOVE THIS LINE FOR RECORDER'S USE)

## ORDER CONFIRMING TRUSTEE AND CONFIRMING ASSETS OWNED BY TRUST

DOCUMENT TITLE

APN: 299-18-117

SEPARATE PAGE PURSUANT TO CAL. GOVT. CODE § 27361.6

*Description: Santa Clara,CA Document - DocID 22913096 Page: 1 of 4*
*Order: N Comment:*

17

1   DOUGLAS P. BARNES, SBN 97005
    JUDITH N. DOUGLASS, SBN 146162
2   DOUGLAS P. BARNES, A PROFESSIONAL LAW CORP.
    210 Almendra Avenue
3   Los Gatos, California 95030-7211
    (408) 395-4800 Telephone
4   (408) 395-4899 Facsimile

5   ATTORNEY FOR: MICHAEL PARADISE, Trustee

**FILED**

APR - 1 2015

DAVID H. YAMASAKI
Chief Executive Officer/Clerk
Superior Court of CA/County of Santa Clara
BY_____ DEPUTY
                                    K. NG

6

7

8              SUPERIOR COURT OF CALIFORNIA

9                 COUNTY OF SANTA CLARA

10  In re the matter of                   Case No:    1-15-PR175808

11  THE PARADISE LIVING TRUST DATED       ORDER  CONFIRMING  TRUSTEE  AND
    DECEMBER 11, 2012,                    CONFIRMING ASSETS OWNED BY THE
12                                        TRUST
    MICHAEL D. PARADISE and REBEKAH       [Probate Code § 17200]
13  OWEN-PARADISE, Settlors
    MICHAEL PARADISE, Trustee.            DATE:      April 1, 2015
14                                        DEPT:      10
                                          TIME:      9:30 a.m.
15

16      Petitioner, MICHAEL PARADISE, Trustee of the PARADISE LIVING TRUST Dated

17  December 11, 2012, having filed his PETITION FOR ORDER CONFIRMING TRUSTEE AND

18  CONFIRMING PROPERTY OWNED BY TRUST (Probate Code Sections 17200, et seq), the Court finds:

19      1.    Due notice of hearing of the petition has been given as required by law.

20      2.    All allegations of the petition are true.

21      NOW, THEREFORE, IT IS HEREBY ORDERED that:

22      1.    MICHAEL PARADISE is confirmed as Trustee of The Paradise Living Trust Dated

23            December 11, 2012, to serve without bond;

24      2.    The asset set forth in EXHIBIT "A" attached hereto is confirmed to MICHAEL PARADISE

25            as Trustee of Paradise Living Trust Dated December 11, 2012;

26      3.    For such additional orders as the Court deems proper.

27  Dated:   APR 0 1 2015          _____
                                   JUDGE OF THE SUPERIOR COURT
28                                        **Thomas E. Kuhnle**

                            Page 1
            Order Confirming Trustee and Confirming Trust Assets

**EXHIBIT A**

1.   The real property located at 3927 & 3929 Rhoda Drive, San Jose, California, APN: 299-18-117, commonly described as follows:

Lot 17, as delineated upon that certain Map entitled "Tract No. 4131", filed for record in the Office of the County of Santa Clara, State of California, on February 24th, 1966 in Book 205 of Maps, at Page 42.

Excepting therefrom the underground water or rights thereto with no rights of surface entry, as granted to San Jose Water Works, a California Corporation, by instrument, recorded March 29, 1966 in Book 7337 of Official Records, Page 232.

APN: 299-18-117

RJN EXHIBIT 9



**California Department of Business Oversight**

2014 CRMLA Annual Report

Thank you for your time and effort in providing the information requested on the **2014 CRMLA Annual Report.**

*If you have saved your progress and wish to return later:*
Access the survey again by clicking on the Survey link in the email you received from the DBO and then continue inputting information.

*If you have submitted your completed survey and would like to make changes:*
Access the Survey again by clicking on the Survey link in the email you received from the DBO. Make any necessary changes and click the submit button again.

*To print and/or review the Survey with your data:*
Click here to review the information you have answered into the Survey. Only fields that you have answered will be visible. To print what you've entered, right click on the Survey that pops up. *(Note: Your browser security settings may need to be modified to allow pop-ups from this website.)*

*For assistance or questions, please email:*
survey@dbo.ca.gov.



California Department of
**Business Oversight**

## 2014 CRMLA Annual Report

### Report of Principal Amount of Loans Originated and
### Aggregate Amount of Loans Serviced

Please report the California loans originated, serviced, processed, underwritten and brokered. Your annual assessment for the fiscal year July 1, 2015 through June 30, 2016, as provided by Financial Code (FC) Section 50401, will be calculated from the information provided in this report. Improper reporting will result in an incorrect assessment. If you have nothing to report for a question, then input a zero ("0").

#### LOANS PROCESSED AND UNDERWRITTEN:

As required by Section 50129 (FC), each licensee must report the number and principal amount of California loans processed and underwritten. The loans to be reported are those loans which, pursuant to a written agency contract with another institutional lender, the licensee engages in the business of soliciting, processing applications, or applying residential loan underwriting criteria for residential mortgage loans for that lender, using or advancing the funds of that lender.

#### LOANS ORIGINATED:

As required by Section 50401 (FC), each licensee must report the number and principal amount of California mortgage loans originated each month. "Principal Amount" means the initial total amount a borrower is obligated to repay the lender. The loans to be reported are those which the licensee made with its own funds, including funds obtained from warehouse credit lines.

#### LOANS BROKERED:

Section 50702 (FC) authorizes a residential mortgage lender to provide brokerage services pursuant to a written brokerage agreement with the borrower under the authority of its license. Please report the number and aggregate principal amount of closed California residential mortgage loans secured by residential real estate in which the licensee provided brokerage services under the authority of its residential mortgage lender license issued by the Department of Business Oversight.

#### LOANS SERVICED:

As required by Section 50401 (FC), each licensee must report the total aggregate amount of all California loans serviced. "Aggregate Amount of Loans Serviced" means the aggregate dollar value of all mortgage loans secured by residential real property serviced by a licensee, calculated as of the last day of each month in the 2014 calendar year.



## 2014 CRMLA Annual Report

Convert to PDF.

PLEASE READ THESE INSTRUCTIONS CAREFULLY BEFORE COMPLETING THE ANNUAL REPORT

The Commissioner of Business Oversight directs DBO-licensed California Residential Mortgage Lenders and Servicers to complete and submit the *2014 California Residential Mortgage Lending Act Annual Report*, pursuant to Financial Code sections 50307 and 50401.

### THE ANNUAL REPORT FORM:

The Report includes the following sections:

- Report of Principal Amount of Loans Originated and Aggregate Amount of Loans Serviced for the 12 Month Period Ended December 31, 2014
- Report on Non-Traditional, Adjustable Rate and Mortgage Loan Products
- California Foreclosure Reduction Act
- Non-Traditional, Adjustable Rate and Mortgage Loan Survey

### WHO MUST FILE THE REPORT:

The 2014 CRMLA Annual Report must be filed by every licensee, even if no business was conducted under the authority of the license in 2014. Companies with multiple branches must prepare one consolidated report.

### PERIOD COVERED BY THE REPORT:

The reporting period is (1) January 1, 2014, through December 31, 2014, or (2) from the effective date of licensure for licenses issued in 2014 through December 31, 2014.

### WHEN IS THE REPORT DUE / PENALTY FOR FAILURE TO FILE REPORT:

The report must be completed and submitted online no later than March 1, 2015.

Pursuant to Section 50326 of the Financial Code, failure to file the reports within ten (10) days of the due date, or failure to include any matter required in the report, will result in a penalty of $100 for every day up to the tenth day. Thereafter, any failure shall constitute grounds for the suspension or revocation of the license.

### IMPORTANT INFORMATION ABOUT THE ONLINE FORM:

- If your answer is "0", you must type in "0."
- Save your progress by clicking the "Save" button at the bottom of each page. You can return to make changes by clicking on the link that was emailed to you from the DBO.
- You must click the "Submit" button at the end of the report to complete the form.
- The report link is secure, and input is protected by 128-bit encryption to maintain privacy and confidentiality.
- This link is unique to your institution and should be shared only with people authorized to see the information.
- Only one person may enter data in the report at a time.
- Some questions depend on how you answer other questions; therefore some questions may not appear in numerical order.
- Some fields calculate totals automatically, while some do not. Be sure to double-check that required questions are answered.
- All items requesting dollar amounts should be rounded to the nearest whole dollar. Do not add ".00" to represent rounding to the nearest dollar. Do not round items to the nearest thousand or million dollars. Do not round intermediate calculations.
- The report works best when Java Script is enabled.
- Click here for a copy of these instructions.
- It is highly recommended that you click here for a blank paper copy of the report to help you compile information for the online form. REPORTS MUST BE SUBMITTED USING THE ONLINE FORM.

### FOR ASSISTANCE

If you have any questions about the content of the Report or need clarification on the instructions, please email CRMLA.Inquiries@dbo.ca.gov.

If you would like technical assistance with the form, please contact survey@dbo.ca.gov.

| Licensee Contact Information |  |
|---|---|

| | |
|---|---|
| Licensee Name (as shown on license): | FAY SERVICING, LLC |
| CA DBO License Number: | 4130976 |
| CA DBO Designated Email: | compliance@fayservicing.com |

**Contact Information**

For the Purpose of Arranging Regulatory Examinations

| | |
|---|---|
| Name: | Ada Rivers |
| Street Address: | 440 S LaSalle St. Suite 2000 |
| City: | Chicago |
| State: | Illinois |
| Phone: | 312-508-4225 |

## Report of Principal Amount of Loans Originated and Aggregate Amount of Loans Serviced

Please report the California loans originated, serviced, processed, underwritten and brokered. Your annual assessment for the fiscal year July 1, 2015 through June 30, 2016, as provided by Financial Code (FC) Section 50401, will be calculated from the information provided in this report. Improper reporting will result in an incorrect assessment. If you have nothing to report for a question, then input a zero ("0").

### LOANS PROCESSED AND UNDERWRITTEN:

As required by Section 50129 (FC), each licensee must report the number and principal amount of California loans processed and underwritten. The loans to be reported are those loans which, pursuant to a written agency contract with another institutional lender, the licensee engages in the business of soliciting, processing applications, or applying residential loan underwriting criteria for residential mortgage loans for that lender, using or advancing the funds of that lender.

### LOANS ORIGINATED:

As required by Section 50401 (FC), each licensee must report the number and principal amount of California mortgage loans originated each month. "Principal Amount" means the initial total amount a borrower is obligated to repay the lender. The loans to be reported are those which the licensee made with its own funds, including funds obtained from warehouse credit lines.

### LOANS BROKERED:

Section 50702 (FC) authorizes a residential mortgage lender to provide brokerage services pursuant to a written brokerage agreement with the borrower under the authority of its license. Please report the number and aggregate principal amount of closed California residential mortgage loans secured by residential real estate in which the licensee provided brokerage services under the authority of its residential mortgage lender license issued by the Department of Business Oversight.

### LOANS SERVICED:

As required by Section 50401 (FC), each licensee must report the total aggregate amount of all California loans serviced. "Aggregate Amount of Loans Serviced" means the aggregate dollar value of all mortgage loans secured by residential real property serviced by a licensee, calculated as of the last day of each month in the 2014 calendar year.

Report by respondent for '2014 CRMLA Annual Report'

## 1a. LOANS PROCESSED, UNDERWRITTEN AND ORIGINATED

| | # of CA Loans Processed and Underwritten | Principal Amount of CA Loans Processed and Underwritten | # of CA Loans Originated | Principal Amount of CA Loans Originated |
|---|---|---|---|---|
| January | 0 | 0 | 0 | 0 |
| February | 7 | 3,236,900 | 0 | 0 |
| March | 4 | 755,650 | 0 | 0 |
| April | 4 | 1,007,314 | 0 | 0 |
| May | 3 | 802,125 | 0 | 0 |
| June | 3 | 842,000 | 2 | 971,500 |
| July | 7 | 2,329,500 | 0 | 0 |
| August | 1 | 320,000 | 3 | 985,500 |
| September | 9 | 4,574,075 | 0 | 0 |
| October | 9 | 3,632,680 | 5 | 2,301,025 |
| November | 6 | 2,764,025 | 0 | 0 |
| December | 7 | 2,745,367 | 1 | 930,500 |
| Total | 60 | 23,010,036 | 11 | 5,188,025 |

## 1b. LOANS BROKERED AND SERVICED

| | # of CA Loans Brokered | Amount of CA Loans Brokered | Aggregate Amount of CA Loans Serviced |
|---|---|---|---|
| January | 0 | 0 | 1,015,049,176 |
| February | 0 | 0 | 1,239,866,559 |
| March | 0 | 0 | 1,236,384,118 |
| April | 0 | 0 | 1,369,072,029 |
| May | 0 | 0 | 1,480,624,598 |
| June | 0 | 0 | 1,498,902,940 |
| July | 0 | 0 | 1,609,589,861 |
| August | 0 | 0 | 1,644,103,496 |
| September | 0 | 0 | 1,571,185,953 |
| October | 0 | 0 | 1,605,383,963 |
| November | 0 | 0 | 1,613,902,452 |
| December | 0 | 0 | 1,620,906,086 |
| Total | 0 | 0 | 17,504,969,221 |

## California Foreclosure Reduction Act

Effective January 1, 2013, the California Foreclosure Reduction Act (AB 288 (Ch. 86, Stats. 2012) and SB 900 (Ch. 87, Stats. 2012) includes specific requirements for licensees that conducted more than 175 foreclosures during the previous calendar year. The Department has included an addendum to the Report of Principal Amount of Loans Originated and Aggregate Amount of Loans Serviced for the 12-Month Period Ended December 31, 2014, to collect the number of foreclosures completed during the 2014 calendar year.

The following questions are in connection with the California Foreclosure Reduction Act and these requirements.

2. During 2014, did you foreclose on 175 or fewer residential real properties containing no more than four dwelling units that are located in California?

☉ Yes

○ No

**3. Provide the total number of foreclosures completed on residential real properties located in California, containing no more than four dwelling units during 2014.**

Number of foreclosures:                                    55

## Report on Non-traditional, Adjustable Rate and Mortgage Loan Products

California Code of Regulations Title 10, Section 1950.314.8 requires every licensee to implement best practices to manage loan product risk on a continuous basis. These best practices include practices set forth in the Guidance on Nontraditional Mortgage Product Risks published on November 14, 2006, by the Conference of State Bank Supervisors (CSBS) and the American Association of Residential Mortgage Regulators (AARMR), and the Statement on Subprime Mortgage Lending published on July 17, 2007, by CSBS, AARMR and the National Association of Consumer Credit Administrators. Both publications are collectively referred to herein as the "Guidance." "Best practices" means lawful processes, policies, and procedures to manage risks associated with use of nontraditional mortgage products and adjustable rate mortgage products as defined and prescribed by the Guidance.

If any nontraditional mortgage loans or adjustable rate mortgage loans subject to the Guidance were made or arranged, the licensee must also submit information regarding those loan products on the form below, the Non-traditional, Adjustable Rate and Mortgage Loan Survey (Survey).

**4. Select the following non-traditional mortgage products or adjustable rate mortgage products made or arranged during the 2014 calendar year.**

☐ Made non-traditional mortgage products

☐ Arranged non-traditional mortgage products

☐ Made adjustable rate mortgage products

☐ Arranged adjustable rate mortgage products

☑ NONE of the above

## Non-traditional, Adjustable Rate and Mortgage Loan Survey

Please show the dollar volume in thousands and number of loans retained as of December 31, 2014, and the dollar volume in thousands and number of loans sold over the 12-month period ending December 31, 2014.

THE SUM OF THE "NUMBER OF LOANS" FIELDS AND THE "DOLLAR AMOUNT IN THOUSANDS" FIELDS MUST MATCH WITH "# OF CA LOANS ORIGINATED" AND "PRINCIPAL AMOUNT OF CA LOANS ORIGINATED" TOTALS IN QUESTION 1A.

| | Retained (Number of Loans) | Retained (Dollar Amount in Thousands) | Sold (Number of Loans) | Sold (Dollar Amount in Thousands) |
|---|---|---|---|---|
| 20. All Originated Loans (Non-Traditional and Traditional): | 0 | 0 | 11 | 5,188,525 |

## Verification

I certify/declare under penalty of perjury that the foregoing information and the attached report are true and correct.

| | |
|---|---|
| Report Prepared by: | Ada Rivera |
| Preparer Title: | Manager of Licensing |
| Preparer Phone #: | 312-506-4225 |
| Preparer Email: | arivera@fayservicing.com |
| City in which report was executed: | Chicago |
| State in which report was executed: | Illinois |
| Date: (mm/dd/yyyy) | 02/27/2015 |
| Electronic Signature of Declarant: | Ada Rivera |

Report by respondent for '2014 CRMLA Annual Report'                     Page 6 of 6

### Submitting the Report

To review the information you have entered into the Report, click here. Only fields that you have answered will be visible. To print what you've answered, right click on the Report that pops up and select "Print". *(Note: Your browser security settings may need to be modified to allow pop-ups from this website.)*

If you wish to return to the Report later to make changes or to provide more information, then click the Save button below and exit the browser window. You may re-enter the Report by clicking on the link provided in the e-mail from the DBO.

When you have completed the Report, click the Submit button below. A confirmation message of your submission will appear.

---

Convert to PDF...

**PROOF OF SERVICE**

I, Catherine Lawler, declare as follows:

I am employed in the County of Marin, State of California where the mailing occurred. I am over the age of eighteen (18) and not a party to the within action. My business address is 907 Sir Francis Drake Blvd., Kentfield, CA 94904. I am readily familiar with the practices of Wright, Finlay & Zak, LLP, for collection and processing of correspondence for mailing with the United States Postal Service. Such correspondence is deposited with the United States Postal Service the same day in the ordinary course of business. I am aware that on motion of party served, service is presumed invalid if postal cancellation date or postage meter date is more than one day after date of deposit for mailing in affidavit.

On July 15, 2016, I served the foregoing **REQUEST FOR JUDICIAL NOTICE IN SUPPORT OF DEFENDANTS' DEMURRER TO PLAINTIFF'S COMPLAINT** on all interested parties in this action by placing [ ] the original [X] a true copy thereof enclosed in sealed envelope(s) addressed as follows:

Marc Applbaum, Esq.
KETTNER LAW CORPORATION
2150 West Washington Street, Suite 104
San Diego, CA 92110
Telephone:     (619) 756-7300
Facsimile:     (619) 363-3944
E-Mail:        marc@kettnerlawcorp.com

**Attorneys for Plaintiff**
**MICHAEL PARADISE**

[X]     **(BY UNITED STATES MAIL)** I placed such envelope(s) for collection and mailing, following our ordinary business practices.

[ ]     **(BY UNITED STATES CERTIFIED MAIL)** I placed such envelope(s) for collection to be mailed on this date following ordinary business practices, via Certified Mail, Return Receipt Requested.

[ ]     **(BY OVERNIGHT DELIVERY)** I enclosed the document(s) in an envelope or package provided by an overnight delivery carrier and addressed to the person(s) at the address(es) listed herein. I caused to be placed the envelope or package for collection and overnight delivery at an office or a regularly utilized drop box of the overnight carrier.

[ ]     **(BY MESSENGER SERVICE)** I served the document(s) by placing them in an envelope or package addressed to the person(s) at the address(es) listed herein and providing them to a professional messenger service for service. A Declaration of Messenger is attached to the original Proof of Service.

-1-
PROOF OF SERVICE

1

2

3

4

5

6

7

8

9

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28

[ ]  **(BY PERSONAL SERVICE)** I personally delivered the document(s) to the person(s) at the address(es) as set forth on the attached service list.  (1) For a party represented by an attorney, delivery was made (a) to the attorney personally; or (b) by leaving the document(s) at the attorney's office, in an envelope or package clearly labeled to identify the attorney being served, with a receptionist or an individual in charge of the office; or (c) if there was no person in the office with whom the notice of papers could be left, by leaving them in a conspicuous place in the office between the hours of nine in the morning and five in the evening.  (2) For a party, delivery was made to the party or by leaving the document(s) at the party's residence with some person not younger than 18 years of age between the hours of eight in the morning and six in the evening.

I declare under penalty of perjury under the laws of the State of California that the foregoing is true and correct.

Executed on July 15, 2016, at Kentfield, California.

Catherine Lawler

-2-

PROOF OF SERVICE